# EXHIBIT 1

# EXHIBIT 1

Home   No Body Blog   No Body Murder Cases   Tips   My Book   Contact

# Welcome to my website!

For over 12 years I was an Assistant United States Attorney in the District of Columbia and I prosecuted homicide cases for most of those years. In January of 2006, I prosecuted the second "no body" murder case tried in D.C. and have been interested in "no body" cases ever since.

On this site I track "no body" murder cases, trials and investigations. My table of "No body" Murder Trials lists nearly 300 "no body" murder trials in the United States. I also have consulted, for free, with law enforcement agencies throughout the United States and Canada. If you know of a "no body" case, investigation, or trial, contact me and I'd be happy to add it to my table or blog about it.

All the best,

Thomas A. (Tad) DiBiase, "No Body" Guy



Home | No Body Blog | No Body Murder Cases | Tips | My Book | Contact Us |
Web Design by: Heritage Web Solutions. All rights reserved. Login

# EXHIBIT 2

# EXHIBIT 2

Case 2:10-cv-01343-RLH-PAL Document 1-1 Filed 08/09/10 Page 4 of 13

# reviewjournal.com



PRINT THIS

Powered by Clickability

Jun. 11, 2010
Copyright © Las Vegas Review-Journal

## Retired teacher gets death penalty for wife's murder

### Man who killed wife sought ultimate sentence

By DOUG MCMURDO
REVIEW-JOURNAL

A man who asked the jury to give him the death penalty after it convicted him of killing his wife got his wish after less than two hours of deliberations Friday.

"He's a Muslim," said prosecutor Marc DiGiacomo of John Matthus Watson III, referring to a tenet of the faith that requires death for committing murder. "That's why he wanted the death penalty," he said about the retired teacher from Ontario, Calif.

DiGiacomo believes Watson converted to Islam during the four years he was in custody at the Clark County Detention Center. But DiGiacomo and co-prosecutor Pam Weckerly said they asked jurors to give Watson the death penalty not because he asked them to but because he deserved society's ultimate punishment.

The jury found there were two requisite aggravating circumstances in the slaying: that Evie Watson was killed during the commission of a kidnapping and that she was tortured or mutilated.

Watson, 70, lured his wife to Las Vegas in July 2006, ostensibly to celebrate her 50th birthday. In reality, he had been plotting her murder for more than a month because she was going to leave him and he didn't want to have to give her half of the family assets, prosecutors said.

"They write books about these kinds of cases," said DiGiacomo, a veteran prosecutor.

Weckerly said Watson managed to save roughly $1 million over a 30-year career.

Her body has never been recovered, but Evie Watson's DNA was found in a shower drain at the Tuscany, in a room she was not supposed to be in as the room he rented for them was at Circus Circus.

He rented the room at the Tuscany with false identification. It was there that Watson shot his wife and then cut her up with a band saw.

In letters written from jail, Watson admitted to cooking and eating part of the body.

Weckerly described Watson as methodical, intelligent, manipulative, deceitful and dangerous, saying the murder was not typical of domestic violence murder cases.

"This is a little set apart," she said in telling jurors the killing was not a crime of passion, but one that was cold-blooded and calculated.

Jurors, in an emotional scene, met with the Watsons' three sons, all in their 20s, after the trial.

"We owe you so much," said Michael Watson.

"You don't owe us anything," said one juror who asked not to be identified.

Jurors told the men they fretted over giving their father the death penalty because they would then be without both parents.

Getting a murder conviction in a case with no body is difficult; getting a death penalty in one is almost unheard of.

For juror Justin Crenshaw, the compelling piece of evidence that led him to find Watson guilty Thursday, and subsequently give him the death penalty, was testimony regarding police finding Evie Watson's DNA in the Tuscany shower drain.

"That did it for me," he said. "There were some holes before that and I wasn't sure, but when we (deliberated) I kept thinking about her DNA being where she wasn't supposed to be."

Watson has a history with the law.

In 1967 he was arrested in Oklahoma after telling authorities he raped and killed a hitchhiker and dumped her body. But no charges were ever filed. Police couldn't find her body after an exhaustive search.

He was also arrested by the Secret Service after threatening President Richard Nixon in the early 1970s. He was arrested but not prosecuted.

**Find this article at:**
http://www.lvrj.com/news/retired-teacher-gets-death-penalty-for-wife-s-murder-96191524.html

☐ Check the box to include the list of links referenced in the article.

Copyright © Las Vegas Review-Journal, 1997 - 2008

Go Green! Subscribe to the electronic Edition at www.reviewjournal.com/ee/

# EXHIBIT 3

# EXHIBIT 3

« Blog Home

### • Death penalty in no body murder case

posted by Admin on June 14th, 2010 at 8:39 PM
0 Comments added to this post
No Tags Currently Defined

Getting the death penalty in a no body murder case is rare.

Jun. 11, 2010
Copyright © Las Vegas Review-Journal

Retired teacher gets death penalty for wife's murder

Man who killed wife sought ultimate sentence

By DOUG MCMURDO
REVIEW-JOURNAL

John Matthus Watson III, 70, testifies during the penalty phase of his murder trial Friday afternoon. He asked the jury that convicted him the day before to give him the death penalty. Less than two hours later, they did. Prosecutor Marc DiGiacomo believes Watson became a Muslim while in jail awaiting trial and asked for the death penalty in keeping with the tenets of the Islamic faith.
John Locher/LAS VEGAS REVIEW-JOURNAL

A man who asked the jury to give him the death penalty after it convicted him of killing his wife got his wish after less than two hours of deliberations Friday.

"He's a Muslim," said prosecutor Marc DiGiacomo of John Matthus Watson III, referring to a tenet of the faith that requires death for committing murder. "That's why he wanted the death penalty," he said about the retired teacher from Ontario, Calif.

DiGiacomo believes Watson converted to Islam during the four years he was in custody at the Clark County Detention Center. But DiGiacomo and co-prosecutor Pam Weckerly said they asked jurors to give Watson the death penalty not because he asked them to but because he deserved society's ultimate punishment.

The jury found there were two requisite aggravating circumstances in the slaying: that Evie Watson was killed during the commission of a kidnapping and that she was tortured or mutilated.

Watson, 70, lured his wife to Las Vegas in July 2006, ostensibly to celebrate her 50th birthday. In reality, he had been plotting her murder for more than a month because she was going to leave him and he didn't want to have to give her half of the family assets, prosecutors said.

"They write books about these kinds of cases," said DiGiacomo, a veteran prosecutor.

Weckerly said Watson managed to save roughly $1 million over a 30-year career.

Her body has never been recovered, but Evie Watson's DNA was found in a shower drain at the Tuscany, in a room she was not supposed to be in as the room he rented for them was at Circus Circus.

He rented the room at the Tuscany with false identification. It was there that Watson shot his wife and then cut her up with a band saw.

In letters written from jail, Watson admitted to cooking and eating part of the body.

Weckerly described Watson as methodical, intelligent, manipulative, deceitful and dangerous, saying the murder was not typical of domestic violence murder cases.

"This is a little set apart," she said in telling jurors the killing was not a crime of passion, but one that was cold-blooded and calculated.

Jurors, in an emotional scene, met with the Watsons' three sons, all in their 20s, after the trial.

"We owe you so much," said Michael Watson.

"You don't owe us anything," said one juror who asked not to be identified.

Jurors told the men they fretted over giving their father the death penalty because they would then be without both parents.

Getting a murder conviction in a case with no body is difficult; getting a death penalty in one is almost unheard of.

For juror Justin Crenshaw, the compelling piece of evidence that led him to find Watson guilty Thursday, and subsequently give him the death penalty, was testimony regarding police finding Evie Watson's DNA in the Tuscany shower drain.

"That did it for me," he said. "There were some holes before that and I wasn't sure, but when we (deliberated) I kept thinking about her DNA being where she wasn't supposed to be."

Watson has a history with the law.

In 1967 he was arrested in Oklahoma after telling authorities he raped and killed a hitchhiker and dumped her body. But no charges were ever filed. Police couldn't find her body after an exhaustive search.

He was also arrested by the Secret Service after threatening President Richard Nixon in the early 1970s. He was arrested but not prosecuted.

Posted by Thomas A. (Tad) DiBiase, No Body Guy
Read More ...

---

### • Police in Kansas City outline evidence in no body murder case

posted by Admin on June 14th, 2010 at 8:35 PM
0 Comments added to this post

No Tags Currently Defined

Clay County authorities disclose evidence in Pernice murder case
By GLENN E. RICE
The Kansas City Star
While police and volunteers searched a wooded area for a missing Northland woman, her husband watched it on the news at a bar and said she was not in those woods.

Clay County authorities this week made that allegation, along with other previously undisclosed evidence, in arguing against a bond reduction for Shon Andrew Pernice, 37, a Kansas City, North, man accused of killing his wife.

Authorities have not found the body of Renee Pernice, who was 35 when she disappeared in January 2009, but have said there is substantial evidence that she was murdered.

At the end of a hearing on Thursday, a Clay County judge denied Pernice's request to have his $1 million bond reduced. His attorney, Eric Vernon, said that before Pernice was arrested on the murder charge, his client had complied with electronic-monitoring requirements on unrelated criminal matters.

Vernon also said the evidence prosecutors had was circumstantial and there was nothing to support the notion that Renee Pernice had been murdered.

In general, prosecutors argued that Renee Pernice enjoyed her job, had a loving family and had no reason to leave. On the other hand, they said, Shon Pernice had a history of violating his bond and was a flight risk.

Authorities alleged the following details to bolster their case against Shon Pernice:

•Pernice did not help volunteers, police and members of Renee Pernice's family search for her in the wooded area near the couple's home.

Later that evening, Pernice went to a Northland bar to pick up a takeout order. While there, he asked the bartender to turn the television to local news. Pernice then said that searchers would not find Renee Pernice in that wooded area.

•When crime scene investigators executed a search warrant at the Pernice house last year, they discovered the garage floor had been acid-etched and a damp mop was nearby. However, the rest of the house was noticeably messy.

•Pernice did not report his wife missing until he was confronted by her family.

•Days after Renee Pernice disappeared, Shon Pernice was seen kissing a woman while gambling at a Northland casino. He also listed himself as single on dating websites.

•Renee Pernice had the ability to obtain $50,000 in cash had she wanted to leave her family, but she never sought to acquire those funds. A review of her personal bank records found that she had not put away money.

•After the disappearance, Pernice asked a girlfriend to buy him a firearm under her name on two occasions even though he was prohibited by a judge from having one.

•Pernice purchased a switchblade while on bond on an unrelated criminal matter.

•When he found out that a family member was going to appear before a Clay County grand jury, Pernice acquired $5,500 in cash, indicating he was a flight risk.

•Pernice dumped his wife's dog at a park and then told his son that the dog ran away. Pernice also threw away his wife's personal belongings in a trash bin at his son's school.

On Friday, Vernon said the prosecution's case was not compelling.

"As I argued to the judge, what I heard was very weak and circumstantial, that she was even deceased and certainly there was no evidence, except conjecture, that Shon Pernice was involved in her disappearance."

To reach Glenn E. Rice, call 816-234-4341 or send e-mail to grice@kcstar.com.
Posted on Fri, Jun. 04, 2010 10:40 PM

Read more: http://www.kansascity.com/2010/06/04/1993659/clay-county-authorities-disclose.html#ixzz0qsqa2NOo

Posted by Thomas A. (Tad) DiBiase, No Body Guy
Read More ...

### • Why do we let murderers use their victim's body as a bargaining chip?

posted by Admin on June 14th, 2010 at 8:08 PM
0 Comments added to this post

No Tags Currently Defined

Joran Van Der Sloot is back in the news. Long suspected of murdering Natalee Holloway and now arrested for the murder of Peruvian Stephany Flores, Van Der Sloot supposedly has told police he will tell them where Miss Holloway's body is in exchange for transferring him from a Peruvian prison to one in Aruba. http://dailycaller.com/2010/06/13/van-der-sloot-willing-to-tell-where-holloways-buried-in-exchange-for-transfer-to-aruba/ Having studied no body murder cases for several years, I've observed an increasingly disturbing trend: more and more defendants are using the body of their murdered victim as a bargaining chip. Van Der Sloot is far from the first. Hans Reiser was convicted of murdering his wife in California in 2008. She had disappeared in 2006 and Reiser denied the murder for years and fought the charge at trial. After a five month trial, an Oakland jury convicted the Linux inventor of first degree murder. After the conviction, however, in exchange for a reduced sentence, Reiser led the police to his wife's body which he had buried less than half a mile from his house. Instead of facing a sentence of 25 years to life, Reiser's charge was reduced to second degree murder which carried a term of only 15 years to life. In 2008, prosecutors in the United States Attorney's Office for the District of Columbia (my old office) permitted Michael Dickerson to plead guilty to second degree murder and in exchange he agreed to lead police to where he buried the body of his girlfriend, Shaquita Bell. Dickerson then led police and prosecutors on a futile two day search for Ms. Bell's body which has never been found. Yet he was still sentenced to just 15 years in prison. http://www.washingtonpost.com/wp-dyn/content/article/2008/11/11/AR2008111103085.html Just this past May in Tennessee, Douglas Whisnant was able to plea bargain into second degree murder charges by agreeing to show police where he buried his ex-wife's body. Whisnant was sentenced to 15 years. Perhaps more galling, Whisnant is currently serving a 25 year federal firearms sentence and will get credit for his murder sentence, a state charge, will serving his federal time! Thus, he does no additional time for the murder. http://www.knoxnews.com/news/2010/may/17/details-net-reduced-sentence/
Now there are clearly some good reasons to let a defendant take a plea in a no body murder case: weak evidence, getting closure for the family and sometimes getting something is better than getting nothing. But letting a defendant call the shots and use his victim's body as a bargaining chip is particularly distasteful given that most of these murderers fit the classic profile of domestic abusers. It's all about control and they want to be the ones in control. Letting murderers use their victim one last time to win themselves leniency is their final act of control and prosecutors ought to be loathe to let them do it. Winning a conviction in a no body murder case is difficult and dealing with a grieving and often angry family is equally difficult. But letting a murderer run the show and determine what charges or sentence he faces is simply unacceptable.

Posted by Thomas A. (Tad) DiBiase, No Body Guy
Read More ...

### • Why do we let murderers use their victim's body as a bargaining chip?

posted by Admin on June 14th, 2010 at 8:06 PM
0 Comments added to this post
No Tags Currently Defined

Joran Van Der Sloot is back in the news. Long suspected of murdering Natalee Holloway and now arrested for the murder of Peruvian Stephany Flores, Van Der Sloot supposedly has told police he will tell them where Miss Holloway's body is in exchange for transferring him from a Peruvian prison to one in Aruba. http://dailycaller.com/2010/06/13/van-der-sloot-willing-to-tell-where-holloways-buried-in-exchange-for-transfer-to-aruba/ Having studied no body murder cases for several years, I've observed an increasingly disturbing trend: more and more defendants are using the body of their murdered victim as a bargaining chip. Van Der Sloot is far from the first. Hans Reiser was convicted of murdering his wife in California in 2008. She had disappeared in 2006 and Reiser denied the murder for years and fought the charge at trial. After a five month trial, an Oakland jury convicted the Linux inventor of first degree murder. After the conviction, however, in exchange for a reduced sentence, Reiser led the police to his wife's body which he had buried less than half a mile from his house. Instead of facing a sentence of 25 years to life, Reiser's charge was reduced to second degree murder which carried a term of only 15 years to life. In 2008, prosecutors in the United States Attorney's Office for the District of Columbia (my old office) permitted Michael Dickerson to plead guilty to second degree murder and in exchange he agreed to lead police to where he buried the body of his girlfriend, Shaquita Bell. Dickerson then led police and prosecutors on a futile two day search for Ms. Bell's body which has never been found. Yet he was still sentenced to just 15 years in prison. http://www.washingtonpost.com/wp-dyn/content/article/2008/11/11/AR2008111103085.html Just this past May in Tennessee, Douglas Whisnant was able to plea bargain into second degree murder charges by agreeing to show police where he buried his ex-wife's body. Whisnant was sentenced to 15 years. Perhaps more galling, Whisnant is currently serving a 25 year federal firearms sentence and will get credit for his murder sentence, a state charge, will serving his federal time! Thus, he does no additional time for the murder. http://www.knoxnews.com/news/2010/may/17/details-net-reduced-sentence/

Now there are clearly some good reasons to let a defendant take a plea in a no body murder case: weak evidence, getting closure for the family and sometimes getting something is better than getting nothing. But letting a defendant call the shots and use his victim's body as a bargaining chip is particularly distasteful given that most of these murderers fit the classic profile of domestic abusers. It's all about control and they want to be the ones in control. Letting murderers use their victim one last time to win themselves leniency is their final act of control and prosecutors ought to be loathe to let them do it. Winning a conviction in a no body murder case is difficult and dealing with a grieving and often angry family is equally difficult. But letting a murderer run the show and determine what charges or sentence he faces is simply unacceptable.

Posted by Thomas A. (Tad) DiBiase, No Body Guy

Read More ...

### • Chinese man releassed from prison after victim turns up alive

posted by Admin on May 24th, 2010 at 7:41 PM
0 Comments added to this post
No Tags Currently Defined

Not a U.S. case but I never said it couldn't happen here......

From The Times May 11, 2010

# EXHIBIT 4

# EXHIBIT 4

```
Type of Work:         Text

Registration Number / Date:
                      TX0007182385 / 2010-07-27

Application Title: Man who killed wife sought ultimate sentence.

Title:                Man who killed wife sought ultimate sentence.

Description:          Electronic file (eService)

Copyright Claimant:
                      Righthaven LLC, Transfer: By written agreement.

Date of Creation: 2010

Date of Publication:
                      2010-06-11

Nation of First Publication:
                      United States

Authorship on Application:
                      Stephens Media LLC, employer for hire; Domicile: United
                         States; Citizenship: United States. Authorship: text.

Rights and Permissions:
                      Chief Operating Officer, Righthaven LLC, 9960 West Cheyenne
                         Avenue, Suite 210, Las Vegas, NV, 89129-7701, United
                         States, (702) 527-5900, dbrownell@righthaven.com

Names:                Stephens Media LLC
                      Righthaven LLC

=============================================================================
```