| | |
|---|---|
| COLLEEN BAL (*pro hac vice* pending) | KURT OPSAHL (*pro hac vice*) |
| cbal@wsgr.com | kurt@eff.org |
| BART E. VOLKMER (*pro hac vice* pending) | CORYNNE MCSHERRY (*pro hac vice*) |
| bvolkmer@wsgr.com | corynne@eff.org |
| WILSON SONSINI GOODRICH & ROSATI | ELECTRONIC FRONTIER FOUNDATION |
| 650 Page Mill Road | 454 Shotwell Street |
| Palo Alto, Ca 94304-1050 | San Francisco, Ca 94110 |
| Telephone: (650) 493-9300 | Telephone: (415) 436-9333 |
| Facsimile: (650) 493-6811 | Facsimile: (415) 436-9993 |

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys For Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>THOMAS A. DIBIASE, an individual,<br><br>　　　　　　Defendant.<br>_____<br>THOMAS A. DIBIASE, an individual,<br><br>　　　　　　Counterclaimant,<br>　　v.<br><br>RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>　　　　　　Counter-defendant.<br>_____ | CASE NO.:  2:10-cv-01343-RLH-PAL<br><br>**DEFENDANT THOMAS A. DIBIASE'S MOTION TO DISMISS & MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

**MOTION**

Pursuant to Fed. R. Civ. P. 12(b)(6), Thomas A. DiBiase ("Mr. DiBiase") respectfully moves to dismiss with prejudice Righthaven LLC's ("Righthaven") requests for: (1) domain-name transfer; and (2) attorney's fees. This motion is supported by the accompanying memorandum of points and authorities, the declaration of Bart E. Volkmer ("Volkmer Decl."), and a concurrently filed request for judicial notice ("RJN").

**MEMORANDUM OF POINTS & AUTHORITIES**

I.  INTRODUCTION

Righthaven's lawsuit against Mr. DiBiase alleges copyright infringement based on his non-commercial use of a freely available and highly factual Las Vegas Review-Journal ("LVRJ") article concerning a murder case. Righthaven's case is misguided because the doctrine of fair use encourages and protects Mr. DiBiase's transformative use of the newspaper article at issue. But that issue is for another day. On the pleadings, Mr. DiBiase respectfully requests dismissal with prejudice of two of the remedies that Righthaven seeks in its prayer for relief: (1) an order transferring the domain name of his website to Righthaven; and (2) attorney's fees under the Copyright Act. Those remedies are unavailable to Righthaven as a matter of law and should be dismissed.

Righthaven's request for a domain-name transfer fails because a plaintiff in a copyright case is only entitled to those remedies that Congress has authorized specifically. The Copyright Act contains no provision permitting domain-name transfer as an infringement remedy, and therefore, a plaintiff may not seek it. The remedy of domain-name seizure fails for the additional reason that it would violate Mr. DiBiase's First Amendment rights. Mr. DiBiase has the right to continue using his domain name to provide information to the public, notwithstanding Righthaven's infringement allegations concerning a tiny portion of his website.

Righthaven's prayer for attorney's fees under Section 505 of the Copyright Act should be dismissed because the Supreme Court has held that statutory attorney's fees are only available where there is an independent attorney-client relationship. Righthaven is a made-for-litigation entity that was set up and is run by the very lawyers who are prosecuting cases on its behalf.

Righthaven is not independent from its litigation attorneys, and therefore, it may not seek statutory attorney's fees.

A ruling dismissing these remedies with prejudice is important because it appears that Righthaven's business strategy is to file dozens of cookie-cutter lawsuits and then seek settlements regardless of the merits. A defendant should not have to account for the sham remedies of domain-name transfer and attorney's fees when deciding how to respond to Righthaven's lawsuit.

## II.     FACTUAL BACKGROUND

### A.     The Parties

Mr. DiBiase is a former Assistant United States Attorney in the District of Columbia. Compl., Ex. 1.[1] In 2006, Mr. DiBiase successfully tried a murder case where the victim's body was never located, a so-called "no body" murder. *Id*. That prosecution prompted Mr. DiBiase's desire to assist prosecutors, investigators, and the families of murder victims who confront "no body" homicides. Mr. DiBiase set out to provide a public service by tracking those cases and publicizing his findings on the Internet. *Id*. His website contains: (1) a blog with updates on pending "no body" cases; (2) a table summarizing the results of over 300 "no body" murder prosecutions; and (3) an article he wrote entitled "How to successfully investigate and prosecute a no body homicide case." *See* www.nobodycases.com. Mr. DiBiase consults for free with law enforcement agencies throughout the United States and Canada. Compl., Ex. 1.

Righthaven is a lawyer-managed company whose sole purpose is to bring copyright infringement lawsuits. The Nevada Secretary of State's records list a company called Net Sortie LLC ("Net Sortie") as Righthaven's manager. Volkmer Decl., Ex. A. Mr. Steven A. Gibson, Righthaven's lead counsel in this action, is listed as the manager of Net Sortie. *Id*., Ex. B. Righthaven does not produce copyrighted content. Instead, Stephens Media LLC ("Stephens Media"), the publisher of the LVRJ, purports to assign the copyrights in articles to Righthaven, which then brings copyright-infringement lawsuits over them. Compl., Ex. 4. Righthaven has

---

[1] The Court may consider "material which is properly submitted as part of the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

filed over 150 copyright cases since forming in early 2010. Volkmer Decl. ¶ 2. Many of the targets of Righthaven's suits appear to be individuals and non-profit organizations who lack the economic resources to defend themselves against Righthaven's claims. *Id*. Righthaven uses the threat of statutory damages in the amount $150,000, the potential loss of the defendant's domain name and the prospect of attorney's fees to extract settlements. *See* 17 U.S.C. §§ 504, 505; Compl. at p. 5. Given the lack of any economic harm to Righthaven, its refusal to seek non-judicial resolution of its claims before bringing suit and the impracticality of actually litigating its torrent of cases, Righthaven's business model seems premised on forcing nuisance-value settlements.

### B.     Righthaven's Claim For Relief

Righthaven asserts that Mr. DiBiase committed copyright infringement by posting to his blog a LVRJ article concerning a "no body" murder case that was tried in Las Vegas. That article – entitled "Retired teacher gets death penalty for wife's murder" – was and currently is available for free on the LVRJ website. *See* http://www.lvrj.com/news/retired-teacher-gets-death-penalty-for-wife-s-murder-96191524.html; Volkmer Decl., Ex. C. Righthaven played no part in creating the article. It bases ownership on a claimed double transfer: a "work-for-hire" transfer from the article's author, Doug McMurdo, to Stephens Media, followed by a copyright assignment from Stephens Media to Righthaven. Compl., Ex. 4. Righthaven does not allege, nor could it, that it took any steps to have the article removed from Mr. DiBiase's blog before filing this lawsuit. Righthaven's prayer for relief seeks: (1) an injunction; (2) an order requiring Mr. DiBiase's webhost to transfer the nobodycases.com domain name[2] to Righthaven; (3) statutory damages under 17 U.S.C. § 504; and (4) costs and attorney's fees under 17 U.S.C. § 505. Compl. at p. 5.

---

[2] A domain name is an easy-to-remember alphanumeric text representation (often a word or phrase) that is linked through the "domain name system" to the numeric IP address where a website is actually located. *See Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 410 (2d Cir. 2004). An "IP address" is a unique, numerical sequence – like "89.2.164.31" or "222.34.1.4" – assigned to every web server or other computer connected to the Internet that functions much like a street address or telephone number for the computer to which it is assigned. *Id*. at 409-10. A series of domain name servers contain massive databases, listing the proper IP address for each domain name. *See Name.Space, Inc. v. Network Solutions, Inc*., 202 F.3d 573, 577 (2d Cir. 2000) (describing the domain name server system in detail).

## III. ARGUMENT

Under Rule 12(b)(6), the court will dismiss a claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While the court accepts as true the factual allegations in a complaint when evaluating a motion to dismiss, a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 12(b)(6) is an appropriate vehicle to challenge legally deficient remedies. *See Whittlestone v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (challenge to the legal sufficiency of a remedy should be brought under Rule 12(b)(6) or Rule 56, not under Rule 12(f)). Courts routinely throw out flawed remedies at the pleadings stage to streamline cases and spare parties the burden and expense of unnecessary litigation. *See, e.g., Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *Wells v. Bd. of Trustees of The Cal. State Univ.*, 393 F. Supp. 2d 990, 998-99 (N.D. Cal. 2005). While leave to amend is often granted, it should not be granted where amendment would be futile. *Yakama Indian Nation v. Wash. Dept. of Revenue*, 176 F. 3d 1241, 1248 (9th Cir. 1999).

Righthaven's request for an order transferring the nobodycases.com domain name and its prayer for attorney's fees under Section 505 of the Copyright Act fail as a matter of law. The Court should dismiss those requests with prejudice under Rule 12(b)(6).

### A. Righthaven's Request For A Domain-Name Transfer Fails.

Righthaven's Complaint asks the Court to "direct the current registrar, Heritage Web Design, LLC . . . to lock the [www.nobodycases.com] Domain and transfer control of the Domain to Righthaven." Compl. at p. 5 (Prayer For Relief, ¶ 3). That request fails as a matter of law. First, for statutory claims like Righthaven's, a plaintiff is entitled only to those remedies that Congress has authorized specifically. The Copyright Act contains no provision allowing for domain-name transfer to a prevailing plaintiff. Second, Rule 65 prohibits entry of an order purporting to bind the non-party registrar of Mr. DiBiase's domain. Third, an order transferring the nobodycases.com domain to Righthaven would violate Mr. DiBiase's First Amendment free-speech rights.

### 1. The Copyright Act Does Not Authorize Domain-Name Transfer.

Righthaven's strong-arm attempt to seize the domain-name of Mr. DiBiase's website cannot be reconciled with the plain text of the Copyright Act. The Supreme Court has made clear that "the remedies for infringement 'are *only* those prescribed by Congress.'" *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984) (quoting *Thompson v. Hubbard*, 131 U.S. 123, 151 (1889)) (emphasis added). Congress has given copyright holders a "potent arsenal of remedies," but has never granted them the right to confiscate domain names. *Sony*, 464 U.S. at 433; 17 U.S.C. § 502 (authorizing injunctions to prevent specific infringing activity);[3] § 503 (authorizing impoundment and destruction of infringing articles); § 504 (authorizing actual and statutory damages); § 505 (authorizing costs and attorney's fees). Without congressional authorization, courts cannot sanction the extra-statutory remedy of domain-name seizure and transfer. *See Sony*, 464 U.S. at 431 ("The judiciary's reluctance to expand the protections afforded by the copyright without explicit legislative guidance is a recurring theme."); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) ("[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."); *Nintendo of Am., Inc. v. Aeropower, Co.*, 34 F.3d 246, 251 (4th Cir. 1994) (overturning an award of trebled statutory damages for copyright infringement because the Copyright Act "provides the exclusive remedies for copyright infringement and it contains no provision for trebling statutory damages").

That result is compelled by the text of the Copyright Act and Supreme Court authority, as well as an unbroken line of cases. In *Viacom v. YouTube*, a media company sought to amend its copyright infringement complaint against an online video service to add a claim for punitive damages. 540 F. Supp. 2d 461, 462 (S.D.N.Y. 2008). The court denied the plaintiff's motion because Congress has not authorized a plaintiff to recover punitive damages under the Copyright Act. *Id.* at 462-64 ("The Copyright Act makes no provision for punitive damages."). The

---

[3] Section 502 of the Copyright Act authorizes an injunction to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502. The statute requires injunctions to be targeted to *specific* infringing activities. Section 502 may not be used to shut down access to an entire location merely because some infringement is alleged to have occurred there.

-6-

1  *YouTube* ruling followed a host of others rejecting punitive-damages claims under the Copyright
2  Act for similar reasons. *See Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983) ("[P]unitive
3  damages are not available under the Copyright Act of 1976."); *Bucklew v. Hawkins, Ash, Baptie
4  & Co.*, 329 F.3d 923, 931 (7th Cir. 2003) (Posner, J.) (rejecting a requirement that "would add a
5  punitive as distinct from a restitutionary element to copyright damages" because "the statute
6  contains no provision for punitive damages"); *Design Art v. National Football League
7  Properties, Inc.*, No. 00CV593, 2000 WL 1919787, at *5 (S.D. Cal. Nov. 27, 2000) ("Punitive
8  damages are not available under the Copyright Act.").

9        There can be no reasonable argument that these cases were decided incorrectly.  When
10  Congress sets up a comprehensive scheme of statutory remedies, permitting a plaintiff to invoke
11  a non-enumerated remedy would subvert the statute's design and purpose.  Congress has defined
12  with care the remedies available for copyright infringement, and domain-name seizure is not one
13  of them.  And it is hard to argue with Congress' judgment.  The country's most popular online
14  destinations like the *New York Times*, Amazon and Yahoo! have faced copyright infringement
15  allegations based on their ordinary operations.  But it would be absurd to suggest that a plaintiff
16  alleging copyright infringement against those companies would be entitled to domain-name
17  transfer as a copyright remedy if infringement was established.  That would confer a lottery-
18  sized jackpot on the plaintiff and cause catastrophic harm to the defendant – a result that
19  Congress did not and could not have intended.  *See* 17 U.S.C. § 504 (copyright damages are
20  confined to plaintiff's actual damages or clearly defined statutory damages).  And while not
21  every domain carries such economic heft, all registered domains are important because they
22  represent a unique location from which website owners have chosen to broadcast their message
23  to the world.

24      Because the Copyright Act does not provide for domain-name transfer, Righthaven's
25  request for that remedy must be rejected.

26          **2.**    **Rule 65 Prohibits The Order Righthaven Seeks.**

27      Even if the Copyright Act provided for domain-name transfer (which it does not), the
28  order Righthaven seeks is impermissible under the Federal Rules.  Righthaven asks for an order

1  against Mr. DiBiase's domain name registrar.  Pursuant to Rule 65(d)(2), injunctions may only
2  bind: (a) the parties; (b) the parties' officers, agents, servants, employees, and attorneys; and (c)
3  other persons who are in active concert or participation with the parties or their agents.  The
4  Complaint contains no allegations whatsoever that the registrar has any such connection with Mr.
5  DiBiase.  Courts may not issue injunctive orders that purport to bind individuals or entities not
6  identified by Rule 65(d)(2). *See, e.g., Med. Mut. Ins. Co. of Maine v. Indian Harbor Ins. Co.*, 583
7  F.3d 57, 64 (1st Cir. 2009) (because none of the defendant companies' directors or officers were
8  named as a defendant, plaintiff's complaint could not be "an effective vehicle for making a
9  demand for relief against them"); *Bobolas v. Does 1-100*, No. CV-10-2056-PHX-DGC, 2010
10 WL 3923880, at *2 (D. Ariz. Oct. 1, 2010) (the district court lacks power to enter an injunction
11 against non-party webhost and domain name registrar).

        **3.    Allowing Domain-Name Transfer As A Copyright Remedy Would Violate Mr. DiBiase's First Amendment Free-Speech Rights.**

14       Even setting aside the fact that Congress has not authorized domain-name transfer as a
15 copyright remedy, Righthaven's request fails for the independent reason that it would violate, if
16 granted, Mr. DiBiase's First Amendment rights.  This is true for two reasons.  First, a domain-
17 name itself represents protected speech that a court cannot silence even based on a predicate
18 finding of copyright infringement.  Second, a domain-name transfer would wrest control of a
19 website's address and place it in the hands of a copyright plaintiff even where most of the
20 website has nothing to do with the infringement allegations at issue.  The First Amendment
21 guards against such rough treatment of free-speech rights.

        **a.    A domain-name represents protected speech that cannot be forfeited based on Righthaven's copyright infringement allegations.**

24       Mr. DiBiase's domain name – nobodycases.com – is a communication that is facially
25 protected by the First Amendment. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 778 (6th Cir.
26 2003) ("The rooftops of our past have evolved into the internet domain names of our present . . .
27 . [T]he domain name is a type of public expression, no different in scope than a billboard or a
28 pulpit . . . .").  If Righthaven wants to restrain that speech, it must allege facts demonstrating that

-8-

Mr. DiBiase's domain name *itself* falls outside of the First Amendment's protections. *See, e.g., Diario El Pais, S.L. v. Nielsen Co.*, No. 07CV11295(HB), 2008 WL 4833012, at *6-7 (S.D.N.Y. Nov. 6, 2008) (dismissing trade libel claim on First Amendment grounds where plaintiff failed to plead actual malice); *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs.*, 175 F. 3d 848, 860-61 (10th Cir. 1999) (affirming dismissal of complaint that attacked protected speech and failed to plead any facts that would overcome First Amendment protection). For example, Righthaven would need to allege that the domain name is obscene, unlawful or defamatory as a necessary first step. But its Complaint does nothing like that, nor is there any basis to do so. Righthaven merely claims that a single blog post appearing on nobodycases.com constitutes copyright infringement. That allegation falls woefully short of what would be needed to support a finding that Mr. DiBiase's domain name does not qualify as constitutionally protected speech.

There is no legal support for the proposition that because infringement has allegedly occurred on nobodycases.com, Righthaven should be entitled forever to control that domain. And the very notion offends common sense. A copyright plaintiff is not entitled to seize a retailer's business sign because infringing articles allegedly are being sold inside or take away the stickered guitar of a street performer who allegedly plays musical compositions without authorization. And it is certainly not allowed to seize a domain name merely because some content on a website is alleged to infringe copyright. *Cf.* 17 U.S.C. §§ 512(c)(1)(C), 512(c)(3)(A)(iii) (requiring copyright holders who want infringing materials removed from a website pursuant to the DMCA's notice-and-takedown regime to provide specific information about the location of the allegedly infringing activity, and, in turn, only requiring the website operator to remove the specifically identified material).

A domain-name transfer order would violate Mr. DiBiase's First Amendment right to speak through his domain name. It would be unconstitutional and fails as a matter of law.

      **b.**    **A domain-name transfer order would violate the First Amendment by interfering with protected speech on Mr. DiBiase's website.**

A domain-name transfer order is also inappropriate because it would impact the entirety of Mr. DiBiase's website, not just the miniscule amount of content about which Righthaven complains. If Mr. DiBiase's domain-name were transferred, Righthaven would be in charge of whether the public could readily access his blog entries, his table of cases, and his original writings. When the public seeks the information currently on nobodycases.com, the result would be whatever Righthaven decided to put there.[4] There is no authority whatsoever to support the position that a copyright plaintiff should be vested with that kind of power over First Amendment-protected speech even if it could establish that some unrelated content is infringing. Because it would cut off public access to Mr. DiBiase's speech, a domain-name transfer order would be massively overbroad and unconstitutional. *See, e.g., Tory v. Cochran*, 544 U.S. 734, 738 (2005) ("An 'order' issued in 'the area of First Amendment rights' must be 'precis[e]' and narrowly 'tailored' to achieve the 'pin-pointed objective' of the 'needs of the case.'") (quoting *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 183-84 (1968)).

By the same token, the Constitution does not permit Righthaven to force Mr. DiBiase to use a different domain name to convey the same information. The Supreme Court has repeatedly held that "one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." *Schneider v. New Jersey*, 308 U.S. 147, 163 (1939); *accord Reno v. ACLU*, 521 U.S. 844, 879-80 (1997) (rejecting argument that content-based restriction was permissible because the law allowed a "reasonable opportunity" for such speech to occur elsewhere on the Internet); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 n.15 (1976) ("We are aware of no general principle that the freedom of speech may be abridged when the speaker's listeners could come by his message by some other means . . .").

---

[4] Essentially, a domain name is like "a street sign in the real world, indicating the location of the Internet merchant and the nature of his business." George C.C. Chen, *A Cyberspace Perspective on Governance, Standards and Control: Electronic Commerce on the Internet: Legal Developments in Taiwan*, 16 J. Marshall J. Computer & Info. L. 77, 113 (1997); *see also Shell Trademark Mgmt. BV v. Canadian AMOCO*, No. 02-01365 EDL, 2002 U.S. Dist. LEXIS 9597, at *10-11 (N.D. Cal. May 21, 2002) (analogizing domain names to road signs). With a transfer of a domain, the street sign would point to a new location.

A domain-name transfer order would also impair the First Amendment rights of Internet users. The First Amendment not only "embraces the right to distribute literature," it also "necessarily protects the right to receive it." *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943); *accord Bd. of Educ. v. Pico*, 457 U.S. 853, 867 (1982) ("[T]he right to receive ideas is a necessary predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom."). This constitutional right applies to information made available over the Internet. *See, e.g., Reno v. ACLU*, 521 U.S. at 874 (finding "no basis for qualifying the level of First Amendment scrutiny" for content on the Internet).

The threat that public access to the information contained on Mr. DiBiase's website would be diminished in response to a domain-seizure order is real. Internet users access nobodycases.com by: (1) typing the domain name directly into a browser; (2) selecting a bookmark stored on a browser; (3) using an Internet search engine; or (4) following a hyperlink from a different webpage. Those methods all would be compromised if Mr. DiBiase's domain-name were taken away. Users would assume that Mr. DiBiase is no longer maintaining his site if their attempts to access nobodycases.com failed. Accordingly, a seizure order would violate the public's First Amendment interest in receiving information through Mr. DiBiase's website.

Righthaven cannot find refuge by arguing that it is appropriate to lock and transfer the nobodycases.com domain to prevent unspecified infringements that might occur in the future. That would be an impermissible prior restraint, "the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and run roughshod over established First Amendment law. "While a specifically-tailored injunction in a copyright case does not offend the First Amendment, attempting to shut down a critic's speech activities, including those that do not implicate the copyright laws in the least, would constitute an unwarranted prior restraint on speech." *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1259 (N.D. Cal. 1995); *see also Org. for a Better Austin v. Keefe*, 402 U.S. 415 (1971) (striking down injunction against leafleting); *Vance v. Universal Amusement Co.*, 445 U.S. 308 (1980) (overturning a permanent injunction against a movie theater); *Ctr. For Democracy & Tech. v. Pappert*, 337 F. Supp. 2d 606, 651 (E.D. Pa.

2004) (statute requiring the blocking of access to particular domain names and IP addresses amounted to an unconstitutional prior restraint); *Religious Tech. Ctr. v. Lerma*, 897 F. Supp. 260, 263 (E.D. Va. 1995) ("If a threat to national security was insufficient to warrant a prior restraint in *New York Times Co. v. United States*, the threat to plaintiff's copyrights and trade secrets is woefully inadequate."). A vague plea that a transfer order is necessary to prevent future infringement would not pass constitutional muster.

* * *

Righthaven's demand for domain-name seizure is baseless and unconstitutional. The Court should put a stop to Righthaven's overreaching and dismiss its domain-name transfer request with prejudice.

### B. Righthaven Is Not Entitled to Attorney's Fees Under The Copyright Act.

Righthaven's request for attorney's fees should be dismissed with prejudice because controlling Supreme Court and Ninth Circuit law prohibit the recovery of statutory attorney's fees unless there is an independent attorney-client relationship. No such relationship exists here.

In *Kay v. Ehrler*, 499 U.S. 432 (1991), the Supreme Court ruled that a pro se attorney could not recover statutory attorney's fees in a civil rights case. The Court reasoned that the word "attorney" in the statute authorizing fees "assumes an agency relationship, and it seems likely that Congress contemplated an attorney-client relationship as the predicate for an award . . . ." *Id*. at 435-36. The Court determined that "the overriding statutory concern is the interest in obtaining *independent* counsel for victims of civil rights violations." *Id*. at 437 (emphasis added). The Ninth Circuit has expanded *Kay*, ruling that pro se attorney *defendants* are also not entitled to statutory attorney's fees. *Elwood v. Drescher*, 456 F. 3d 943, 947 (9th Cir. 2006). *Elwood* explains why independence between client and lawyer is the touchstone when deciding whether statutory fees are available: "We think that resort to independent counsel for defendants, as well as plaintiffs, serves the statutory policy of ensuring effective prosecution of meritorious civil rights cases." *Id*. at 948. The converse is also true: a lack of independence between counsel and client can distort the decision making process and result in "dilatory or obstructionist litigation tactics." *Id*. The *Kay* rule applies to Copyright Act fee requests. *See*

1  *Phillips v. Beck*, Case No. 06-00628 SOM/KSC, 2008 WL 958060, *5 (D. Haw. Apr. 09, 2008);
2  *Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1263(D.N.M. 2009) (pro se copyright plaintiff "has
3  not incurred, and is not entitled to recover, attorney's fees").

4      *Kay* instructs that an attorney-client relationship must exist before a litigant may obtain a
5  statutory fees award. *See Kay*, 499 U.S. at 436-37.  But where is the independent attorney-client
6  relationship here?  The lawyers who run Righthaven are the same ones who filed and are
7  prosecuting all of these lawsuits.  If "Righthaven" does not like the way that a case is unfolding,
8  is there any realistic chance that it will change counsel?   Is there any plausible circumstance in
9  which "Righthaven" would disagree with its lawyers and override their case-strategy decisions?
10  Or implore them to work more efficiently or proceed less aggressively?  Of course not.
11  Righthaven is not independent from its lawyers, it is its lawyers.  It may not obtain statutory
12  attorney's fees. *See Doe v. Bd. of Educ. of Baltimore County*, 165 F. 3d 260, 263 (4th Cir. 1998)
13  (attorney-parent not entitled to statutory attorney's fees for representing his child: "the central
14  thrust of *Kay* is that fee-shifting statutes are meant to encourage the effective prosecution of
15  meritorious claims, and that they seek to achieve this purpose by encouraging parties to obtain
16  independent representation.").

17      A Fourth Circuit ruling confirms that the absence of an independent attorney-client
18  relationship dooms Righthaven's fees request. In *Bond v. Blum*, 317 F.3d 385, 400 (4th Cir.
19  2003), the Court allowed a law firm that used its own members in litigation to recover statutory
20  attorney's fees because the lawyers representing the law firm were independent and distinct from
21  the firm itself: "[T]he law firm still remains a business and professional entity distinct from its
22  members, and the member representing the firm as an entity represents the firm's distinct
23  interests in the agency relationship inherent in the attorney-client relationship. Although a given
24  representation of a law firm by one or more of its members could suffer from a lack of
25  independence, there is no indication in this case of a relationship that tended to distort
26  independent judgment . . . ."  That makes sense.  A law firm expects competent and dispassionate
27  representation from its member-lawyers and has powerful motivations to insist upon nothing
28

1   less. The law firm, as the client, is an entity separate and distinct from the members who
2   represent it. *Cf. Kay*, 499 U.S. at 436 n.7.

3   In sharp contrast, no one is minding the store at "Righthaven" to ensure that its lawyers
4   prosecute these cases with disinterest. Righthaven's principals are its lawyers and its lawyers are
5   using these lawsuits as a business venture. *See* Volkmer Decl., Ex. D (http://www.wired.com
6   /threatlevel/2010/07/copyright-trolling-for-dollars).[5] The dangers of non-objectivity described in
7   *Kay* and *Elwood* are far more acute here, and there is no logical reason why Righthaven should
8   be allowed to recover fees when those litigants were not. *See, e.g., Falcone v. I.R.S.*, 714 F. 2d
9   646, 648 (6th Cir. 1983) (denying attorney's fees to pro se plaintiffs because a contrary ruling
10  threatened to create a "cottage industry" of lawyer-driven litigation, and noting that Congress did
11  not intend to "subsidize attorneys without clients").

12  The *Kay* rule requiring an independent attorney-client relationship as a prerequisite to
13  statutory attorney's fees bars Righthaven's request for fees under Section 505 of the Copyright
14  Act. It should be dismissed with prejudice.

## IV.    CONCLUSION

16  For the foregoing reasons, Mr. DiBiase respectfully requests that the Court dismiss with
17  prejudice Righthaven's requests for: (1) domain-name transfer; and (2) attorney's fees.

18  Dated: October 29, 2010                    Respectfully submitted,

19                                             WILSON SONSINI GOODRICH & ROSATI
                                               Professional Corporation
20

21                                             By: /s/ Colleen Bal
                                               COLLEEN BAL (*pro hac vice* pending)
22                                             BART E. VOLKMER (*pro hac vice* pending)
                                               650 Page Mill Road
23                                             Palo Alto, California 94304

24                                             Counsel has complied with LR IA 10-2

---

[5] Righthaven cited this article with approval in a prior court submission opposing a Rule
28  12(b)(6) motion. *See Righthaven v. Realty One,* Case 10-cv-01036 (Dkt. No. 12 at 14 n.6).

ELECTRONIC FRONTIER FOUNDATION

By: /s/  Kurt Opsahl
Kurt Opsahl (*pro hac vice*)
Corynne McSherry (*pro hac vice*)
454 Shotwell Street
San Francisco, CA 94110


CHAD A. BOWERS, LTD.

By: /s/  Chad Bowers
Chad A. Bowers
NV State Bar Number 7283
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorneys for Thomas A. DiBiase*