COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
BART E. VOLKMER (*pro hac vice*)
bvolkmer@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, Ca 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, Ca 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys For Defendant & Counterclaimant
THOMAS A. DIBIASE

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br>v.<br><br>THOMAS A. DIBIASE, an individual,<br><br>Defendant.<br>_____<br>THOMAS A. DIBIASE, an individual,<br><br>Counterclaimant,<br>v.<br><br>RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Counter-defendant.<br>_____ | CASE NO.: 2:10-cv-01343-RLH-PAL<br><br>**DEFENDANT THOMAS A. DIBIASE'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

## I. INTRODUCTION

Righthaven has made a business out of filing serial copyright lawsuits, and pressuring the defendants to settle, even when the defendants have meritorious defenses. To advance this strategy, Righthaven's complaints routinely seek remedies that are unavailable as a matter of law. Mr. DiBiase moved for dismissal with prejudice of two of the most unsupportable remedies that Righthaven seeks in its prayer for relief: (1) an order transferring the domain name of Mr. DiBiase's website to Righthaven; and (2) attorney's fees under the Copyright Act for fees accrued in the absence of an independent attorney-client relationship.

With respect to Mr. DiBiase's domain-name argument, Righthaven concedes that the Copyright Act does not authorize domain-name seizures but nonetheless attempts to salvage its prayer for relief by offering up inapposite case law. Righthaven's response on the issue of attorney's fees is equally unpersuasive. Contrary to Righthaven's claim, the issue has not been mooted by Righthaven's belated retainer of outside counsel. Righthaven's arguments fail as a matter of law, and this Court should grant the motion to dismiss, with prejudice.

## II. ARGUMENT

### A. The Court Should Dismiss Righthaven's *In Terrorem* Domain Name Demand

Righthaven has not and cannot offer any legal basis for this Court to order Mr. DiBiase's domain name registrar to transfer his domain name to Righthaven. Indeed, in its opposition, Righthaven admits, as it must, that its request to transfer Mr. DiBiase's domain name is not authorized by the Copyright Act. Righthaven Opposition to Motion to Dismiss (Dkt. No. 29) ("RH Brief") at 5 ("Righthaven concedes that [domain-name transfer] is not authorized under the Copyright Act."). And it does not even attempt to address Mr. DiBiase's Rule 65 argument or explain how the remedy of domain-name transfer could comport with the United States Constitution. For those reasons alone, the motion should be granted.

Instead of confronting Mr. DiBiase's arguments, Righthaven states that it "is unable to ascertain whether surrender of the Website is appropriate." RH Brief at 6. That shows that Righthaven has neither alleged facts, nor has a Rule 11 basis to allege facts, to support its demand, even under its own incorrect view of the law. Righthaven thus admits that its Complaint fails to

1 set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic*, 550 U.S. at 555; *see also Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (holding that courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated ... laws in ways that have not been alleged.").

In addition to lacking factual support, Righthaven does not provide any valid legal grounds to justify domain-name transfer.  Righthaven points to inapposite authorities to support its demand for a judgment ordering a non-party to transfer a First Amendment–protected domain name pursuant to this Court's equitable powers, at some hypothetical future point when it "present[s] evidence which would justify transfer of the Website."[1]  RH Brief at 6.  Those authorities do not support Righthaven's cause.

**First**, Righthaven invokes the general equitable powers of the district court.  But those powers are limited, and constrained by the terms of the Copyright Act.  A district court may only issue an injunction in a copyright case "on such terms as it may deem reasonable *to prevent or restrain infringement of a copyright*." 17 U.S.C. § 502(a).  There is not one shred of evidence or even a suggestion that the domain-name transfer of Mr. DiBiase's site is necessary to prevent the alleged infringement at issue in this case.  Indeed, this action concerns a single, isolated allegation of infringement concerning a blog post that is no longer available on Mr. DiBiase's website.  It is fantasy for Righthaven to insinuate that it needs a domain-name transfer to prevent ongoing alleged infringement or that it could ever "present[] evidence which would justify transfer of the website."  RH Brief at 6; *see Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1154-55 (N.D. Cal. 2008) (claim for injunctive relief in copyright action brought by owner of adult content mooted by online service's decision to remove adult content from its service).

---

[1] Righthaven's brief refers to the proposed judgment transferring control over the domain name as "transfer of" or "surrender of" the *website*.  Righthaven appears to be confused about the difference between a domain name and a website.  *Compare* DiBiase Motion to Dismiss (Dkt. No. 17) at p. 4, fn. 2 (explaining the domain name system) with http://en.wikipedia.org/wiki/Website.  An order giving Righthaven ownership and control over the *content* of Mr. DiBiase's website would be unlawful for even more reasons.  However, this Court need only address the order that Righthaven sought in its Complaint.

**Second**, Righthaven relies on Rule 64 to support its domain-name transfer request. *See* RH Brief at 6 ("It cannot be disputed that federal courts are authorized to freeze assets in the aid of ultimately satisfying a judgment in a case," citing Fed. R. Civ. Proc. 64.). But Rule 64 addresses "Remedies Under State Law." Fed. R. Civ. P. 64. The Rule specifically notes that "a federal statute governs to the extent it applies." *Id*. Righthaven has no state causes of action, having brought a claim only under the federal Copyright Act, and Righthaven has admitted that the Copyright Act does not authorize its domain name seizure. Thus, Rule 64 does not save its prayer for relief.

And even if that Rule did apply in this case, it provides no support for Righthaven's argument. Rule 64's general provisions authorizing provisional remedies do not overcome the arguments set forth in Mr. DiBiase's opening brief: that the Copyright Act, Rule 65, and the First Amendment categorically prohibit domain-name transfer as a remedy, post-judgment, pre-judgment, or otherwise. Moreover, Righthaven's Complaint does not even seek Rule 64 seizure of Mr. DiBiase's domain name. It asks for a judgment that *permanently* transfers the nobodycases.com domain to Righthaven based on alleged copyright infringement. *See* Compl. at 5, ¶ 3 (seeking an order directing "the current registrar. . . to lock the Domain and *transfer control of the Domain to Righthaven*.") (emphasis added). Rule 64 does not purport to authorize that remedy.

The cases cited by Righthaven address freezing assets during the pendency of trial, while the remedy at issue here is a proposed judgment, which would permanently transfer an asset. *See* RH Brief at 6 ("Righthaven has not asked the Court to transfer the Website as part of a preliminary injunction."). Transferring the nobodycases.com domain name to Righthaven does not "preserve the status quo," *Oncology Assocs.*, 198 F.3d at 496; it changes it. *See* RH Brief at 6; *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766 (9th Cir. 1995).

Furthermore, in *Oncology Assocs.* the Fourth Circuit was distinguishing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), in which the Supreme Court held that an injunction freezing assets may not be entered in an action for damages where no lien or equitable interest in the assets is claimed. As *Oncology Assocs.* explained, a "nexus between

the assets sought to be frozen through an interim order and the ultimate relief requested in the lawsuit *is essential to the authority* of a district court" to enter the order. *Oncology Assocs.,* 198 F.3d at 496–97 (emphasis added).Here, Righthaven has not alleged or argued anything to suggest it has a lien or equitable interest in the domain name, nor demonstrated any nexus between its copyright claim and the domain name asset.  Indeed, since the only cause of action is copyright infringement, and Righthaven has already admitted that the Copyright Act does not provide for domain name seizure, there would be no such basis anyway. *Compare with In re Focus Media Inc.,* 387 F.3d 1077, 1085 (9th Cir. 2004) (allowing asset freeze when complaint pled "a cause of action for fraudulent conveyance, and a cause of action for constructive trust").[2]

Righthaven is straining to find legal justification for its domain-name demand because its demand is not based in a *bona fide* claim to an equitable interest in the domain.  Rather, it was asserted for its *in terrorem* effect.  *See* Steve Green, *Some targets of Righthaven lawsuits fighting back*, LAS VEGAS SUN, (August 4, 2010) (Righthaven CEO Steve Gibson explaining that the company sees the domain name threat as "something available to deter infringements."), *available at* http://www.lasvegassun.com/news/2010/aug/04/some-targets-righthaven-lawsuits-fighting-back/.  As the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a court should not permit "a largely groundless claim [designed to] take up the time of a number of other people, with the right to [take up that time] representing an *in terrorem* increment of the settlement value." *Bell Atlantic* at 558 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)).  While the Court was looking at the costs of discovery, the reasoning applies equally to the assertion of specious remedies designed solely to increase the settlement value of a case.  *See*

---

[2] Righthaven's cite to *Commodity Futures Trading* is equally meritless.  While cited for the proposition that a court may freeze assets to secure payment of attorney's fees, RH Brief at 6, the case actually holds that a court can prohibit a defendant from using frozen assets to pay his attorneys.  *Commodity Futures Trading,* 67 F.3d at 775.  Whether the assets were properly frozen in the first place was not before that court.  By contrast, in *Kokka & Backus, PC v. Bloch*, No. C 10-0110 RS, 2010 WL 331336 (N.D.Cal. January 20, 2010), the plaintiff law firm was suing to secure payment of attorney's fees.  The firm had helped the defendant prosecute numerous patents, but the defendant refused to pay.  While the law firm "suggests that it has an equitable interest in the Patent Portfolio ... plaintiff does not appear to be contending that a judgment in its favor will give it ownership rights in the Patent Portfolio." *Id.* at *2.  Accordingly, even though the law firm sought equitable relief, the court denied the proposed asset freeze.

1  *Limestone Dev. Corp. v. Lemont*, 520 F.3d 797, 803 (7th Cir. 2008)  ("Under *Bell Atlantic* [a
2  complaint that] by reason of the potential cost of a judgment to the defendant creates the 'in
3  terrorem' effect ... must have some degree of plausibility to survive dismissal.")

4  The paucity of Righthaven's arguments leave only one conclusion—the company asserted
5  this claim in bad faith.  It is time to put a stop to Righthaven's overreaching. This Court should
6  order the dismissal of Righthaven's prayer for the transfer of Mr. DiBiase's domain name, with
7  prejudice.

8  **B.     This Court Should Dismiss Righthaven's Demand for *Pro Se* Attorney's Fees**

9  Righthaven offers no *legal* argument in support of its claim for attorneys fees.  Instead, it
10 hired outside attorney Shawn Mangano and now asserts that this new fact disposes of the motion.
11 RH Brief at 5; *see also* Docket No. 24 (Substitution of Counsel). Righthaven is incorrect.

12 While Mr. DiBiase is not claiming that this Court should dismiss the prayer for fees with
13 respect to Mr. Mangano's fees at this stage,[3] Righthaven's motion remains live for Righthaven's
14 *pro se* fees.  Courts routinely grant partial dismissal when some parts of the relief are barred as a
15 matter of law and others are not. For example, in *DRK Photo v. Houghton Mifflin Harcourt Publ'g*
16 *Co.,* No. CV-09-8225-PCT-NVW, 2010 WL 1688767 (D.Ariz. April 26, 2010), the court granted
17 a partial dismissal of plaintiff's copyright claim.  Some parts of the claim were based on
18 unregistered works, while other parts were based on registered works.  Since the Copyright Act
19 does not permit a party to sue over unregistered works, the court granted partial dismissal with
20 respect to the unregistered works.

21 In *Bullington v. United Air Lines, Inc.*, 186 F. 3d 1301 (10th Cir. 1999), the court affirmed
22 a partial dismissal of claims.  In that case, the plaintiffs had charged employment discrimination
23 based on conduct that occurred over a period of time.  The district court had dismissed the claim
24 based on 1993 conduct as untimely, while allowing the claims based on 1995 conduct.  In another
25 example, *Franklin v. Dudley*, No. CIV 08-1223BHS, 2010 WL 481383 (E.D. Cal. February 05,

---

[3] At the appropriate time, Mr. DiBiase will show that Righthaven is not entitled to Mr. Mangano's or any other attorney's fees because its copyright claim is meritless.  However, this issue is not yet before the court.

1  2010), the court partially dismissed a 42 U.S.C. § 1983 claim, dismissing the portion based upon
2  any violation of the American Disabilities Act and Section 504 of the Rehabilitation Act without
3  dismissing the portion based upon any Eighth Amendment violation.

4     As these cases illustrate, this Court is not constrained by Righthaven's recent engagement
5  of outside counsel, and may still rule on the underlying issue of the copyright litigation factory's
6  entitlement to seek fees when it acts as a *pro se* litigant. Accordingly, for the reasons explained in
7  Mr. DiBiase's motion, this Court can and should grant a partial dismissal of Righthaven's claim
8  for attorneys' fees with respect to any fees purportedly incurred as a *pro se* litigant through its
9  lawyer-employees.

## III. CONCLUSION

For the foregoing reasons, Mr. DiBiase respectfully requests that the Court dismiss with prejudice Righthaven's requests for: (1) domain-name transfer; and (2) *pro se* attorney's fees.

Dated: December 15, 2010            Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Colleen Bal
Colleen Bal (*pro hac vice*)
Bart E. Volkmer (*pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304

ELECTRONIC FRONTIER FOUNDATION

By: /s/ Kurt Opsahl
Kurt Opsahl (*pro hac vice*)
Corynne McSherry (*pro hac vice*)
454 Shotwell Street
San Francisco, CA 94110

CHAD A. BOWERS, LTD.

By: /s/ Chad Bowers
Chad A. Bowers
NV State Bar Number 7283
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorneys for Thomas A. DiBiase*