COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
BART E. VOLKMER (*pro hac vice*)
bvolkmer@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, Ca 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, Ca 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys For Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RIGHTHAVEN LLC, a Nevada limited-liability company,

Plaintiff,

v.

THOMAS A. DIBIASE, an individual,

Defendant.

---

THOMAS A. DIBIASE, an individual,

Counterclaimant,

v.

RIGHTHAVEN LLC, a Nevada limited-liability company,

Counter-defendant.

CASE NO.: 2:10-cv-01343-RLH-PAL

**REDACTED VERSION OF DEFENDANT-COUNTERCLAIMANT THOMAS A. DIBIASE'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

# TABLE OF CONTENTS

Page

MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. Righthaven's Complaint & Its Ownership Allegations ..... 2

B. The Strategic Alliance Agreement Between Righthaven And Stephens ..... 2

III. ARGUMENT ..... 5

A. Righthaven Lacks Standing To Sue Over The McMurdo Article. ..... 6

B. The Assignment Fails Because The SAA Is Champertous. ..... 10

1. Righthaven Has No Legitimate Interest In This Litigation. ..... 11

2. Righthaven Undertook This Litigation At Its Own Expense. ..... 11

3. Righthaven Undertook This Litigation In Consideration Of Receiving A Portion Of The Proceeds Of The Litigation. ..... 12

C. The Court Should Dismiss This Case With Prejudice, Enter Judgment In Mr. DiBiase's Favor And Consider Ordering Righthaven To Show Cause Why Other Copyright Actions Pending In This District Should Not Be Dismissed. ..... 13

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Allstate Ins. Co. v. Hughes*, 358 F.3d 1089 (9th Cir. 2004) ........ 14

*Althin v. West Suburban Kidney Center*, 874 F. Supp. 837 (N.D. Ill. 1994) ........ 9

*Augustine v. U.S.,* 704 F.2d 1074 (9th Cir. 1983) ........ 5

*Campbell v. Trustees of Stanford University*, 817 F.2d 499 (9th Cir. 1987) ........ 7

*Del Webb Communities, Inc. v. Partington*, No. 2:08-cv-00571, 2009 WL 3053709 ........ 10, 12

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125 (9th Cir. 2005) ........ 5, 9

*Graham v. La Crossee & M.R. Co.* 102 U.S. 148 (1880) ........ 13

*Gruber v. Baker*, 20 Nev. 453, 23 P. 858 (1890) ........ 12

*In re Primus*, 436 U.S. 412 (1978) ........ 10

*Lake Washington School Dist. No. 414 v. Office of Superintendent of Public*, 634 F.3d 1065 (9th Cir. 2011) ........ 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ........ 6

*Lum v. Stinnett*, 87 Nev. 402, 488 P.2d 347 (1971) ........ 10, 12

*Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598 (5th Cir. 1982), *cert. dismissed*, 458 U.S. 1122 (1982) ........ 10

*Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd* 388 Fed. Appx. 721 (9th Cir. 2010) ........ 8, 9

*Rambus Inc. v. Nvidia Corp.,* 2009 WL 636536 (N.D. Cal. 2009) ........ 14

*Righthaven LLC v. Pahrump Life*, Case No. 2:10-cv-01575-JCM-PAL ........ 14

*Righthaven v. Majorwager.com*, No. 2:10-cv-00484, 2010 WL 4386499 (D. Nev. Oct. 28, 2010) ........ 9

*Schwartz v. Eliades*, 113 Nev. 586, 939 P.2d 1034 (Nev. 1997) ........ 10, 12

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881 (9th Cir. 2005) ........ 6, 7, 8, 9

*Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683 (9th Cir. 2002) ........ 14

*US Naval Institute v. Charter Communications*, 936 F.2d 692 (2nd Cir. 1991) ........ 7

*Vianix Delaware LLC v. Nuance Communications, Inc.*, No. 09-0067, 2009 WL 1364346 (D. Del. May 12, 2009) ........ 6

## STATUTES

17 U.S.C. § 101 .......... 7

17 U.S.C. § 106 .......... 2, 6, 7

17 U.S.C. § 501 .......... 6, 7, 8

## RULES

Fed. R. Civ. P. 12(h)(3) .......... 1, 5, 9, 13

Local Rule 7.1-1 .......... 3

## MISCELLANEOUS

PATRY ON COPYRIGHT (2009) .......... 10, 12, 13

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(h)(3), Defendant-counterclaimant Thomas A. DiBiase ("Mr. DiBiase") respectfully moves to dismiss Righthaven's Complaint with prejudice for lack of subject-matter jurisdiction. This motion is supported by the accompanying memorandum of points and authorities and the declaration of Bart E. Volkmer.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant-counterclaimant Thomas A. DiBiase ("Mr. DiBiase") moves to dismiss Plaintiff/counter-defendant Righthaven LLC's ("Righthaven") copyright-infringement claim pursuant to Fed. R. Civ. P. 12(h)(3) for lack of subject-matter jurisdiction. A recently produced Strategic Alliance Agreement ("SAA") between Righthaven and Stephens Media ("Stephens") shows—beyond any genuine dispute—that Righthaven does not own or have sufficient rights in the copyright at issue in this case to file a copyright-infringement lawsuit. While Righthaven bases its ownership claim on an alleged assignment from Stephens, the SAA demonstrates that Stephens has only granted Righthaven a qualified right to bring suit. The Copyright Act and an *en banc* opinion from the Ninth Circuit make clear that an assignment of a copyright cause of action is not enough to establish standing. In addition, the SAA is an illegal arrangement for champerty, violating the venerable policy that one may not establish a business to enforce the rights that others are not disposed to enforce. As a champertous agreement, the purported assignment is a nullity, and Righthaven has not lawfully acquired the copyright underlying its claim. Accordingly, the Court lacks Article III jurisdiction to adjudicate Righthaven's copyright-infringement lawsuit and it should be dismissed with prejudice.

In addition, Mr. DiBiase notes that Righthaven has filed hundreds of lawsuits in this district apparently based on identical sham assignments, several of which are pending before this Court. Where the defendants in those cases lack representation and, therefore, are not well-positioned to raise the standing issue, Mr. DiBiase respectfully urges the Court to consider ordering Righthaven to show cause why those cases should not also be dismissed for lack of Article III standing.

## II. FACTUAL BACKGROUND

### A. Righthaven's Complaint & Its Ownership Allegations

On August 9, 2010, Righthaven filed this action. *See* Dkt. No. 1. Righthaven alleges that Mr. DiBiase, a former Assistant United States Attorney, committed copyright infringement by posting to his criminal-justice blog a June 11, 2010 *Las Vegas Review-Journal* ("LVRJ") article written by Doug McMurdo entitled "Man who killed wife sought ultimate sentence" (the "McMurdo Article"). Compl. ¶¶ 6-9. Righthaven claims to be the "owner" of the McMurdo Article. Compl. ¶¶ 6, 18, 25. Righthaven also alleges that it "holds the exclusive right" to reproduce, distribute, publicly display, and prepare derivative works of the article pursuant to 17 U.S.C. § 106(1), § 106(2), § 106(3) and § 106(5). Compl. ¶¶ 25-28. Those are curious assertions in light of the fact that the article was written by a LVRJ reporter and to this day remains available for free on the LVRJ website. Righthaven claims ownership based on a transfer "by written agreement" from Stephens, the publisher of the LVRJ. Compl. Ex. 4. Righthaven did not attach to the Complaint the agreement governing its relationship with Stephens and did not produce that document with its initial disclosures served in January 2011. Instead, it waited until April 8, 2011—eight months after the case was filed—to turn over the document as a "Supplemental Initial Disclosure." Volkmer Decl., ¶ 2.

### B. The Strategic Alliance Agreement Between Righthaven And Stephens

***Background of the SAA***: Righthaven is run by lawyers. Stephens owns the LVRJ, which publishes and presumably owns various news articles. If Stephens believes that its copyrights are being infringed and wishes to pursue legal remedies, the customary path would have been to hire counsel and proceed with litigation. But that is not what Stephens did. Instead, Stephens and Righthaven entered into an elaborate—and until very recently, secret—Strategic Alliance Agreement under which Righthaven's lawyer-principals were purportedly granted the right to sue over Stephens' copyrights without Stephens being named as a party to the litigation. If that arrangement were valid, it would provide an enormous benefit to Stephens, which could more easily avoid the costs, discovery burdens, and reputational damage of being a party to an aggressive litigation campaign that has targeted hundreds of individuals and non-profit groups.

Righthaven stood to benefit, too. It would not face the constraints of representing a client in litigation. Instead, Righthaven would be representing itself while prosecuting the claims of another.

***The SAA's Litigation Scheme***: The SAA states that Stephens shall "assign" to Righthaven certain classes of copyrights that might be subject to later copyright-infringement actions. SAA § 3.1 (Volkmer Decl., Ex. A). Righthaven then has sixty days to inform Stephens whether it intends to file suit over the "assigned" copyrights. *Id.* § 3.3. If not, Righthaven must "reassign" back to Stephens the copyrights that it passes on. *Id.* If Righthaven elects to proceed with litigation, it generally must file suit within six to twelve months. *Id.* §§ 3.3, 4. Stephens, however, has veto power over Righthaven's lawsuits if the putative defendant is a charitable organization, judgment-proof, is affiliated with Stephens, or has a "valued business relationship" with Stephens. *Id.* § 3.4. Righthaven has the option of making settlement demands of would-be defendants prior to commencing litigation. *Id.* § 4. Upon recovering in an infringement action, Righthaven must pay Stephens 50% of the proceeds, less costs. *Id.* § 5.[1]

***The Sham Assignment Provision***: The purported "assignment" of copyrights from Stephens to Righthaven is a sham. Even after the purported "assignment," Stephens retains the unfettered right to "Exploit" the works that are subject to the alleged assignment. SAA § 7.2. And Righthaven has "no right or license to Exploit or participate in the receipt of royalties from the Exploitation of the Stephens Media Assigned Copyrights," other than to collect 50% of the proceeds from infringement lawsuits. *Id.* Under the SAA, the term "exploit" is broadly defined: the term means "to use, make, sell, or otherwise exploit in any manner whatsoever (through any means now known of hereafter [d]eveloped)." SAA, Schedule 1 - Definitions at 13. The upshot of the provision is that Righthaven does not have *any* rights with respect to the "assigned" copyrights other than to file lawsuits and collect a share of the proceeds. Stephens retains all of the other rights, without any duty to pay Righthaven a single cent for the money it makes licensing the

[1] Pursuant to Local Rule 7.1-1, Righthaven should have disclosed Stephens' pecuniary interest in this case. *See* Dkt. No. 6 (Righthaven's Certificate of Interested Parties, listing only Righthaven and its owners Net Sortie LLC and SI Content Monitor LLC, but omitting Stephens).

"assigned" copyrights. In this case, Stephens has all of the rights to commercially exploit the McMurdo Article and Righthaven has none. That explains why the article still appears on the LVRJ website without any indicia of an "assignment" to Righthaven.[2]

***The Illusory Nature of the Assignment***: The purported assignment is a sham on its face, but suffers from yet another defect: it is illusory. Stephens purports to retain "the right at any time to terminate, in good faith, any Copyright Assignment . . . and enjoy a right of complete reversion to the ownership of any copyright . . . ." SAA § 8. If Stephens elects to exercise this "reversion" option with respect to any copyright that Righthaven has sued over, then Stephens becomes responsible for effectuating the termination of the litigation, is responsible for any losses associated with the dismissal, and must compensate Righthaven for the work it has put in. *Id.* This provision purports to vest with Stephens the right to have a copyright assigned back to it on demand, and to put a stop to any action that Righthaven has commenced. If Righthaven actually owned the copyright to the McMurdo article, it could not be encumbered in this way.

***Stephens' Representations in the SAA***: The artificial nature of the alleged assignment is also borne out by the representations that Stephens makes in the SAA. Stephens represents that it will not "sell," encumber or "assign" to any third party the very copyrights that it has purported to "assign" to Righthaven, unless it receives Righthaven's permission first. SAA § 9.3. That provision only makes sense if Stephens has not, in fact, assigned copyrights to Righthaven at all. Indeed, Stephens retains the right to use the "assigned" copyrights as collateral when receiving funding, so long as they are not singled out in the loan documents. *Id.* Stephens also represents that it will not settle any of the cases that Righthaven has brought unless it receives Righthaven's approval. *Id.* These representations are entirely inconsistent with a true assignment and entirely consistent with Stephens attempting to assign a naked cause of action for copyright infringement to Righthaven.

---

[2] *See* McMurdo Article, *available at* http://www.lvrj.com/news/retired-teacher-gets-death-penalty-for-wife-s-murder-96191524.html ("Copyright © Stephens Media LLC 1997 – 2011").

***The Allocation of Liability for Abuse of Process/Malicious Prosecution***: Finally, the SAA acknowledges Stephens' ownership rights in the "assigned" copyrights by stating that Righthaven *and* Stephens "may be liable for [a defendant's] attorneys' fees as required by Law in connection with an Infringement Action." SAA § 11. Both parties understood that a lawsuit brought to coerce a settlement "may result in liability for malicious prosecution or abuse of process." *Id*. By contract, the parties allocated liability for that inherent risk to Righthaven. If the copyrights had truly been assigned to Righthaven, this provision would be unnecessary, as Righthaven would have borne all of the risks associated with copyright actions that it instituted.

## III. ARGUMENT

Righthaven's case against Mr. DiBiase should be dismissed under Rule 12(h)(3) for lack of subject-matter jurisdiction. Righthaven has not suffered any injury-in-fact under Article III of the Constitution and lacks statutory standing under the Copyright Act because it does not own the McMurdo Article, nor does it have sufficient rights in it to bring suit. The law is well established that a copyright owner may not assign a cause of action for copyright infringement to a third party. Instead, a party may only bring an action for copyright infringement if it is the legal or beneficial owner of an exclusive copyright interest. Here, the purported assignment from Stephens to Righthaven does not vest Righthaven with any ownership rights in the McMurdo Article. The only thing that Righthaven has actually received from Stephens is a heavily qualified right to file infringement suits based on certain Stephens' newspaper articles and to share in the proceeds from those lawsuits. That is not close to being enough to effectuate a valid assignment under the text of the Copyright Act or under binding Ninth Circuit authority and, in fact—as explained below—the purported assignment is void as champertous. Righthaven lacks standing to bring suit over the McMurdo Article, and this action should be dismissed with prejudice under Rule 12(h)(3) because Righthaven cannot show subject-matter jurisdiction over its copyright claim. *See Augustine v. U.S.*, 704 F.2d 1074, 1075 n.3 (9th Cir. 1983) ("subject matter jurisdiction . . . may be raised by the parties at any time pursuant to Fed. R. Civ. P. 12(h)(3)").

**A. Righthaven Lacks Standing To Sue Over The McMurdo Article.**

Righthaven does not own sufficient rights in the McMurdo Article to bring suit over it and therefore lacks standing to bring this action. "Standing is both a constitutional and statutory principle." *Lake Washington School Dist. No. 414 v. Office of Superintendent of Public*, 634 F.3d 1065, 1067 (9th Cir. 2011). "It is an inexorable command of the United States Constitution that the federal courts confine themselves to deciding actual cases and controversies." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005) (en banc). To have standing under Article III of the Constitution, a federal-court "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations and quotations omitted). Under the Copyright Act, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). "The bare assignment of an accrued [copyright] cause of action is impermissible." *Silvers v. Sony Pictures Entertainment, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005). Where a plaintiff "is not the owner of the copyrights, and it does not have a beneficial interest in the copyrights it alleges defendant violated, it could not have suffered an invasion of its legally protected interest." *Vianix Delaware LLC v. Nuance Communications, Inc.*, No. 09-0067, 2009 WL 1364346, at *2 (D. Del. May 12, 2009) (holding that plaintiff did not have standing to bring copyright infringement action because it did not own or retain a beneficial interest in copyrights at issue).

A proper standing analysis in a copyright action starts with the Copyright Act's text. Section 501(b) states that only "[t]he legal or beneficial owner of an exclusive right under a copyright" is entitled to bring suit. 17 U.S.C. § 501(b). Section 106 of the Copyright Act defines the relevant "exclusive rights" in the copyright for the McMurdo Article:

- to reproduce the copyrighted work in copies or phonorecords;
- to prepare derivative works based upon the copyrighted work;
- to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; and

- to display the copyrighted work publicly.

17 U.S.C. § 106(1), (2), (3), (5). Righthaven is not the legal or beneficial owner of *any* exclusive Section 106 rights in the McMurdo Article. The SAA says that Stephens "shall retain" the right to exploit the article in all forms: *only Stephens* has the exclusive right to reproduce, prepare derivative works, distribute copies, and publicly display the article. SAA § 7.2. Specifically, Section 7.2 provides that Stephens Media "shall retain . . . an exclusive license to Exploit the Stephens Media Assigned Copyrights for any lawful purpose whatsoever." "Exploit" is a defined term, meaning "to use, make, sell, or otherwise exploit in any manner whatsoever." SAA, Schedule 1 – Definitions at 13. Taken together, Section 7.2 and the definition of Exploit cover every possible exclusive right in the McMurdo Article. Righthaven has "no right" to exploit the article or even receive royalties from Stephens' commercial exploitation. *Id*. Instead, Righthaven merely has "the right to proceeds" from copyright-infringement lawsuits. *Id*. That is not an exclusive right under the Copyright Act and does not vest Righthaven with the right to sue. *See* 17 U.S.C. § 501(b) (only legal or beneficial owners may bring suit).

The SAA's terms do not purport to transfer any exclusive rights from Stephens to Righthaven in the first instance. But even if Righthaven received those rights and transferred them back to Stephens, the Article III standing result would be exactly the same.[3] A copyright owner that licenses all of its Section 106 right on an exclusive basis to a third party may not thereafter file suit based on that copyright. *See* 17 U.S.C. § 101 (defining "transfer of copyright ownership" to include an "exclusive license"); *see Campbell v. Trustees of Stanford University*, 817 F.2d 499, 504 (9th Cir. 1987) (Stanford University purported "to retain 'ownership' of the copyrights" despite giving an exclusive license to a third party. However, the Ninth Circuit looked past the labels of the contract into the nature of the rights, and determined that "Stanford clearly transferred part of this property interest monopoly to CPP in the form of an exclusive license."); *see also U.S. Naval Institute v. Charter Commc'ns*, 936 F.2d 692, 695 (2nd Cir. 1991) ("An exclusive license

[3] As an alternative, the SAA provides that Righthaven gives an exclusive license of all rights to Stephens in the event that the SAA is construed to diminish Stephens' ability to exercise the all rights of ownership. SAA § 7.2.

granted by the copyright owner constitutes a transfer of ownership of the copyright rights conveyed in the license.").

While the text of the Copyright Act is abundantly clear, binding authority from an *en banc* Ninth Circuit panel settles the standing question. In *Silvers v. Sony Pictures*, the Ninth Circuit addressed whether a copyright owner could assign an accrued cause of action for copyright infringement to a third party without also transferring to that third party any of its exclusive Section 106 rights. 402 F.3d at 890. A copyright owner in a movie had purported to assign "claims and causes of action" to a script writer so that she could file an action against an alleged infringer. *Id*. at 883. Citing Section 501(b) of the Copyright Act, the Court concluded that a plaintiff "must have a legal or beneficial interest in at least one of the exclusive rights described in § 106" to bring a copyright-infringement action. *Id*. at 885. And even a legal or beneficial owner "is not entitled to sue unless the alleged infringement occurred while he or she was the owner of it." *Id*. at 885 (quotation, citation and alteration brackets omitted). Because the scriptwriter did not own any Section 106 rights based on the assignment of a cause of action, the Court ruled that she lacked standing to pursue her copyright claim. *Id*. at 890.

The rule in *Silvers* bars Righthaven's claim against Mr. DiBiase. There is no dispute that Stephens purported to "assign" the copyright in the McMurdo Article to Righthaven. If the assignment had been unconditional, it facially might have vested Righthaven with the right to sue for infringement that allegedly occurred while Righthaven was the owner.[4] But along with the assignment, Stephens either *retains* or Righthaven *gave back* to Stephens all of its exclusive Section 106 rights. SAA § 7.2. Righthaven has "no right" to exploit the McMurdo Article commercially (except for filing lawsuits). This structure is indistinguishable from the bare attempted conveyance of a cause of action for copyright infringement that *Silvers* prohibits. The label that the parties have used—"assignment"—does not make any difference.

Indeed, Righthaven has *even fewer rights* in the relevant content than had the plaintiff in *Silvers*. In that case, the plaintiff purportedly was granted the unconditional right to sue certain

---

[4] As discussed below, the assignment would still be void because it is champertous.

defendants. 402 F.3d at 883. Here, Righthaven is allegedly given the right to sue, but Stephens has veto rights over those lawsuits, even after litigation has commenced. Righthaven's interest in this action has all of the trappings of an attorney being paid by a contingency fee, rather than a copyright owner suing to protect its intellectual property.

A 2007 Central District of California case, *Nafal v. Carter*, applied *Silvers* on very similar facts and concluded that the plaintiff lacked standing to sue. *See Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd* 388 Fed. Appx. 721 (9th Cir. 2010) (unpublished). *Nafal* concerned standing to sue over a melody from an Egyptian song that was allegedly infringed by "Big Pimpin'," a musical work produced by artist Shawn Carter (known as Jay-Z). *Id*. at 1130. The plaintiff based standing on an "Assignment Agreement" that purported to give him an ownership interest and the right to sue. *Id*. at 1134. The court found that the plaintiff's description of the document as an "Assignment Agreement" was "not dispositive." *Id*. at 1141. Instead, the nature of the transaction was "'governed by the substance of what was given to the licensee and not the label that the parties put on the agreement.'" *Id.* at 1142-43 (quoting *Althin v. West Suburban Kidney Center*, 874 F. Supp. 837, 843 (N.D. Ill. 1994)).

The court concluded that the instrument at issue did not vest the plaintiff with sufficient rights to file suit. And that agreement is remarkably similar to the SAA: (1) the copyright owner, (and purported assignor) retained nearly exclusive exploitation rights in the copyrighted composition; (2) the plaintiff was required to file suit or the alleged "assignment" would terminate; (3) the alleged assignor retained broad discretion about which defendants the plaintiff could sue; and (4) there were no identified Section 106 rights over which the plaintiff had exclusive control. *Nafal*, 540 F. Supp. 2d at 1132-34. On appeal, the Ninth Circuit affirmed, holding that the "assignment documents at issue here did not actually grant Plaintiff an ownership interest in an exclusive copyright license. Rather, the documents were a disguised assignment of a cause of action prohibited under [*Silvers*]." *Nafal*, 388 Fed.Appx. at 723, *accord Righthaven v. Majorwager.com*, No. 2:10-cv-00484, 2010 WL 4386499, at *2 n.2 (D. Nev. Oct. 28, 2010) ("Regardless of the assignment's assertions, if only a right to sue was transferred; Plaintiff may lack standing."). That is exactly how the SAA operates and the result should be the same.

* * *

Righthaven does not own any exclusive legal or beneficial rights in the copyright to the McMurdo Article. Accordingly, Righthaven lacks standing to continue prosecuting this action and it should be dismissed under Rule 12(h)(3). *See Gator.com*, 398 F.3d at 1128-29 ("Article III requires that a live controversy persist throughout all stages of the litigation.").

**B. The Assignment Fails Because The SAA Is Champertous.**

The SAA fails for another reason: even if it accomplished its attempted goal of assigning the right to sue (it does not), it would be void as champertous. "A champertous agreement is one in which a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation." *Martin v. Morgan Drive Away, Inc*., 665 F.2d 598, 603 (5th Cir. 1982) (quoted with approval by the Nevada Supreme Court in *Schwartz v. Eliades*, 113 Nev. 586, 588, 939 P.2d 1034 (Nev. 1997)). "The laws against champerty, maintenance, and barratry are aimed at the prevention of multitudinous and useless lawsuits and at the prevention of speculation in lawsuits." 14 C.J.S. Champerty and Maintenance § 2.[5] In copyright litigation, "the successful assertion of [champerty] results in the voiding of the champertous agreement." William Patry, 2 PATRY ON COPYRIGHT, § 5:136 at 5-293 (2009). The three elements of champerty are easily satisfied here: (1) Righthaven does not have a genuine interest in any alleged infringement of the McMurdo Article; (2) Righthaven has undertaken Stephens' copyright litigation at its own expense; and (3) Righthaven has done so with the expectation of receiving a part of the litigation proceeds in the event of success.

---

[5] Champerty is a flavor of maintenance, and a part of barratry. As this Court has explained, "'maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty.'" *Del Webb Communities, Inc. v. Partington*, No. 2:08-cv-00571, 2009 WL 3053709, at* 3 (D. Nev. Sep. 18, 2009) (quoting *In re Primus*, 436 U.S. 412, 424 n. 15 (1978)); *see also Lum v. Stinnett*, 87 Nev. 402 at 408, 488 P.2d 347 (1971) (Nevada Supreme Court describing champerty and maintenance, citing 14 C.J.S. Champerty and Maintenance).

**1. Righthaven Has No Legitimate Interest In This Litigation.**

Righthaven has no legitimate interest in this lawsuit because Stephens—not Righthaven—owns the copyright in the McMurdo Article. Indeed, [redacted] Thus, Righthaven did not start with a genuine interest in lawsuits over Stephens' copyrights generally.

In addition, Righthaven manifestly has no legitimate interest in the McMurdo Article in particular. As an initial matter, the McMurdo Article was created after [redacted] the SAA, and thus Righthaven could not have had any interest in it when signing [redacted]. Instead, pursuant to the SAA, Righthaven was obligated to work to find the alleged basis for a lawsuit. SAA § 3.2 and Schedule 1 - Definitions at 14 (Righthaven is required to "employ the then available technology and means in Righthaven's possession to find the occurrence(s) of relevant copyright infringement."). Once the alleged infringement was located, Righthaven did not obtain any bona fide interest in the copyright, but rather sought only a sham assignment so that it could pursue Stephens' lawsuit under the guise of a copyright owner. Thus, under the SAA [redacted], Righthaven has no legitimate interest in the copyright or this lawsuit.

**2. Righthaven Undertook This Litigation At Its Own Expense.**

The SAA provides for Righthaven to conduct litigation over Stephens' copyrights at its own expense. *See* SAA § 4 ("Righthaven shall take an Infringement Action against the Infringer ..."), § 6 ("Righthaven shall be responsible for all Costs incurred in an Infringement Action"). These "Costs" that Righthaven has agreed to undertake include "any and every expenditure (at

commercially reasonable rates) made on the part of Righthaven with respect to an Infringement Action." SAA, Schedule 1 – Definitions at 12.

**3. Righthaven Undertook This Litigation In Consideration Of Receiving A Portion Of The Proceeds Of The Litigation.**

Righthaven expects to receive—in the event of success—a portion of the proceeds of this litigation. SAA § 5 (providing for split of the Recovery);[6] *see also* § 10 (providing detailed procedures to ensure Righthaven will get its part of the proceeds from litigation, even if a settlement check is made out to Stephens). Moreover, the SAA makes clear that Righthaven's interest in the McMurdo Article only concerns litigation proceeds. *See, e.g.*, SAA § 7.2 (Stephens "shall retain" all rights under Section 106 to exploit the work). Righthaven has no ongoing interest in the work other than litigation, with Stephens able to terminate the alleged assignment at any time. SAA § 8.

With these three elements satisfied, it is abundantly clear that Righthaven has engaged in barratry (repeated champerty). While some jurisdictions have replaced this common law doctrine by statute or through other doctrines, "Nevada still recognizes maintenance and champerty." *Del Webb*, 2009 WL 3053709 at *4 (citing *Schwartz v. Eliades*, 113 Nev. 586, 588, 939 P.2d 1034 (Nev. 1997)).[7] Under Nevada law, "[t]o maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit." *Lum*, 87 Nev. at 408 (citing *Gruber v. Baker*, 20 Nev. 453, 23 P. 858, 862 (1890)).

Moreover, the doctrine is particularly well suited to curb abuse of the Copyright Act. Copyright scholar William Patry explains how champerty interacts with copyright law:

---

[6] "Recovery" is broadly defined as "including, without limitation, all Sums paid by way of damages, costs and attorneys fees with respect to or arising from an Infringement Action," as well as settlement proceeds. SAA, Schedule 1 – Definitions at 14.

[7] By its terms, the SAA is to be "interpreted and enforced in accordance with the laws of the State of Nevada." SAA § 15.3.

> As applied to copyright, champerty may be found only when there is an assignment of the copyright and preexisting causes of action and ***where the assignment of the copyright was a sham*** designed to disguise the real intent of conveying the chose in action. For example, ***if the assignment required the assignee to reconvey the copyright*** at the conclusion of the litigation, this would be very strong evidence of champerty. ***If***, however, ***the assignor continued to exploit the work*** in a manner inconsistent with an assignment of rights, a claim of champerty might prove out.

PATRY ON COPYRIGHT, *supra* at § 5:136 (emphasis added).

Although his treatise was written before Righthaven began its litigation campaign, Professor Patry's example seems to have predicted Righthaven's illegitimate business model. As explained above, the assignment is a sham designed to disguise Stephens' attempt to convey, at most, a cause of action; [redacted] ; and Stephens continues to exploit the work, even after the alleged assignment.

Accordingly, the SAA is nothing more than an arrangement for barratry, setting forth procedures for a series of lawsuits funded by Righthaven over alleged infringement of Stephens' copyrights, all for the purpose that Righthaven might be enriched. Indeed, the SAA [redacted] show that the very purpose of Righthaven violates the policy behind the doctrine of champerty: "'that no encouragement should be given in litigation by the introduction of parties to enforce those rights which others are not disposed to enforce.'" PATRY ON COPYRIGHT, *supra* § 5:136 at 5-292 (quoting *Graham v. La Crossee & M.R. Co.* 102 U.S. 148, 156 (1880)). As the purported assignment is part of a champertous operation, any transfer of the right to sue is void, and therefore Righthaven does not have the right to bring this suit. Pursuant to Rule 12(h)(3), the Court should dismiss for lack of standing Righthaven's claim against Mr. DiBiase.

### C. The Court Should Dismiss This Case With Prejudice, Enter Judgment In Mr. DiBiase's Favor, And Consider Ordering Righthaven To Show Cause Why Other Copyright Actions Pending In This District Should Not Be Dismissed.

In addition to dismissing the case for lack of standing and champerty, Mr. DiBiase respectfully urges the Court to consider ordering Righthaven to show cause why its copyright-

infringement actions pending before the presiding judge in this action and filed against unrepresented parties should not be dismissed.

If the Court grants this motion to dismiss and adjudicates the validity of a purported copyright assignment from Stephens to Righthaven, that ruling will effect not only this litigation, but all Righthaven lawsuits based upon assignments from Stephens and the Strategic Alliance Agreement. While counsel for represented parties will be able to understand and take action upon this Court's ruling, unrepresented defendants may not be equipped to advance the arguments set forth above. Thus, Righthaven may well continue to press those defendants into settling cases that should never have been brought in the first place.

Accordingly, this Court can protect unrepresented defendants by ordering—*sua sponte*—Righthaven to show cause why its cases should not be dismissed. Indeed, this process has already begun. On April 28, 2011, Judge James Mahan issued an order to show cause in *Righthaven LLC v. Pahrump Life*, Case No. 2:10-cv-01575-JCM-PAL, where the defendant is not represented by counsel. Judge Mahan explained the importance of resolving the standing question expeditiously:

> This court believes that the [standing] issue should be addressed at the outset of Righthaven litigation, as it goes to the plaintiff's standing to bring a copyright infringement claim at all. Thus, in the interest of judicial economy, the court issues this order to show cause why the case should not be dismissed for plaintiff's lack of beneficial ownership of the copyright, and, therefore, lack of standing to sue.

*Pahrump Life*, Dkt. No. 21 at 2.

Based on its inherent authority and in the interest of judicial economy, Mr. DiBiase respectfully submits that if the Court grants this motion, it consider ordering Righthaven to show cause why its cases pending before the presiding judge in this action against unrepresented parties should not be dismissed for lack of Article III standing. *See*, *e.g., Rambus Inc. v. Nvidia Corp.,* Nos. C 08-3343 SI, C 08-5500 SI, 2009 WL 636536, at *2 n.2 ("The trial court possesses inherent authority to control its docket"); *see also Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 687 (9th Cir. 2002) ("This Court has the duty to consider subject matter jurisdiction *sua sponte* in every case, whether the issue is raised by the parties or not."); *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089,

1093 (9th Cir. 2004) ("The court has a continuing obligation to assess its own subject-matter jurisdiction, even if the issue is neglected by the parties.").[8]

**IV. CONCLUSION**

For the foregoing reasons, Mr. DiBiase respectfully requests that the Court dismiss Righthaven's Complaint with prejudice.

Dated: May 4, 2011

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Bart E. Volkmer
COLLEEN BAL (*pro hac vice*)
BART E. VOLKMER (*pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304

ELECTRONIC FRONTIER FOUNDATION

By: /s/ Kurt Opsahl
Kurt Opsahl (*pro hac vice*)
Corynne McSherry (*pro hac vice*)
454 Shotwell Street
San Francisco, CA 94110

CHAD A. BOWERS, LTD.

By: /s/ Chad Bowers
Chad A. Bowers
NV State Bar Number 7283
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorneys for Thomas A. DiBiase*

---

[8] Righthaven's pending cases before the presiding judge in this action where counsel has not appeared for the defendant are: *Righthaven LLC v. Downey*, 2:10-cv-01172-RLH-RJJ; *Righthaven LLC v. Hippen*, 2:10-cv-01454-RLH-LRL (Shawn Mangano, counsel for Righthaven, is erroneously listed as defendant's counsel); *Righthaven LLC v. Edmunds*, 2:10-cv-01492-RLH-RJJ; *Righthaven LLC v. Hoefling et al.*, 2:10-cv-01539-RLH-RJJ; *Righthaven LLC v. Sulimanov et al.*, 2:10-cv-01831-RLH-LRL; *Righthaven LLC v. Stewart*, 2:10-cv-01903-RLH-PAL; *Righthaven LLC v. Barham et al.*, 2:10-cv-02150-RLH-RJJ; *Righthaven LLC v. Peddle*, 2:10-cv-02173-RLH-LRL; and *Righthaven LLC v. Ashton*, 2:11-cv-00057-RLH-PAL.