# EXHIBIT B
# (PART 1 OF 4)

# OPERATING AGREEMENT

## OF

## RIGHT*HAVEN* LLC

## A NEVADA LIMITED-LIABILITY COMPANY

THE INTERESTS DESCRIBED AND REPRESENTED BY THIS OPERATING AGREEMENT HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT" OR ANY APPLICABLE STATE SECURITIES LAWS ("STATE ACTS") AND ARE RESTRICTED SECURITIES AS THAT TERM IS DEFINED IN RULE 144 UNDER THE SECURITIES ACT.  THE SECURITIES MAY NOT BE OFFERED FOR SALE, SOLD, OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT OR QUALIFICATION UNDER THE SECURITIES ACT AND APPLICABLE STATE ACTS OR PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT AND APPLICABLE STATE ACTS, THE AVAILABILITY OF WHICH IS TO BE ESTABLISHED TO THE SATISFACTION OF THE COMPANY.

CONFIDENTIAL

## TABLE OF CONTENTS

Article 1. DEFINITIONS AND INTERPRETATIONS ................................................... 1
    1.1      Terms. ............................................................................................... 1
    1.2      Definitions. ........................................................................................ 1

Article 2. FORMATION OF COMPANY ................................................................ 1
    2.1      Formation. .......................................................................................... 1
    2.2      Name. ................................................................................................. 1
    2.3      Place of Business. .............................................................................. 2
    2.4      Registered Office and Registered Agent. ........................................... 2
    2.5      Term. ................................................................................................. 2

Article 3. LEGAL AUTHORITY OF THE BUSINESS OF THE COMPANY &
PURPOSE OF THE COMPANY ............................................................................ 2
    3.1      Scope Of Legal Authority Of The Business Of The Company. ............. 2
    3.2      The Company's Focus. ....................................................................... 3

Article 4. NAMES, ADDRESSES AND RESPECTIVE MEMBERSHIP
INTERESTS OF THE MEMBERS ......................................................................... 4
    4.1      Names and Addresses. ....................................................................... 4
    4.2      Membership Interests. ....................................................................... 4

Article 5. RIGHTS AND DUTIES OF MANAGER .................................................. 5
    5.1      Management. ...................................................................................... 5
    5.2      Certain Powers of the Manager. ........................................................ 5
    5.3      Limitations on Authority. .................................................................. 7
    5.4      Liability for Certain Acts. .................................................................. 8
    5.5      Bank Accounts. .................................................................................. 9
    5.6      Indemnity of the Manager, Employees and Other Agents. ................. 9
    5.7      Resignation. ....................................................................................... 9
    5.8      Removal. ............................................................................................ 9
    5.9      Vacancies. ........................................................................................ 10
    5.10    Reimbursement, Organization Expenses. ........................................ 11
    5.11    Right to Rely on the Manager. ......................................................... 11

Article 6. APPOINTMENT OF OFFICERS, AUTHORITY AND
COMPENSATION ............................................................................................. 11
    6.1      Appointment and Termination. ........................................................ 11
    6.2      CEO. ................................................................................................ 12
    6.3      Authority of the CEO. ...................................................................... 12
    6.4      COO. ................................................................................................ 14

i

CONFIDENTIAL

6.5      Authority of the COO. ................................................................ 14
6.6      CAO. ........................................................................................ 14
6.7      Authority of the CAO. .............................................................. 15
6.8      Expenses. ................................................................................. 15

Article 7. RIGHTS AND OBLIGATIONS OF MEMBERS .......................................... 15
7.1      Limitation of Liability. .............................................................. 15
7.2      List of the Members. ................................................................ 15
7.3      Members Have No Agency Authority ........................................ 16
7.4      Company Books. ...................................................................... 16
7.5      Priority and Return of Capital. ................................................. 16

Article 8. MEETING OF MEMBERS ............................................................ 16
8.1      Annual Meetings. ..................................................................... 16
8.2      Quarterly Meetings. ................................................................. 17
8.3      Special Meetings. ..................................................................... 17
8.4      Place of Meetings. .................................................................... 17
8.5      Notice of Meetings. .................................................................. 17
8.6      Meetings of all Members. ......................................................... 18
8.7      Record Date. ............................................................................ 18
8.8      Quorum. ................................................................................... 18
8.9      Manner of Acting. .................................................................... 18
8.10     Proxies. .................................................................................... 19
8.11     Action by Members Without a Meeting. ................................... 19
8.12     Waiver of Notice. ..................................................................... 19
8.13     Manager Participation In Member Meetings. ............................ 19

Article 9. CONTRIBUTIONS TO THE COMPANY AND CAPITAL ACCOUNTS ...... 20
9.1      Members' Capital Contributions. .............................................. 20
9.2      Capital Accounts. ..................................................................... 20

Article 10. RESERVED ............................................................................. 20

Article 11. ALLOCATIONS, INCOME TAX, DISTRIBUTIONS, ELECTIONS
AND REPORTS ....................................................................................... 20
11.1     Allocations of Profits and Losses. ............................................. 20
11.2     Distributions. ........................................................................... 20
11.3     Accounting Principles. .............................................................. 21
11.4     Interest on and Return of Capital Contributions. ...................... 21
11.5     Accounting Period. ................................................................... 21
11.6     Records and Reports. ................................................................ 21
11.7     Returns and other Elections. ..................................................... 22
11.8     Tax Matters Partner. ................................................................. 22

CONFIDENTIAL

Article 12. CONFIDENTIALITY AND NONCOMPETITON ....................................... 22

Article 13. BUDGET ............................................................................................ 24

Article 14. RESERVED ........................................................................................ 24

Article 15. TRANSFERABILITY ........................................................................... 24
    15.1     General. ................................................................................................ 24
    15.2     Right of First Refusal. ......................................................................... 24
    15.3     Transfers Not Recognized in Absence of Consent. ............................ 26
    15.4     Additional Conditions to Recognition of Transferee. ......................... 27
    15.5     Change of Control Forfeiture. .............................................................. 28

Article 16. ISSUANCE OF MEMBERSHIP INTERESTS .......................................... 28

Article 17. DISSOLUTION AND TERMINATION ..................................................... 28
    17.1     Dissolution. .......................................................................................... 28
    17.2     Effect of Dissolution. ........................................................................... 29
    17.3     Winding Up, Liquidation and Distribution of Assets. ......................... 29
    17.4     Filing or Recording Statements. .......................................................... 30
    17.5     Return of Contribution Nonrecourse to Other Members. ..................... 30

Article 18. MISCELLANEOUS PROVISIONS .......................................................... 30
    18.1     Notices. ................................................................................................ 30
    18.2     Books of Account and Records. ........................................................... 30
    18.3     Business Reports. ................................................................................. 31
    18.4     Application of State Law. ..................................................................... 31
    18.5     Waiver of Action for Partition. ............................................................ 31
    18.6     Amendments. ....................................................................................... 31
    18.7     Execution of Additional Instruments. .................................................. 32
    18.8     Effect of Inconsistencies with the Act. ................................................ 32
    18.9     Reserved. ............................................................................................. 32
    18.10    Rights and Remedies Cumulative. ...................................................... 32
    18.11    Severability. ......................................................................................... 32
    18.12    Heirs, Successors and Assigns. ........................................................... 33
    18.13    Creditors. ............................................................................................. 33
    18.14    Counterparts. ....................................................................................... 33
    18.15    Reserved. ............................................................................................. 33
    18.16    Power of Attorney. .............................................................................. 33
    18.17    Investment Representations. ................................................................ 34
    18.18    Representations and Warranties. .......................................................... 35

Article 19. SECURITIES MATTERS ....................................................................... 37

iii

19.1.    No Parole Reliance................................................................................37
19.2.    Own Account. .....................................................................................38
19.3.    Accurate Information. ..........................................................................38
19.4.    Risk Factors Disclosure. ......................................................................38

SCHEDULE 1 - DEFINITIONS...................................................................................1
EXHIBIT 5.8        ARBITRATION
EXHIBIT 6          EMPLOYMENT AGREEMENTS
EXHIBIT 9.1        INITIAL CAPITAL CONTRIBUTIONS
EXHIBIT 9.1(A)     ASSIGNMENT
EXHIBIT 13         BUDGET
EXHIBIT 18.1       NAME, ADDRESS AND MEMBERSHIP INTEREST

CONFIDENTIAL

THIS Operating Agreement (the "Agreement") is made and entered into this 18th day of January, 2010 (the "Effective Date"), by and amongst Right*haven* LLC, a Nevada limited-liability company (the "Company"), Net Sortie Systems, LLC, a Nevada limited-liability company ("Net Sortie") and SI Content Monitor LLC, an Arkansas limited-liability company ("Stephens"). In consideration of the mutual covenants herein contained and for other good and valuable consideration, the Members and the Company hereby agree as set forth below.

## ARTICLE 1.
## DEFINITIONS AND INTERPRETATIONS

1.1     Terms.

Certain terms used herein shall have the meanings set forth in Schedule 1.

1.2     Definitions.

All the defined terms as set forth in Schedule 1, if defined in the singular or present tense, shall also retain such general meaning if used in the plural or past tense, and if used in the plural or past tense, shall retain the general meaning if used in the singular or present tense, and the masculine gender shall include the feminine and neuter genders and vice versa.

## ARTICLE 2.
## FORMATION OF COMPANY

2.1     Formation.

In January 2010, the Company was organized as a limited-liability company pursuant to the Act by executing and delivering articles of organization to the Nevada Secretary of State in accordance with and pursuant to the Act. The Company and the Members hereby forever discharge the organizer, and the organizer shall be indemnified by the Company and the Members from and against, any expense or liability actually incurred by the organizer by reason of having been the organizer of the Company.

2.2     Name.

The name of the Company is Right*haven* LLC, a Nevada limited-liability company.

1

CONFIDENTIAL

2.3    Place of Business.

The principal place of business of the Company shall be 7201 West Lake Mead Boulevard, Suite 580, Las Vegas, Nevada or at such other place that the Manager may deem appropriate from time to time (any such location shall be known herein as the "Principal Place of Business").  The Manager may create additional offices from which the Company may conduct Business as the Manager may deem appropriate from time to time (the "Additional Offices").  The Manager shall promptly provide Notice to all Members of any change in the Principal Place of Business as well as all Additional Offices.

2.4    Registered Office and Registered Agent.

The Company's initial registered office and the name of the registered agent at such address shall be as set forth in the Articles of Organization.  The registered office and registered agent may be changed from time to time by filing the address of the new registered office and/or the name of the new registered agent with the Nevada Secretary of State pursuant to the Act.

2.5    Term.

The Company shall continue in existence until the Company terminates in accordance with the provisions of this Agreement or the Act (with such date upon which such termination occurs, if ever, known herein as the "Termination Date").

## ARTICLE 3.
## LEGAL AUTHORITY OF THE BUSINESS OF THE COMPANY & PURPOSE OF THE COMPANY

3.1    Scope Of Legal Authority Of The Business Of The Company.

The business of the Company (the "Business") shall be to:

(a)    engage in any lawful activity, including, without limitation, any and all activities in the effectuation, furtherance and fostering of the Focus;

(b)    exercise all other powers necessary to, or reasonably connected with, the Business which may be legally exercised by limited-liability companies under the Act; and

(c)    engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

2

CONFIDENTIAL

3.2    <u>The Company's Focus</u>.

The Company shall be unfettered in the Company's ability to conduct the Business; provided, however, that the Company shall devote the Company's full energies to the following activities which are recognized by the Members as the focus of the Company (the "Focus"), and which shall only be changed upon an affirmative vote of the Members holding at least a Super-Majority Interest (provided, further, that nothing in this Section 3.2 shall restrict the Manager and/or the officers from conducting Business operations that are reasonable expansions of, and upon, the Focus and/or reasonably related Business operations):

(a)    provide the means to third Persons to address and remedy copyright infringements consistent with the approach set forth in this Section 3.2;

(b)    solicit from third Persons the self-identified existence of copyright infringements ("Self-Identified Infringements");

(c)    identify for third Persons copyright infringements ("Company Identified Infringements" and Self-Identified Infringements and Company Indentified Infringements known herein as "Identified Infringements") to receive a limited, revocable assignment (with a license-back) of copyrights from third Persons in order to enable the Company to recover damages associated with Identified Infringements;

(d)    submit applications for copyright registrations with relevant national copyright offices in relevant nations throughout the world in order to effect copyright registrations that will serve as a basis of the recoveries of damages associated with Identified Infringements whereby those applications will identify the Company as the owner of the copyright and whereby the Company's respective customer that respectively assigned said copyrights would ultimately enjoy the copyright registration upon revocation of the assignment of said respective copyrights to the Company;

(e)    pursue through all reasonable legal means the recovery of damages (sounding in actions grounded exclusively in copyright infringement) arising out of Identified Infringements;

(f)    provide licenses for a fee to third Persons (the "Mark Licensees") of the Company's service mark (as a certification mark) to place on third Persons media indicating to the public at large that the Mark

3

CONFIDENTIAL

Licensees are provided protective service by the Company to address copyright infringements;

(g)    be a means through which third Persons may repose with the Company the rights required to enable the Company to effect use-based licenses to other third Persons for a royalty whereby the Company is permitted to receive a percentage of said royalties in consideration of the Company's service in this regard; and

(h)    do all other acts, acquire all property, hire all employees, engage all subcontractors and/or service providers necessary, appropriate and/or desirable to effect, further and/or administer all of the items set forth in this Section 3.2(a) through Section 3.2(g).

## ARTICLE 4.
## NAMES, ADDRESSES AND RESPECTIVE MEMBERSHIP INTERESTS OF THE MEMBERS

4.1    <u>Names and Addresses</u>.

The names and addresses (unless otherwise designated by the initial Members) of the initial Members are as follows:

| NAME | ADDRESS |
|---|---|
| Net Sortie | 9506 West Flamingo Road, Suite 101<br>Las Vegas, Nevada  89147 |
| Stephens | 111 Center Street, Suite 2500<br>Little Rock, Arkansas 72201 |

The names and addresses of all of the Members shall be maintained by the Manager as provided under Section 11.6.

4.2    <u>Membership Interests</u>.

The respective percentage of ownership by each Member of the equity interest of the Company shall be equal to the percentage listed by each Member's name on Exhibit 18.1 (such respective percentage interest of ownership shall be known herein as a "Membership Interest").

4

CONFIDENTIAL

**ARTICLE 5.**
**RIGHTS AND DUTIES OF MANAGER**

5.1    <u>Management</u>.

The Business and affairs of the Company shall be managed by the Company's Manager.  Subject to Section 5.8, the Manager of the Company shall be Net Sortie. Except for situations in which the approval of the Members is expressly required by this Agreement or by non-waivable provisions of applicable law, the Manager shall have full and complete authority, power and discretion to manage and control the Business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts and activities customary or incident to the management of the Business.  The Manager shall have the authority to act on behalf of the Company, and to legally bind the Company, and to delegate to any Officer, in writing, authority to make disbursements out of Company accounts with financial institutions.  Unless authorized to do so by this Agreement or by the Manager, no Officer, employee or other agent of the Company, other than the Manager, shall have any power or authority to bind the Company in any way, to pledge the Company's credit or to render the Company liable pecuniarily for any purpose.  Notwithstanding the foregoing, as provided further in Article 6, the Manager hereby delegates full power and authority to the CEO (as defined in Article 6) to implement all policies and decisions made by the Manager with respect to the day-to-day management and operation of the Business and affairs of the Company (including, without limitation, those powers set forth in Section 5.2, subject to the provisions of Section 5.3 and other provisions of this Agreement requiring approval by Members holding at least a Super-Majority Interest.

5.2    <u>Certain Powers of the Manager</u>.

Without limiting the generality of Section 5.1 but subject to the limitations of Section 5.3, the Manager shall have full power and authority, on behalf of the Company:

   (a)    to acquire property from any Person as the Manager may determine;

   (b)    to borrow money for the Company from banks, other lending institutions, the Manager, the Members, or Affiliates of the Manager or the Members on such terms as the Manager deems appropriate, and in connection therewith, to hypothecate, encumber and grant security interests in Company Property to secure repayment of the borrowed sums;

   (c)    to purchase liability and other insurance to protect the Company Property and the Business of the Company;

5

CONFIDENTIAL

(d)     to hold and own any and all Company Properties in the name of the Company;

(e)     to invest any Company funds in time deposits, short-term governmental obligations, commercial paper or other investments;

(f)     to execute on behalf of the Company all instruments and documents, including, without limitation, checks; drafts; notes and other negotiable instruments; mortgages or deeds of trust; security agreements; financing statements; documents providing for the acquisition, mortgage or disposition of Company property; assignments; bills of Transfer; leases; partnership agreements, operating (or limited-liability company) agreements of other limited-liability companies; and any other instruments or documents necessary or appropriate, as determined in the discretion of the Manager, to the conduct of the Business of the Company;

(g)     to employ accountants, legal counsel, managing agents or other experts to perform services for the Company and to compensate them from Company funds;

(h)     to enter into any and all other agreements on behalf of the Company, with any other Person for any purpose, in such forms as the Manager may approve;

(i)     to execute and file such other instruments, documents and certificates which may from time to time be required by the laws of the State of Nevada or any other jurisdiction in which the Company shall determine to do Business, or any political subdivision or agency thereof, to effectuate, implement, continue and defend the valid existence of the Company;

(j)     to file any and all registrations necessary or appropriate, in the sole discretion of the Manager, to protect Intellectual Property rights of the Company;

(k)     to do and perform all other acts as may be necessary or appropriate to the conduct of the Business;

(l)     to hire employees necessary and/or appropriate to conduct the Business;

(m)     to terminate employees in the Manager's sole and absolute discretion;

6

CONFIDENTIAL

(n) to appoint Officers; provided, however, that the Manager shall provide prompt Notice ("Officer Notice") to all Members of any appointment of any Officer (other than the Officers instituted by virtue of this Agreement); provided, further, that in any Officer Notice the Manager shall indicate both the name of the individual that is the subject of an Officer appointment as well as the title of such Officer; and

(o) to terminate any Officer; provided, however, that the Manager shall provide prompt Notice to all Members of any termination of any Officer.

Nothing set forth above in this Section 5.2 shall preclude the Manager from engaging in any transaction with an Affiliate of the Manager on an arm's length basis.

5.3     <u>Limitations on Authority</u>.

Notwithstanding any other provision of this Agreement, the Manager shall not cause or commit the Company to do any of the following without the express written consent of Members holding at least a Super-Majority Interest:

(a) mortgage, pledge, hypothecate, encumber or grant a security interest of (collectively, "Pledge") any Company Property to the extent that the secured indebtedness from such Pledge would exceed $100,000.00;

(b) incur or refinance any indebtedness for money borrowed by the Company, whether secured or unsecured and including any indebtedness for money borrowed from a Member if, after such financing, the aggregate indebtedness of the Company would exceed $100,000.00;

(c) lend money to or guaranty or become surety for the obligations of any Person, except for reasonable advances of salaries of Officers and other employees of the Company;

(d) cause the Company to commence a voluntary case as debtor under the United States Bankruptcy Code;

(e) any merger, consolidation, Reorganization or recapitalization involving the Company;

(f) any Transfer of substantially all of the assets of the Company;

7

CONFIDENTIAL

(g)    any dissolution, liquidation or voluntary termination of the Company;

(h)    any repurchase or redemption of any Membership Interests;

(i)    any purchase, acquisition or otherwise becoming the holder, beneficially or of record, of any interest in any Person or purchase or acquisition of any such Person by means of any transaction or series of related transactions (including, without limitation, any merger, consolidation or recapitalization, or acquisition of all or any substantial portion of the assets of any such Person);

(j)    any entry into any transaction with any Officer, employee, Member, or affiliate of the Company, or any affiliate or relative of the foregoing (other than the transactions pursuant to, acknowledged in, arising out of and/or described in this Agreement, inclusive, but not limited to, the Exhibits, as well as any other attachments incorporated herein);

(k)    any material changes in the terms of the employment, including compensation, of senior management;

(l)    any conversion of the Company to a corporation or any election to be taxable as a corporation; and

(m)    any establishment of any joint venture, partnership, limited liability company or other similar relationship between the Company and any third Person (other than the transactions pursuant to, acknowledged in, arising out of and/or described in this Agreement, inclusive of, but not limited to, the Exhibits, as well as any other attachments incorporated herein).

5.4    <u>Liability for Certain Acts</u>.

5.4.1    The Members stipulate that neither the Company nor the Manager, in any way, covenants, represents or guarantees that the operations of the Company will be profitable or that any Member will receive a return of or on any Member's Capital Contributions, at any point in time or over any period of time.

5.4.2    The Members hereby covenant that the Manager shall not be liable to the Company or to any Member for any loss or damage sustained by the Company or any Member (or successor thereto), except to the extent, if any, that

8

CONFIDENTIAL

the loss or damage shall have been the result of gross negligence, fraud, willful misconduct, or a willful material breach of this Agreement, by the Manager.

5.5   Bank Accounts.

The Manager may from time to time open bank and/or financial institution accounts in the name of the Company, and the Manager shall be the sole signatory thereon; provided, however, that the Manager may authorize by way of a signed writing, kept by the CAO in the Company's books and records, one or more Officers to have signatory authority thereon, with full disbursement authority, subject to Article 13.

5.6   Indemnity of the Manager, Employees and Other Agents.

The Company shall indemnify (including, without limitation, by way of making advances for expenses to the maximum extent permitted under the Act for the benefit of, so long as the recipient of such advances undertakes to repay such advances in the event that a court or other controlling authority determines that the Company is not liable by the terms of this Agreement to so indemnify) the Manager, Officers, employees and/or agents of the Company with respect to any Claim brought by any Person with respect to any act and/or omission committed and/or services performed within the scope of furthering the Business of the Company so long as said act, omission or provision of services was not the subject of intentional misconduct.

5.7   Resignation.

The Manager may resign at any time by giving three (3) days Notice to the Members.  The resignation of the Manager shall take effect upon receipt of Notice thereof or at such later time as shall be specified in such Notice. The resignation of a Manager who is also a Member shall not affect the Manager's rights as a Member.

5.8   Removal.

At a meeting of the Members called, in writing, in accordance with Article 8, expressly for such purpose, the Manager may be removed:  (a) if any of the following occur: (i) the conviction of or any plea of no contest by the Manager to a felony, (ii) the commission of an act or willful omission by the Manager involving fraud, embezzlement, or financial dishonesty, (iii) engaging in duties required of the Manager by individuals acting on behalf of the Manager under the influence of alcohol or illegal drugs, the use of illegal drug (whether or not at the workplace) or other repeated conduct causing the Company substantial public disgrace, disrepute, or economic harm, (iv) gross dereliction of duty to the Company or any of its affiliates, (v) the repeated refusal or failure by the Manager to follow the lawful and reasonable directives of the Members, or (vi) the material breach of the Manager of any of the Manager's other

9

CONFIDENTIAL

obligations hereunder which continues uncured for more than thirty (30) days after the Manager receives written notice thereof from the Company, and (b) by the affirmative vote of Members holding at least a Super-Majority Interest determined without regard to any Voting Interest held by such to-be-removed Manager or any Affiliate of such to-be-removed Manager; provided, however, if the Manager is a non-natural Person and if the Manager is declared by a court of competent jurisdiction bankrupt or otherwise dissolves, then in either such event, said Manager shall be automatically removed as Manager without any further action on the part of the Members. If there is a Deadlock on the decision to remove the Manager (a "Removal Deadlock"), then any of the Member(s) who desire removal of the Manager (the "Claimant(s)") may commence arbitration proceedings regarding whether Misconduct occurred pursuant to the procedures set forth in Exhibit 5.8 (the "Misconduct Arbitration Proceedings") by providing Notice within five (5) Business Days (such fifth (5th) Business Day known herein as the "Arbitration Commencement Date") after a Removal Deadlock to all Members of the Claimant's desire to commence arbitration proceedings. During the pendency of the Misconduct Arbitration Proceedings and until a definitive arbitration decision is announced (the "Period of Arbitration"), the Manager who is the subject of the Misconduct Arbitration Proceedings (the "Suspended Manager") shall be suspended from performing the role of Manager throughout the Period of Arbitration. The Members shall designate an interim Manager (the "Interim Manager"), following the procedures set forth in Section 5.9, to act as the Manager during the Period of Arbitration. Upon an arbitration decision that there was no Misconduct, then the Suspended Manager shall immediately resume the role of Manager and the Interim Manager shall no longer perform the role of Manager at any level and in any regard. The removal *per se* of a Manager who is also a Member shall not affect the Manager's rights as a Member.

5.9    Vacancies.

Any vacancy in the office of Manager (including, without limitation, the occurrence of a Suspended Manager) shall be filled by the affirmative vote of Members holding at least a Super-Majority Interest. In the event an affirmative vote of the Members holding at least a Super-Majority Interest to fill any such vacancy cannot by obtained within fifteen (15) days of the removal of the Manager, the CEO shall call a Special Meeting of the Members. At such Special Meeting, Net Sortie and Stephens (and no other Members, or Transferees thereof) shall each produce a list of five (5) proposed candidates (the "Candidates") to fill the office of Manager (a "Managers List"), ranked according to preference with one being the indication of the highest preference and five being the indication of the lowest preference, and disclose said list and such preferences to each other. If any of the Candidates are chosen both by Stephens and by Net Sortie (a "Match") and there is only one Match, then the Match shall become the new Manager. If there is more than one Match, then the Match with the highest aggregate numerical preference rating ("the Highest Aggregate Rank")

10

CONFIDENTIAL

taking into consideration both the rankings indicated by Stephens and Net Sortie shall become the New Manager.  If there are Matches that share the Highest Aggregate Rank (the "High-Ranked Matches"), then the new Manager shall be designated by process of a coin toss (with Stephens flipping the coin and one Candidate designated as heads and the other designated as tails), or if necessary there shall be multiple coin tosses in the event of several High-Ranked Matches.  If there are no Matches and the occurrence of the vacancy was due to a removal pursuant to Section 5.8, then Net Sortie shall have the right to choose the new Manager amongst any of the five-ranked Stephen's Candidates. If there are no Matches and the occurrence of the vacancy was not due to a removal pursuant to Section 5.8, then there shall be a coin toss (with Stephens flipping the coin and Net Sortie calling heads or tails) and the winner of the coin toss shall be entitled to choose as the new Manager from amongst the five-ranked Candidates chosen by the Member who lost the coin toss.

5.10   Reimbursement, Organization Expenses.

The Company, within five (5) Business Days after the Effective Date, shall reimburse the Net Sortie in the amount of twenty-one thousand dollars ($21,000) for the expenses, in part, incurred in connection with the formation, organization and capitalization of the Company.

5.11   Right to Rely on the Manager.

Any Person dealing with the Company may rely (without duty of further inquiry) upon a certificate signed by the Manager as to:

(a)   the identity of the Manager or any Member;

(b)   the existence or nonexistence of any fact or facts which constitute a condition precedent to acts on behalf of the Company by the Manager or which are in any other manner germane to the affairs of the Company;

(c)   the Persons who are authorized to execute and deliver any instrument or document of the Company; or

(d)   any act or failure to act by the Company or any other matter whatsoever involving the Company or any Member.

### ARTICLE 6.
## APPOINTMENT OF OFFICERS, AUTHORITY AND COMPENSATION

6.1   Appointment and Termination.

11

CONFIDENTIAL

The Manager shall appoint all officers of the Company.  The Manager shall have the right to terminate any or all of the officers and appoint replacement officers in the exercise of the Manager's discretion; provided, however, that the Manager shall terminate any officer if any of the following occur: (i) the conviction of or any plea of no contest by an Officer to a felony, (ii) the commission of an act or willful omission by an Officer involving fraud, embezzlement, or financial dishonesty, (iii) engaging in duties required hereby under the influence of alcohol or illegal drugs, the use of illegal drug (whether or not at the workplace) or other repeated conduct causing the Company substantial public disgrace, disrepute, or economic harm, (iv) gross dereliction of duty to the Company or any of its affiliates, (v) the repeated refusal or failure by an Officer to follow the lawful and reasonable directives of the Manager, or (vi) the material breach of an Officer of any of said Officer's other obligations hereunder which continues uncured for more than thirty (30) days after the Manager receives written notice thereof from the Company ("Officer Misconduct"), and in the event of the Manager's failure to terminate any Officer who engages in Officer Misconduct, then the Members holding at least a Super-Majority Interest shall have the right to so terminate any such Officer who engages in Officer Misconduct.

6.2   CEO.

The Manager shall appoint a chief executive officer of the Company ("CEO"). The CEO shall be entitled to the following compensation:

(a)   from the Effective Date until February 28, 2010 (the "Start-up Phase"), and for the next succeeding six months, a salary of ███████ (█████████) per annum;

(b)   for the next succeeding six months, so long as such payment of salary does not diminish by any amount the Non-Executive Reserve, a salary of ███████████ ($████████ per annum; and

(c)   for the first year thereafter, a salary of ██████████████ ($████████ per annum (with annual increases, if any, thereafter as determined by the reasonable, good faith vote of the Members holding at least a Super-Majority Interest made in sufficient time in order for any such increase to be instituted in a timely fashion), so long as such payment of salary does not diminish by any amount the Non-Executive Reserve.

6.3   Authority of the CEO.

12

CONFIDENTIAL

The CEO shall have the general powers and duties of management usually vested in the office of president of a corporation, subject to Section 5.1 and Section 5.3, and shall have such other powers and duties as may be prescribed by the Manager or this Agreement.  Subject to the control of the Manager and with respect to Company matters requiring approval of the Manager pursuant to and arising out of this Agreement, the CEO is the operational manager of the Company, shall have supervising authority over and may exercise general executive power concerning the supervision, direction and control of the day-to-day Business and affairs of the Company and shall carry out the decisions approved by the Manager and/or by the Members, with the authority from time to time and at any time to delegate to any other officer or executive employee of the Company such executive powers and duties as the CEO may deem advisable. Subject to the terms and provisions of this Section 6.3, the CEO shall have authority to do all things necessary to carry on the day-to-day Business and affairs of the Company and hereby is authorized to take any action of any kind and to do anything and everything that the CEO deems necessary and appropriate with respect to the day-to-day Business affairs of the Company in accordance with the terms and provisions of this Agreement and applicable Law.  In addition to the general authority provided to the CEO in this Section 6.3, and without limiting the generality of the foregoing, except as otherwise directed by the Manager, in accordance with policies and decisions set forth by the Manager, the CEO shall have the authority provided to the Manager in Sections 5.1 and 5.2, subject to the limitations on the Manager's authority set forth in Section 5.3 and the other provisions of this Agreement.

      6.3.1      Steven A. Gibson, an individual who is currently part owner of Net Sortie ("Gibson"), is hereby designated as the CEO of the Company, subject to the other provisions of this Agreement.

13

CONFIDENTIAL

### 6.4    COO.

David A. Brownell, an individual who is currently ten percent (10%) part owner of Net Sortie (subject to divestment), subject to the sole discretion of the CEO, shall be the chief operating officer ("COO") of the Company.  The COO shall be entitled to the following compensation:

(a)    during the Start-up Phase, and for the next succeeding six months, ██████████ ($██████) per annum;

(b)    for the next succeeding six months, so long as such payment of salary does not diminish by any amount the Non-Executive Reserve, a salary of ████████ ($██████) per annum; and

(c)    for the first year thereafter, a salary of ████████ ████████ ($██████) per annum, (with annual increases, if any, thereafter as determined by the reasonable, good faith vote of the Members holding at least a Super-Majority Interest made in sufficient time in order for any such increase to be instituted in a timely fashion), so long as such payment of salary does not deplete the Non-Executive Reserve.

### 6.5    Authority of the COO.

Subject to the direction of the Manager and the CEO, the COO shall have the powers and duties for conducting and overseeing the Company's day-to-day operations usually vested in the office of chief operating officer of a corporation and shall have such other powers and duties as may be prescribed by the Manager or the CEO.  Such powers shall, in no case, exceed the authority granted under the provisions of this Agreement to the Manager or the CEO.

### 6.6    CAO.

██████████ shall be the chief administrative officer ("CAO") of the Company, subject to the reasonable discretion of the COO.  The CAO shall be entitled to the compensation set forth below.  Starting on the Effective Date, the CAO shall be compensated at the rate of ████████ ($██████) per month for the Start up Phase (pro-rated to the Effective Date) and, thereafter, at the rate of ████████ ($██████) per annum.  In the event the CAO shall become a full-time employee of the Company, the CAO shall be compensated at the rate of ████████ ($██████) per annum (with annual increases, if any, thereafter as determined by the reasonable, good faith affirmative vote of the Members holding at least a Super-

14

CONFIDENTIAL