# EXHIBIT B
# (PART 4 OF 4)

Membership Interests, or other transaction pursuant to which a Person or Persons acquire all or substantially all of the assets of, or Membership Interests in, the Company in a single or series of related transactions, including without limitation, a merger or conversion of the Company into a corporation or other entity, whether or not such corporation or other entity has the same owners as the Company and whether or not additional capital is contributed to such corporation or other entity.

"Reports" shall have the meaning set forth in Section 18.3.

"Respective Distribution Entitlement" shall have the meaning set forth in Section 11.2.2.

"Restricted Territory" shall mean the known universe as of the Effective Date.

"Secretary of State" shall mean the secretary of state of the State of Nevada.

"Section" shall mean an enumerated part of any Article.

"Self Identified Infringements" shall have the meaning set forth in Section 3.2(b).

"Software" shall mean source code, object code, executable code, or other program or code format whatsoever, whether now known or hereinafter Developed.

"Special Meeting" shall have the meaning ascribed to such term in Section 8.3.

"Special Member Meeting Caller" shall have the meaning set forth in Section 8.3.

"Start-up Phase" shall have the meaning set forth in Section 6.2(a).

"State" shall mean the State of Nevada.

"Stephens" shall have the meaning set forth in the initial paragraph of this Agreement.

"Stephens Membership Interests" shall mean the Membership Interests acquired by Stephens pursuant to this Agreement.

"Strategic Alliance Agreement" shall have the meaning set forth in Article 20 of this Agreement.

"Super-Majority Interest" shall mean one or more Voting Interests of the Members, which, taken together exceed seventy-five percent (75%) of the aggregate of all Voting Interests.

"Suspended Manager" shall have the meaning set forth in Section 5.8.

CONFIDENTIAL

"Tag Along Member" shall have the meaning set forth in Section 15.2.2.

"Tag Along Option" shall have the meaning set forth in Section 15.2.2.

"Technology" shall mean electronic Service request generator via Internet, electronic report generation, display, techniques employed for the creation and maintenance of the Database, transmittal and printing operations regarding the provision of Services.

"Term" shall mean the period commencing on the Effective Date and ending upon the Termination Date.

"Termination Date" have the meaning set forth in Section 2.5.

"Third Party Offer" shall have the meaning set forth in Section 15.2.1.

"Third Party Purchaser" shall have the meaning set forth in Section 15.2.1.

"TMP" shall have the meaning set forth in Section 11.8.

"Total Reserve" shall mean, with respect to a time period as expressed in this Agreement that also expressly references this defined term in a provision of this Agreement (each a "Total Reserve Relevant Time Period"), an amount of cash equal to the total expenditures for three (3) months as set forth on the Budget that is controlling for each such respective Total Reserve Relevant Time Period.

"Trade Secrets" shall mean trade secrets as such term is defined in the Uniform Trade Secrets Act, as promulgated from time to time in Nevada.

"Transfer" shall mean a sale, assignment, exchange, or other transfer for consideration, pledge, hypothecation, or grant of a security interest, or change in ownership by reason of the merger, conversion or other transformation in the identity or form of business organization of the owner, regardless of whether such change or transformation is characterized by state law as not changing the identity of the owner, but shall not include a Gift.

"Transferring Member" shall mean a Transferring Member and a Gifting Member.

"Transferor's Estimate" shall have the meaning set forth in Section 15.2.1(b).

"Voting Interest" shall mean Membership Interest that are entitled to cast votes pursuant to or arising out of this Agreement expressed with respect to any given Member but expressed by a percentage by comparing such Member's relative

CONFIDENTIAL

Membership Interests (that are so entitled to cast votes) in relation to the aggregate Membership Interest (that are also entitled to cast votes).

CONFIDENTIAL

# EXHIBIT 5.8
# ARBITRATION

1.1 Certain terms used herein shall have the meanings ascribed to such terms as set forth in Section 1.10 of this Exhibit 5.8 to the extent not otherwise defined in this Agreement.

1.2 Net Sortie shall provide to Stephens and Stephens shall provide to Net Sortie, within fifteen (15) Business Days of the Arbitration Commencement Date, respective Arbitrator Lists (said fifteenth (15th) day known herein as the "Arbitration List Production Deadline"). Net Sortie and Stephens shall undertake respective reasonable efforts to determine that each individual on the respective Arbitrator List will be available during all relevant time periods to act as an Adjudicating Arbitrator. The hourly rates and other charges that each individual on the respective Arbitrator Lists will charge to be an Adjudicating Arbitrator shall be detailed by Net Sortie and Stephens.

1.3 Within ten (10) Business Days after the Arbitration List Production Deadline, Net Sortie and Stephens shall meet in person at the Principal Place of Business for the purpose of Adjudicating Arbitrator selection as follows:

(a) If any of the Arbitrators are chosen both by Stephens and by Net Sortie (an "Arbitrator Match") and there is only one Arbitrator Match, then the Arbitrator Match shall become Arbitrator that adjudicates the Misconduct Arbitration Proceedings arising out of a particular Arbitration Commencement Date (the "Adjudicating Arbitrator");

(b) If there is more than one Arbitrator Match, then the Arbitrator Match with the highest aggregate numerical preference rating (the "Highest Aggregate Ranked Arbitrator") taking into consideration both the rankings indicated by Stephens and Net Sortie shall become the Adjudicating Arbitrator;

(c) If there are Arbitrator Matches that share the Highest Aggregate Rank (the "High-Ranked Arbitrator Matches"), then the Adjudicating Arbitrator shall be designated by process of a coin toss (with the Claimant flipping the coin and one of the High-Ranked Arbitrator Matches designated as heads and the other designated as tails), or, if necessary, there shall be multiple coin tosses in the event of several High-Ranked Arbitrator Matches; and

E5-1

**CONFIDENTIAL**

    (d)    If there are no Arbitrator Matches, then Net Sortie shall have the right to choose the Adjudicating Arbitrator amongst any of the Arbitrators that appear on the Arbitrator List produced by Stephens.

    1.4    If, due to incapacity, unwillingness or any other reason, the chosen Adjudicating Arbitrator becomes unavailable to fulfill the Adjudicating Arbitrator's duties, then procedures set forth in Section 1.3 of this Exhibit 5.8 shall be repeated until an available and serving Adjudicating Arbitrator is found.

    1.5    Net Sortie and Stephens shall have forty-five (45) Business Days from the Arbitration Commencement Date to submit respective Arbitration Briefs to each other Member and the Adjudicating Arbitrator via electronic mail and U.S. Mail.

    1.6    An Arbitration Hearing shall take place within sixty (60) Business Days after the Arbitration Commencement Date at a time reasonably designated by the Adjudicating Arbitrator and at a location within Chicago, Illinois reasonably designated by the Adjudicating Arbitrator.

    1.7    The Adjudicating Arbitrator shall render and report to both Net Sortie and Stephens an Arbitration Decision within fifteen (15) Business Days after the Arbitration Hearing.

    1.8    An Arbitration Decision shall be final and binding on the Members and shall bar any suit, action or proceeding instituted by any of the Members in any court or administrative tribunal or any jurisdiction, except for a decision on enforcement proceedings.

    1.9    Net Sortie and Stephens shall each bear fifty (50%) of all costs of the Misconduct Arbitration Proceedings.

    1.10    Definitions

"Adjudicating Arbitrator" shall have the meaning set forth in Section 1.3(a).

"Arbitration Brief" shall mean one document setting forth the respective memoranda of facts and applicable law regarding the issue of whether Misconduct occurred with a maximum page length (and a font size of Times Roman 12, with at least one inch margins) of thirty (30) pages, non-inclusive of relevant evidentiary attachments.

"Arbitration Commencement Date" shall have the meaning set forth in Section 5.8 of the Agreement.

E5-2

CONFIDENTIAL

"Arbitration Decision" shall mean a final determination of the Adjudicating Arbitrator as to whether Manager removal is or is not appropriate based upon the occurrence of Misconduct.

"Arbitration Hearing" shall mean a hearing occurring on a single day and lasting no more than seven (7) hours to be oriented in the reasonable discretion of the Adjudicating Arbitrator by under no circumstances whereby one Member is permitted more time to present such Members case as opposed to the other Member.

"Arbitration List Production Deadline" shall have the meaning set forth in Section 1.2.

"Arbitrator" shall mean any attorney-at-law licensed in the State of Illinois to engage in the practice of law that also has at least ten (10) years of experience at a Chicago-based law firm that employs (by way of equity partners, non-equity partners and associates) not less than one hundred (100) lawyers in the areas of corporate transactions and/or commercial litigation involving disputes involving corporate duties.

"Arbitrator List" shall mean a list of five (5) proposed Arbitrators, numerically ranked according to preference with the first rank signifying the highest preference and the fifth rank signifying the lowest preference.

"Arbitrator Match" shall have the meaning set forth in Section 1.3(a).

"High-Ranked Arbitrator Matches" shall have the meaning set forth in Section 1.3(c).

"Highest Aggregate Ranked Arbitrator" shall have the meaning set forth in Section 1.3(b).

CONFIDENTIAL

# EXHIBIT 6
# EMPLOYMENT AGREEMENTS

ATTACHED HERETO

CONFIDENTIAL

## EXHIBIT 9.1
## INITIAL CAPITAL CONTRIBUTIONS

<u>Initial Members</u>                           <u>Initial Capital Contribution</u>

Net Sortie Systems, LLC                   $■■■■■■*
SI Content Monitor LLC                    $■■■■■■


*Net Sortie's Capital Contribution shall not consist of cash, but rather, Net Sortie hereby assigns all of its right, title, and interest in all of Net Sortie's Intellectual Property to the Company, pursuant to the assignment attached hereto as Exhibit 9.1 (A).

CONFIDENTIAL

### EXHIBIT 9.1(A)
### ASSIGNMENT

This Intellectual Property Assignment (this "Assignment") is made effective as of January 17, 2010 (the "Effective Date") by Net Sortie Systems, LLC, a Nevada limited-liability company ("Net Sortie") for the benefit of Right*haven* LLC, a Nevada limited-liability company ("Assignee").

Net Sortie hereby contributes, conveys, transfers and assigns to Assignee Net Sortie's entire right, title, license and interest in, to and under the business method related to and associated with the provision of copyright infringement identification and prosecution services to others (**the "Business Method IP"**) with said right, title, license and interest to be held and enjoyed by Assignee, for Assignee's own use and benefit and for the use and benefit of Assignee's successors, assigns or other legal representatives, as fully and entirely as the same would have been held and enjoyed by Net Sortie if this contribution, conveyance, transfer and assignment had not been made. This Assignment of Net Sortie's existing rights to the Business Method IP shall be automatically revoked and all such assigned rights shall revert to Net Sortie in the event of dissolution of the Company in accordance with the Operating Agreement.

**IN WITNESS WHEREOF**, Net Sortie hereby executes this Assignment on this 17th day of January, 2010.

Net Sortie Systems, LLC,
a Nevada limited-liability company:

_____
Steven A. Gibson, Manager

STATE OF NEVADA        )
COUNTY OF CLARK        )

Subscribed and sworn to before me by Steven A. Gibson this _____ day of _____, 2010.

_____
Notary Public

E9(A)-1

CONFIDENTIAL

# EXHIBIT 13
# BUDGET

ATTACHED HERETO

E13-1

CONFIDENTIAL

## Exhibit 18.1
## Name, Address and Membership Interest

| Name | Address | Membership Interest |
|---|---|---|
| Net Sortie Systems, LLC, a Nevada limited-liability company | 9506 West Flamingo Road, Suite 101<br>Las Vegas, Nevada 89147<br>Attn: Manager | 50% |
| SI Content Monitor LLC, an Arkansas limited-liability company | 111 Center Street<br>Suite 2500<br>Little Rock, Arkansas 72201<br>Attn: Manager | 50% |

**CONFIDENTIAL**