SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

*Attorney for Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.: 2:10-cv-01343-RLH-PAL |
| Plaintiff, | **RIGHTHAVEN LLC'S RESPONSE TO DEFENDANT-COUNTERCLAIMANT THOMAS A. DIBIASE'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION** |
| v. | |
| THOMAS A. DIBIASE, an individual, | |
| Defendant. | |
| AND RELATED COUNTERCLAIM | |

Plaintiff and Counter-defendant Righthaven LLC ("Righthaven") hereby responds to Defendant-Counterclaimant Thomas A. DiBiase's ("DiBiase") Motion to Dismiss for Lack of Subject Matter Jurisdiction, which has been brought pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure ("Rule 12(h)(3)").  (Doc. 47.)

Righthaven's submission is based on the below Memorandum of Points and Authorities, the declaration of Steven A. Gibson (the "Gibson Decl."), the declaration of Mark A. Hinueber (the "Hinueber Decl."), the declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), the pleadings and papers on file in this action, any oral argument allowed by this Court, and on any other matter of which this Court takes notice.

## I.    INTRODUCTION

DiBiase seeks to dismiss the Complaint in this case pursuant to Rule 12(h)(3) on two grounds: (1) that its acquisition of ownership in the copyrighted work through an assignment (the "Assignment") from Stephens Media LLC ("Stephens Media") at issue fails to vest Righthaven with standing sufficient grant standing to sue for a past infringement under the Copyright Act of 1976 (the "Copyright Act"); or, alternatively, (2) Righthaven's acquisition of ownership in the copyrighted work is void as champertous.  (Doc. # 47 at 6, 10.)  Righthaven asserts that neither of these asserted grounds support a finding that it lacks standing to maintain this action.

Rather, DiBiase's subject matter jurisdictional challenge is just the latest in a series of such attacks lodged against Righthaven and its perceived business model that first originated as speculative, conspiratorial theories in the boundless realm of cyberspace and that have since been reflected in court filings and associated rulings to which the company has been unable to respond.  While the perception of others, whether justified or not, carries significant weight in the forum of public opinion, Righthaven trusts that its compliance with controlling legal authority unquestionably establish its standing to maintain this action and that it will ultimately prevail before this Court.

### A.    DiBiase's Champerty Challenge is Procedurally Improper.

Procedurally, DiBiase argues that Righthaven lacks standing to maintain this action not based on the Assignment, but rather based on the a subsequent transfer of rights to Stephens Media through the grant of a license under the terms of a Strategic Alliance Agreement (the "SAA") entered into by the parties.  (Doc. # 47 at 6-10.)  DiBiase's assertions in this regard, which Righthaven unquestionably contests, are more properly presented to the Court, as discussed below, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1) than pursuant to Rule 12(h)(3).  Nevertheless, the Court is vested with authority to consider this aspect of DiBiase's subject matter jurisdiction challenge under either rule.

The same cannot be said for DiBiase's claim that the Assignment is champertous in view of the SAA.  DiBiase has asserted barratry and champerty together as his twelfth affirmative defense in his response to Righthaven's Complaint.  (Doc. # 19 at 5.)  As such, DiBiase bears the

burden of proof to establish the required elements to prevail on his champerty affirmative defense through the introduction of admissible evidence. *Southern Cal. Gas Co. v. Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003) (recognizing a defendant asserting an affirmative defense bears the burden of proof establishing the defense). He cannot subvert this mandatory obligation by cloaking his champerty affirmative defense as a subject matter jurisdiction challenge under Rule 12(h)(3) or Rule 12(b)(1). *See Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir. 1987). If such an approach were sanctioned, it would allow DiBiase to skirt the procedural mandates of Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") by simply relying on his champerty affirmative defense under Rule 12(h)(3) or 12(b)(1) as a vehicle for invoking a subject matter jurisdiction inquiry by the Court. *Id.*

Simply put, if DiBiase wishes to rely on his champerty affirmative defense as a basis for relief, he should be required to do so under the procedural requirements of Rule 56. The procedural requirements under Rule 56 have been interpreted to ensure the non-moving party is provided with sufficient notice and an ample opportunity to develop admissible evidence that can be presented in response to such a motion. *See In re Rothery,* 143 F.3d 546, 549 (9th Cir. 1998); *Portland Retail Druggists Ass'n v. Kaiser Foundation Health Plan,* 662 F.2d 641, 645 (9th Cir. 1981). Moreover, the Court's review of the record under Rule 56 requires that all evidence and all reasonable inferences that can be drawn therefrom be viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). In fact, relief under Rule 56 is only proper where the moving party has met the applicable burden proof and the record demonstrates that no reasonable trier of fact could find in favor of the non-moving party. *See Roberts,* 812 F.2d at 1177. These standards are clearly applicable to DiBiase's champerty affirmative defense. *Id.* DiBiase should not be permitted to sidestep the procedural mandates of Rule 56 by arguing that his champerty affirmative defense justifies a finding that Righthaven lacks standing under either Rule 12(h)(3) or Rule 12(b)(1). A finding in this regard would completely eviscerate the procedural safeguards defined through countless decisions that protect a non-moving party from being denied a right fully develop and demonstrate the viability of its claims or defenses. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986);

3

1  *Anderson,* 477 U.S. at 255 (1986); *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.,* 182

2  F.3d 157, 160 (2d Cir. 1999)

3  **B.      DiBiase's Subject Matter Attack is Substantively Unviable.**

4        While DiBiase's subject matter jurisdiction attack is, at least, procedurally improper with

5  regard to his champerty affirmative defense, in totality his attack also lacks any substantive merit

6  under applicable law. Righthaven's ownership acquisition of the literary work in this case

7  through the Assignment from Stephens Media, which expressly included the right to seek redress

8  for all past, present and future infringements, unquestionably establishes standing to maintain

9  this action for the accrued copyright infringement claim before this Court.  It is black letter law

10  that at the moment such an assignment occurs, Righthaven, as the current copyright owner, has

11  standing to pursue a claim for infringement.  This is a much different situation than presented in

12  the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") panel's decision in

13  *Silvers v. Sony Pictures Entm't Inc.*, 402 F.3d 881, 884 (9th Cir. 2005) ("*Silvers*"), where the

14  plaintiff, assigned only a ***bare right to sue*** for past copyright infringement, lacked standing.

15        Nothing in the SAA's provisions alter the unambiguous language of the Assignment or

16  the rights that Righthaven acquired, which include the express ability to sue for past

17  infringement.  (Mangano Decl. Ex. 1.)  In this regard, the SAA does not effectuate the

18  assignment of any work.  (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)

19  Rather, the SAA reflects promises made by the parties with regard to future transactions in

20  copyrights.  (*Id.*)  In short, DiBiase's reliance on the SAA is merely an attempt to divert the

21  Court's inquiry from the Assignment's unambiguous language in view of the requirements under

22  *Silvers*, which multiple courts from this district have correctly found to vest Righthaven with

23  standing to maintain accrued copyright infringement actions. *See Righthaven LLC v. Vote For*

24  *The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (D. Nev. Mar. 30, 2011); *Righthaven*

25  *LLC v. Majorwager.com, Inc.,* 2010 WL 4386499, at *2 (D. Nev. Oct. 28, 2010); *Righthaven*

26  *LLC v. Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).

27        To further dispel any doubt as to Righthaven and Stephens Media's intent to fully confer

28  copyright ownership to Righthaven when entering into copyright assignments, both parties have

provided declarations in support of this response.  Thus, to the extent the Court finds that anything in the SAA or in the Assignment is ambiguous such that it is unclear whether Righthaven has standing to maintain this action, it is empowered to interpret these agreements in order to effectuate the parties' mutual intent to confer Righthaven full copyright ownership rights.  The Court's ability to do this is not only authorized by Nevada law, which governs the SAA, but the SAA also expressly vests the Court with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties."  (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

Finally, in an effort to cure any possible doubt as to whether Righthaven has full ownership in an assigned copyright, Righthaven and Stephens Media have recently executed a Clarification and Amendment to Strategic License Agreement (the "Amendment"), which not only makes clear that Righthaven has full ownership rights in any assigned copyright, it gives Stephens Media only a non-exclusive right to use an assigned work.

DiBiase's attempt to persuade the Court to find a lack of subject matter jurisdiction based on his affirmative defense of champerty is, in addition to being procedurally improper, also devoid of any substantive merit.  The Assignment, SAA, and the Amendment clearly demonstrate a non-champertous relationship between Righthaven and Stephens Media.  Contrary to DiBiase's contentions, Righthaven unquestionably has, at a minimum, a reasonable belief in its interest to sue for infringement, whether based on an accrued, present or future claim, related to the copyrighted work.  Accordingly, even if the Court were to disregard the procedural impropriety of DiBiase's reliance on an affirmative defense under either Rule 12(h)(3) or Rule 12(b)(1), the record clearly supports that Righthaven nevertheless has standing to maintain this action because its relationship with Stephens Media is non-champertous.

For these reasons, Righthaven respectfully requests that the Court find that it has at all times had standing to maintain this suit, or in the alternative, that any defect in Righthaven's standing has been cured by the Amendment.  Likewise, there is clearly an insufficient legal or factual basis for the Court to find that Righthaven and Stephens Media's contractual relations are

void based on champerty.  Accordingly, Righthaven respectfully requests the Court deny DiBiase's Motion as argued more thoroughly below.

## II.       STATEMENT OF FACTS

Righthaven is the owner of a copyright registration for the literary piece "Man who killed wife sought ultimate sentence" (the "Work"), which originally appeared in the Stephens Media owned news media publication the *Las Vegas Review-Journal* on or about June 11, 2010.  (Doc. # 1 at 2-3, Ex. 2.)  After publication, Stephens Media, the original owner of the Work, assigned all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements (the "Assignment").  (Mangano Decl. Ex. 1; *cf* Hinueber Decl.[1] ¶ 4, Ex. 1.) On July 27, 2010, the United States Copyright Office (the "USCO") granted Righthaven registration for the Work.   (Doc. # 1 at 3, Ex. 4.)  Righthaven subsequently filed this copyright infringement action on August 9, 2010.  (Doc. # 1.)

Righthaven contends that DiBiase is the owner of the Internet domain, and maintains control of the content posted at same, found at <nobodycases.com> (the "Website").  (Doc. # 1 at 2, Ex. 1.)  Righthaven further asserts that on or about June 11, 2010, DiBiase displayed an unauthorized 100% reproduction of the Work on the Website.  (Doc. # 1 at 2, Ex. 3.) Based on the alleged infringement of the Work, Righthaven seeks, among other things, entry of a permanent injunction and an award of statutory damages against DiBiase.  (*Id.* at 5-6.) Righthaven has demanded a jury trial in this case.  (*Id.* at 6.)

On October 29, 2010, DiBiase answered the Complaint, asserted numerous affirmative defenses, such as "Barratry And Champerty" (Doc. # 19 at 5), and alleged a counterclaim.  (*Id.*) Righthaven sought to dismiss DiBiase's counterclaim on the grounds that it was duplicative given that it exclusively sought a declaratory judgment of non-infringement.  (Doc. # 27.)

---

[1] In support of this response, Righthaven has submitted duplicative copies of the declarations of Steven A. Gibson and Mark A. Hinueber filed in *Righthaven LLC v. Democratic Underground, LLC, et al.,* Case No. 2:10-cv-01356-RLH (Doc. ## 101, 102), which is pending before thisCourt.  While the contents of these declarations describe the specific copyrighted work at

Righthaven concurrently filed a reply to DiBiase's counterclaim.  (Doc. # 28.)  The Court denied Righthaven's motion to dismiss on April 15, 2011. (Doc. # 45.)

DiBiase filed the instant Motion, which requests a finding that Righthaven lacks standing to maintain this action, on May 4, 2011.  (Doc. # 47.)  As argued below, Righthaven has standing to maintain this action for the accrued copyright infringement claim assigned to it, along with ownership of the Work, by Stephens Media.  (Mangano Decl. Ex. 1; *cf* Hinueber Decl. ¶ 4, Ex. 1.) DiBiase's procedurally improper, and substantively unpersuasive, champerty arguments also fail to establish that Righthaven lacks standing to prosecute its copyright infringement claims. Accordingly, DiBiase's Motion must be denied.

## III.   APPLICABLE STANDARDS

DiBiase's Motion is brought pursuant to Rule 12(h)(3), which permits a court to raise a lack of subject matter jurisdiction *sua sponte* if the parties fail to do so.  *See Napoleon Hardwoods, Inc. v. Professionally Designed Benefits, Inc.,* 984 F.2d 821, 822 (7th Cir. 1993). DiBiase's Motion, which is predicated on the assertion that Righthaven lacks standing to maintain this action, should be construed as a motion to dismiss under Rule 12(b)(1).  *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010); *accord Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009).

Under Rule 12(b)(1), where subject matter jurisdiction is challenged based on extrinsic evidence, the Court is empowered to determine the facts for itself.  *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).  If the extrinsic evidence is in dispute, the Court may weigh the evidence and determine the facts in order to determine whether it has power to hear the dispute before it.  *See Roberts,* 812 F.2d at 1177; *see also Friends of the Wild Swan, Inc. v. United States Forrest Serv.,* 910 F.Supp. 1500, 1504 (D. Or. 1995).  In addition to being authorized to consider extrinsic evidence, the Court is also vested with broad discretion to order discovery and to hold evidentiary hearings to determine whether or not subject matter jurisdiction exists. *See Rosales v. United States,* 824 F.2d 799, 803 (9th Cir. 1987).  DiBiase's subject matter jurisdiction arguments based on his contention that Righthaven lacks standing to bring an accrued copyright infringement claim based on, among other things, the contents of the

SAA, appears to properly present an extrinsically-based evidentiary challenge pursuant to Rule 12(b)(1).

The same is not true for DiBiase's claim that Righthaven lacks standing based on his affirmative defense of champerty. (Doc. # 47 at 10-13; Doc. # 19 at 5.)  A court should not resolve issues of fact where the question of subject matter jurisdiction if it involves deciding the merits of the claims or defenses before it. *Morrison v. Amway Corp.,* 323 F.3d 920, 925 (11th Cir. 2003); *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir. 1995); *see also Rosales,* 824 F.2d at 803 n. 4.  In such cases, summary judgment standards under Rule 56 apply, which require the moving party to establish that absence of genuine issues of material fact and entitlement to judgment as a matter of law.  *Roberts,* 812 F.2d at 1177.  A defendant seeking summary judgment based on an affirmative defense bears that burden of sufficiently demonstrating to the court's satisfaction that no reasonable trier of fact could find in favor of the non-moving party. *Southern Cal. Gas Co.,* 336 F.3d at 888.  DiBiase's reliance on his champerty affirmative defense is unquestionably an impermissible attempt to sidestep the procedural safeguards afforded to non-moving parties under Rule 56.

## IV.   ARGUMENT

As noted above, DiBiase challenges Righthaven's standing to maintain this action on two grounds: (1) because it has failed to obtain sufficient ownership rights in and to the Work, along with the right to seek redress for past, present and future infringement, in view of the SAA and the *Silvers* decision; and (2) because its contractual relationships demonstrate champerty.  (Doc. # 47 at 1.)  DiBiase's *Silvers*-based arguments must be rejected for several reasons.  DiBiase's champerty-based arguments must likewise be rejected.  Accordingly, DiBiase's Motion must be denied in its entirety.

### A.   DiBiase's Standing Arguments Concerning a Lack of Sufficient Ownership Under *Silvers* Must be Denied.

Standing is a jurisdictional requirement that can be raised at any time, including *sua sponte* by the court.  *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008); FED.R.CIV.P. 12(h)(3).  Pursuant to Section 501(b) of the Copyright Act, only "the legal

or beneficial owner of an exclusive right under a copyright" is entitled to sue for infringement. *Silvers*, 402 F.3d at 884.  Section 106 of the Copyright Act, in turn, defines the exclusive rights that can be held in a copyright (*e.g.* the right to reproduce, to prepare derivative works, and to distribute copies).  Exclusive rights in a copyright may be transferred and owned separately—for example, through assignment or an exclusive license—but no exclusive rights exist other than those listed in Section 106.  *Silvers*, 402 F.3d at 885.  While the right to assert an accrued cause of action for copyright infringement cannot be transferred alone, such a right can be transferred along with one or more of the exclusive rights in a copyright.  *See id.* at 890.

        As the assignee-owner of the full right and title in and to the Work, Righthaven has standing to sue for acts of copyright infringement occurring after it acquired ownership of the copyright.  Pursuant to the express terms of the Assignment, Stephens Media also expressly transferred to Righthaven the right to assert accrued causes of action for infringement of the Work, giving Righthaven standing to sue DiBiase for infringement, even though his infringement occurred prior to the Assignment.  (Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1; Mangano Decl. Ex. 1.)  In addition, Stephens Media and Righthaven recently executed a clarification and amendment to the SAA in order to further clarify and effectuate, to the extent not already accomplished, what has at all times been the intent of the parties—to transfer full ownership in copyright to Righthaven. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  This Amendment has cured any defects in standing that existed under the parties' original contractual relationship.  (*Id.*)  Therefore, as set forth below, Righthaven has standing to maintain this action.

## 1. *Pursuant to the Written Assignment, Righthaven Has Standing to Sue for Past Infringement.*

        Binding precedent establishes that the assignment from Stephens Media to Righthaven conveys upon Righthaven standing to bring this case.[2]  In *Silvers*, the Ninth Circuit held that an

---

[2]  Righthaven additionally contends that DiBiase lacks standing to challenge the contractual validity of the SAA.  Courts have held, that as a matter of public policy, it would be inequitable to allow an infringer to use the validity of transfer of rights to a copyrighted work as a defense when no dispute exists between the parties to the transfer.  *See Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428-29 (9th Cir. 1996); *Elden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36-37 (2d Cir. 1982); *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.,* 141

assignor can transfer the ownership interest in an accrued past infringement, but the assignee has standing to sue only if the interest in the past infringement is expressly included in the assignment and the assignee is also granted ownership of an exclusive right in the copyrighted work. *Id.* at 889-90.  In so holding, the panel in *Silvers* aligned Ninth Circuit law with that of the Second Circuit as set forth in *ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 944 F.2d 971, 980 (2d Cir. 1991), which recognized the right to sue for past infringement when both the copyright and the accrued claims were purchased.  *Silvers,* 402 F.3d at 889.

Multiple courts in this district have already determined that Righthaven has standing to bring a claim for past infringement under the Ninth Circuit's standard in *Silvers*, based on the plain language of the copyright assignment:

- *Vote For The Worst, LLC, et al.,* Case No. 2:10-cv-01045-KJD-GWF (Doc. # 28 at 2-3);
- *Majorwager.com, Inc.,* 2010 WL 4386499, at *2; and
- *Dr. Shezad Malik Law Firm P.C.,* 2010 WL 3522372, at *2.

(*See also* Gibson Decl. ¶¶ 9-10.)

Just like the assignments at issue in the cases above, the Assignment here transferred all exclusive ownership rights in and to the Work to Righthaven, and expressly included all accrued causes of action for copyright infringement:

> Assignor hereby transfers, vests and assigns [the Work]…to Righthaven…all copyrights requisite to have Righthaven recognized as the copyright owner of the Work for purposes of Righthaven being able to claim ownership as well as the right to seek redress for ***past, present and future infringements*** of the copyright in and to the Work.

(Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1; Mangano Decl. Ex. 1, emphasis added.)  At the moment of the Assignment, Righthaven became the owner of the Work

---

F.Supp.2d 224, 227-28 (D. P.R. 2001)(denying motion to dismiss for lack of standing based on alleged invalidity of transfer of copyrighted interest).  Moreover, as a matter of general contract law, only the contracting parties to an agreement have standing to attack its validity.  *See, e.g., Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 792 (8th Cir. 1967).

with all rights of ownership, including the right to register the Work, license the Work and seek redress for infringement, including past infringement.  In other words, the Assignment conferred upon Righthaven the exclusive rights required under the Copyright Act to bring suit for **both** past and future acts of infringement.  As parties frequently do, Righthaven licensed back to Stephens Media the right to exploit the Work.  It also sought registration of the Work with the USCO and brought suit against a blatant infringer.

Contrary to DiBiase's arguments in the Motion, nothing in the SAA's provisions alters the unambiguous language of the Assignment or the rights that Righthaven acquired.  First, the SAA does not effectuate the assignment of any work.  (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Rather, the SAA reflects promises made by the parties with regard to future transactions in copyrights.  (*Id*.)  The SAA envisions an assignment to Righthaven of all rights, title and interest in and to potential copyrighted works, which includes the right to sue for any past, present or future infringements, coupled with a license back to Stephens Media of the right to exploit any copyrighted works.  (*Id.*)  But the SAA itself does not cause an assignment of property rights.

Nor does the SAA's right of reversion provision have any impact on Righthaven's present standing to sue for past infringement.  The right of reversion gives Stephens Media the right to regain the ownership to any assigned work in the future under certain conditions.  (*Id.* § 8.)  That future right has no impact on Righthaven's current ownership status, its ownership status at the time of the assignment, or its status at the time it filed this action.  Indeed, unless and until Stephens Media exercises its right of reversion, that right will have no impact whatsoever.  Stephens Media has not exercised that right (Gibson Decl. Ex. 2 § 8; Hinueber Decl. Ex. 2 § 8.), and there is nothing in the record to suggest it will.

While parties in numerous other actions have alleged that this transactional structure constitutes a "sham" or meaningless assignment, adopting these allegations by a finding that Righthaven lacks standing to maintain this action for past infringement would eviscerate countless complex commercial and intellectual property transactions.  "Principles of contract law are generally applicable in the construction of copyright assignments, licenses and other transfers

of rights." *Key Maps, Inc. v. Pruitt,* 470 F. Supp. 33, 38 (S.D. Tex. 1978).  An assignment transfers all rights, title and interest in and to the assigned property.  *See id.; see also Pressley's Estate v. Russen,* 513 F. Supp. 1339, 1350 (D. N. J. 1981) ("An assignment passes legal and equitable title to the property . . . .").  Axiomatically, when the totality of rights are assigned by one party to another, and the party receiving said assignment then conveys a license of some interest to the same party or to another party, complete title to ownership vests in the assignee ***prior to being divested through licensure***.

While the transactional structure described in the SAA, in which a license is given back to Stephens Media, may potentially be construed to limit Righthaven's ability to bring suit for present and future infringements during the term of the license, it does not limit the company's ability to bring suit for past infringements, which is precisely what is at issue here.  As the Ninth Circuit held in *Silvers*, the right to sue for past infringement requires only an assignment of an ownership interest along with the expressed right to sue for an accrued claim for infringement. *Silvers,* 402 F.3d at 889-90.

The transactional structure under the SAA and the actual assignment of rights comport with the holding in *Silvers*.  Pursuant to the individual assignments that are ultimately executed, Righthaven is assigned all ownership rights, along with the right to sue for past, present and future infringements, associated with the work assigned.  (*See, e.g.,* Gibson Decl. ¶ 4, Ex. 1; Hinueber Decl. ¶ 4, Ex. 1.)  While Righthaven promises under the SAA to license rights back to Stephens Media to exploit the acquired works, there can be no license until ***after*** the assignment of ownership rights and the right to sue for past infringements is conveyed.  This structure thus conveys ownership and the right to sue for accrued infringement claims, which is precisely what is required to establish standing under *Silvers* for purposes of accrued or past infringement claims.  Any other conclusion would require the Court to ignore the expressly defined assignment and license-back structure contemplated by the parties to the SAA.

### 2.    *The Court Should Construe the Contracts to Convey to Righthaven All Rights Necessary for It to Have Standing.*

DiBiase's standing argument based on the contractual documents relied upon asks the Court to view certain terms selected by a non-party in a vacuum without considering the contracting parties' express intent.  DiBiase's arguments in this regard are contrary to expressly applicable Nevada law and the authority conferred by the parties' under the SAA.

Under Nevada law,[3] the Court should interpret the contracts to find that they convey any and all rights necessary to establish Righthaven as the true and lawful owner of the copyright to the Work.  To the extent there is any ambiguity with respect to whether the Assignment sufficiently conveyed the rights to Righthaven so that it has standing to bring this action, the court should look to parties' intent.  *See Sheehan & Sheehan v. Nelson Malley & Co.,* 121 Nev. 481, 488, 117 P.3d 219, 224 (2005) (internal quotation omitted).  Moreover, pursuant to the express language of the SAA, if any portion of the SAA is deemed void or unenforceable, the Court is contractually vested with the power to correct any defective provision in order to "approximate the manifest intent of the [p]arties."  (Gibson Decl. ¶ 11, Ex. 2 § 15.1; Hinueber Decl. ¶ 10, Ex. 2 § 15.1.)

There can be no question that the parties intended to convey to Righthaven any right necessary for it to bring suit.  As set forth in the cited supporting declarations and as reflected in the SAA, the Assignment, and the recently-executed Amendment discussed below, the parties to the SAA and the Assignment intended to vest copyright ownership of specific works in Righthaven so as to grant it the right to sue for infringement, including past infringement, while still permitting Stephens Media to use the works going forward based on a license of rights to do so from Righthaven.  (Gibson Decl. ¶¶ 5-12, Exs. 2-3; Hinueber Decl. ¶¶ 5-11, Exs. 2-3.)  Accordingly, the Court should construe the contracts in such a way that they convey to Righthaven all rights that are necessary to have standing to maintain this action.  If the Court does so, Righthaven has always had standing to bring this suit.

---

[3] The SAA expressly states that it is governed by Nevada law.  (Gibson Decl. ¶ 5, Ex. § 15.3; Hinueber Decl. ¶ 5, Ex. § 15.3.)

### 3. Standing Is Also Effected by the Amendment.

As stated above, Righthaven has standing to bring suit pursuant to the Assignment and SAA, which expressly confer (and reflect the intent to confer) full copyright ownership on Righthaven. Nevertheless, to further clarify the parties' intent—and to preempt any future challenges to Righthaven's standing—Righthaven and Stephens Media have clarified and amended their intent when entering into the SAA as set forth in the cited supporting declarations and in the Amendment. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.) In the Amendment, Righthaven and Stephens Media promise to execute individual assignments for certain copyrighted works (as before), but Righthaven promises to grant Stephen's media only a non-exclusive license to Exploit the work. (Gibson Decl. Ex. 3 at 1-2; Hinueber Decl. Ex. 3 at 1-2.) As a mere holder of the right to use the assigned copyrighted work, Stephens Media would not have standing to sue for infringement. *See, e.g., Silvers* 402 F.3d at 884-85. Thus, the sole party holding any exclusive rights, and the attendant standing to sue for infringement, would be Righthaven. *See id.* This agreement reflects the parties' intent to transfer full rights in the copyright to Righthaven. (Gibson Decl. ¶¶ 5-12, Ex. 3; Hinueber Decl. ¶¶ 5-11, Ex. 3.) Further, the Amendment extinguishes the "right of reversion" previously held by Stephens Media, and replaces it with a standard option to re-purchase the copyright upon the satisfaction of certain conditions. (Gibson Decl. Ex. 3 at 2-3; Hinueber Decl. Exs. 3 at 2-3.) The Amendment also contains provisions requiring Stephens Media to pay Righthaven royalties for its use of the Work, making Righthaven the beneficial owner in the Work, in addition to its status as legal owner. (*Id.* at 1-2.)

Courts frequently allow parties to a copyright transfer to subsequently clarify or amend their agreement in order to express their original intent to grant the assignor the right to sue for infringement. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (recognizing that an oral assignment can be confirmed later in writing); *Imperial Residential Design, Inc. v. Palms Dev. Group, Inc.,* 70 F.3d 96, 99 (11th Cir. 1995) ("[A] copyright owner's later execution of a writing which confirms an earlier oral agreement validates the transfer ab initio."); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532 (11th Cir.

1994); *see also Intimo, Inc. v. Briefly Stated, Inc.,* 948 F. Supp. 315, 318 (S.D.N.Y. 1996) (giving effect to a "very late" amendment granting the plaintiff the right to bring the accrued causes of action); *Goldfinger Silver Art Co., Ltd. v. Int'l Silver Co.,* 1995 WL 702357, at *4 (S.D.N.Y. Nov. 28, 1995) (holding that plaintiff could cure standing defect after the action was filed); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.,* 830 F. Supp. 614, 620 (N.D. Ga. 1993) (holding that second assignment cured standing defect).

Given that the parties to the Assignment and the Amendment do not dispute the rights in the Work and the DiBiase has not been prejudiced in any way by the Amendment, the Court—if it finds that original standing was defective—should allow the Amendment to cure the defect without dismissing the case.[4] *See Intimo, Inc.,* 948 F. Supp. at 317-18; *Infodek, Inc.,* 830 F. Supp. at 620; *Wade Williams Dist., Inc. v. Am. Broad. Co., Inc.,* 2005 WL 774275, at *4 (S.D.N.Y. April 5, 2005); *see also Dubuque Stone Prod. Co. v. Fred L. Gray Co.,* 356 F.2d 718, 724 (8th Cir. 1966); *Kilbourn v. Western Surety Co.,* 187 F.2d 567, 571 (10th Cir. 1951). Moreover, permitting subsequent clarification or amendment of the parties' original intent so as to cure any technical standing defects promotes judicial economy and reduces litigation costs that would necessarily arise from the dismissal and re-filing of a new action. *Intimo, Inc.,* 948 F. Supp. at 318-19.

In sum, Righthaven was conferred standing to maintain this action for the accrued copyright infringement claim against DiBiase based on the Assignment, which included the transfer of ownership along with the right to seek redress for past infringement, as required by the decision in *Silvers*. To the extent there is any dispute concerning the parties' intent to convey ownership along with the right to seek redress for all past, present and future infringement of the Work, this intent has been expressly set forth in the cited supporting declarations, which should be considered in interpreting their contractual relationship under Nevada law and pursuant to the express authority to do so granted by the parties under the SAA. Finally, to further dispel any

---

[4] Federal Rule of Civil Procedure 17(a) additionally supports Righthaven's request to have the parties' intent to grant the company standing to bring this action by recognizing and giving effect to the Amendment through ratification. *See Clarkson Co. Ltd. v. Rockwell Int'l Corp.,* 441 F. Supp. 792, 797 (N.D. Cal. 1977).

doubts concerning the parties' intent or their contractual relationship, they have executed the Amendment as additional clarification and which unquestionably establishes Righthaven's standing to maintain this action.  Accordingly, DiBiase's subject matter jurisdiction challenge based on the SAA and the decision in *Silvers* must be rejected.

**B. DiBiase's Lack of Subject Matter Jurisdiction Arguments Based on Champerty Are Procedurally And Substantively Without Merit.**

Having addressed DiBiase's arguments as to why standing does not exist in view of the contractual relationships between the parties, Righthaven now turns to the lack of procedural and substantive merit of his subject matter challenge based on the affirmative defense of champerty. (Doc. # 47 at 10-13.)  Simply put, DiBiase's champerty-based arguments do not justify a finding that Righthaven cannot prosecute its copyright infringement claim asserted in this case.

*1. DiBiase's champerty-based subject matter jurisdiction challenge is procedurally improper.*

Whether predicated on Rule 12(h)(3) or, as asserted by Righthaven, Rule 12(b)(1), DiBiase's subject matter jurisdiction challenge based on the alleged merit of his champerty affirmative defense is unquestionably improper.  Seeking such relief under either Rule 12(h)(3) or Rule 12(b)(1) is nothing more than a veiled attempt at trying to secure a favorable ruling without having to comply with the procedural safeguards afforded to non-moving parties under Rule 56.

As set forth above in discussing standards applicable to DiBiase's Motion, a court should not resolve issues of fact where the question of subject matter jurisdiction involves deciding the merits of the claims or defenses before it. *Morrison,* 323 F.3d at 925; *Holt,* 46 F.3d at 1003; *see also Rosales,* 824 F.2d at 803 n. 4.  In such cases, summary judgment standards under Rule 56 apply, which require the moving party to establish that absence of genuine issues of material fact and entitlement to judgment as a matter of law.  *Roberts,* 812 F.2d at 1177.  A defendant seeking summary judgment based on an affirmative defense bears the burden of sufficiently demonstrating to the court's satisfaction that no reasonable trier of fact could find in favor of the non-moving party. *Southern Cal. Gas Co.,* 336 F.3d at 888.

Here, DiBiase's subject matter jurisdiction challenge based on his champerty affirmative defense (Doc. # 19 at 5) simply seeks to take advantage of the broad discretion granted to the Court in determining whether it has power to adjudicate this dispute.   This is clearly procedurally improper because DiBiase bears the burden of proof on this defense and he must comply with the requirements of Rule 56 to obtain the relief requested. *See Morrison,* 323 F.3d at 925; *Holt,* 46 F.3d at 1003; *see also Southern Cal. Gas Co.,* 336 F.3d at 888; *Rosales,* 824 F.2d at 803 n. 4. Moreover, DiBiase has failed to properly notice his intent to seek relief for summary judgment, which divests the Court of authority to determine that Righthaven lacks standing to prosecute its copyright infringement claims based on the affirmative defense of champerty under Rule 56. *See Employers Ins. of Wausau v. Petroleum Specialties, Inc.,* 69 F.3d 98, 105 (6th Cir. 1995); *Reese v. Sparks,* 760 F.2d 64, 66 (3d Cir. 1985).   Accordingly, DiBiase's champerty-based subject matter jurisdiction challenge is procedurally improper and must be denied.

### 2.   DiBiase's champerty-based subject matter jurisdiction challenge is substantively without merit.

Even in the unlikely event DiBiase's champerty-based subject matter jurisdiction challenge is found to be procedurally proper, his defense is substantively devoid of merit.  As such, it cannot serve as a basis for finding that Righthaven lacks standing to prosecute its copyright infringement claim asserted against him.

The doctrine of champerty is recognized under Nevada law.  *Schwartz v. Eliades,* 113 Nev. 586, 589-90 (1997); *Del Webb Communities, Inc. v. Partington,* 2009 WL 3053709, at *5 (D. Nev. Sept. 18, 2009).  Champerty, however, is "'intended to prevent the interference of strangers having no pretense of right to the subject of the suit, an standing in no relation to the duty of the suitor.'" *Del Webb Communities, Inc.,* 2009 WL 3053709, at *5 (quoting *Smith v. Hartsell,* 150 N.C. 71, 78-79, 63 S.E. 172 (1908)).  Champerty cannot exist if "the person maintaining has some interest in the subject of the suit." *Schwartz,* 113 Nev. at 589 (internal quotations and citation omitted).  "Where a person promoting the suit of another has any interest whatever, legal or equitable, in the thing demanded . . . he is in effect also a suitor according to the nature and extent of his interest." *Id.* at 589-90 (internal quotations and citation omitted).

17

Even if a party has no interest-in-fact in the litigation, "but had a reasonable belief that he was an interested party, the agreement would not be champertous." *Schwartz,* 113 Nev. at 590.

As Righthaven has argued above, it has standing to sue DiBiase for the accrued copyright infringement claim at issue in this case under the decision in *Silvers* based on the Assignment, which effectuated the full conveyance of all ownership rights in and to the Work along with the authority to sue for past, present and future infringements.  (Mangano Decl. Ex. 1.)  The SAA's language contemplating or describing the licensing back of certain rights to Stephens Media in no way divests or otherwise obviates the fact that Righthaven is the owner of the Work.  The parties have expressly conveyed their intent in this regard as set forth in the cited supporting declarations. (Gibson Decl. ¶ 5, Ex. 2 § 7.2; Hinueber Decl. ¶ 5, Ex. 2 § 7.2.)  Despite the Court's express authority delegated by the parties to effectuate this intent should they have failed to adequately do so, Righthaven and Stephens Media have also clarified their intent through the Amendment. (Gibson Decl. ¶ 12, Ex. 3; Hinueber Decl. ¶ 11, Ex. 3.)  Given these circumstances, there is simply no basis upon which the Court could conclude that Righthaven lacked even a reasonable belief that it had an interest in this action as is required to establish a claim of champerty under Nevada law. *See Schwartz,* 113 Nev. at 589-90.  Accordingly, DiBiase's champerty-based subject matter jurisdiction challenge should be denied substantively despite its obvious procedural impropriety.

## IV.   CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court deny DiBiase's Motion and find that Righthaven has standing to maintain this action for past infringement of the Work along with granting such relief as the deemed proper and just.

Dated this 20th day of May, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

18

1

**CERTIFICATE OF SERVICE**

2

     Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a

3

representative of Righthaven LLC and that on this 20th day of May, 2011, I caused a copy of the

4

foregoing document to be served by the Court's CM/ECF system.

5

6
                                    SHAWN A. MANGANO, LTD.

7
                                    By: /s/ Shawn A. Mangano

8
                                    SHAWN A. MANGANO, ESQ.
                                    Nevada Bar No. 6730

9
                                    shawn@manganolaw.com
                                    9960 West Cheyenne Avenue, Suite 170

10
                                    Las Vegas, Nevada 89129-7701
                                    Tel: (702) 304-0432

11
                                    Fax: (702) 922-3851

12
                                    *Attorney for Righthaven LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28