COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
BART E. VOLKMER (*pro hac vice*)
bvolkmer@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, Ca 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, Ca 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

Attorneys for Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>　　　　　Plaintiff,<br>　　v.<br>THOMAS A. DIBIASE, an individual,<br>　　　　　Defendant.<br>_____<br>THOMAS A. DIBIASE, an individual,<br>　　　　　Counterclaimant,<br>　　v.<br>RIGHTHAVEN LLC, a Nevada limited-liability company,<br>　　　　　Counter-defendant. | CASE NO.:  2:10-cv-01343-RLH-PAL<br><br>**DEFENDANT-COUNTERCLAIMANT THOMAS A. DIBIASE'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION** |

# TABLE OF CONTENTS

Page

REPLY MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. Righthaven Did Not Own The McMurdo Article When It Filed This Suit. ........... 2

    B. The SAA's Purported Amendment Does Not Cure The Jurisdictional Defects In Righthaven's Case. ......................................................................................... 6

    C. The Champertous Assignment Is Void. ................................................................ 10

III. CONCLUSION ................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 12

*Carroll v. Nakatani*, 188 F. Supp. 2d 1219 (D. Haw. 2001) ............................................................. 7

*Doran v. Del Taco, Inc.*, No. SACV04046CJC(ANX), 2006 WL 2037942 (C.D. Cal. July 5, 2006) ........................................................................................................ 7, 8

*Gaia Technologies v. Reconversion Tech.*, 93 F. 3d 774 (Fed. Cir. 1996) ...................................... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 7

*Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007 .................................................................. 9

*Precision Airmotive Corp. v. Rivera*, 288 F. Supp. 2d 1151 (W.D. Wash. 2003) ........................ 12

*Silvers v. Sony Pictures Entm't, Inc.,* 402 F. 3d 881 (9th Cir. 2005) .............................. 3, 4, 6, 9, 12

*Vincent v. Santa Cruz,* 647 P. 2d 379 (Nev. 1982) .......................................................................... 6

**STATUTES**

17 U.S.C. § 101 ................................................................................................................................ 4

17 U.S.C. § 501(b) ........................................................................................................................... 4

**RULES**

Fed. R. Civ. P. 11. ............................................................................................................................ 8

Fed. R. Civ. P. 12 ........................................................................................................................... 13

Fed. R. Civ. P. 56 ........................................................................................................................... 12

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Under the Strategic Alliance Agreement ("SAA"), Righthaven received sham assignments for hundreds of Stephens Media LLC's ("Stephens") copyrights. Righthaven then registered those copyrights with the Copyright Office based on the inaccurate representation that it owned them. With those registrations in hand, Righthaven filed hundreds of copyright-infringement lawsuits against individuals and non-profit entities. When some of those defendants challenged Righthaven's standing on the pleadings, Righthaven provided the relevant assignment agreements to the Court, but repeatedly withheld the highly material SAA. That strategy worked. Courts ruled that Righthaven had standing to sue based solely only on the copyright registration and the assignment agreement. Had Righthaven presented the SAA, the results would have been much different. The SAA makes clear that Stephens has not transferred any rights under Section 106 of the Copyright Act to Righthaven, and therefore Righthaven lacks standing to bring copyright infringement actions over Stephens' articles.

When the SAA was uncovered in litigation, several parties—including Mr. DiBiase—filed motions challenging Righthaven's standing to sue. Righthaven and Stephens then abandoned any pretense that Stephens' assignments to Righthaven were legitimate. On May 9, 2011, five days after Mr. DiBiase filed this motion to dismiss, Stephens and Righthaven purported to amend the SAA. That gambit does not cure the jurisdictional defects in Righthaven's case. First, jurisdiction must be present at the outset of an action, it cannot be invented nine months later when fact discovery is about to close. Second, the amended SAA suffers from the same flaw as the original: Stephens still controls all of the relevant rights to exploit the copyright in the work at issue. Accordingly, even if the amendment were considered, Righthaven's case should still be dismissed for lack of subject-matter jurisdiction.

Finally, Righthaven lacks standing to sue because the arrangement between Righthaven and Stephens is champertous. Righthaven does not dispute that: (1) a champertous agreement is void; and (2) the elements of a champerty defense are satisfied if the SAA does not grant Righthaven ownership rights under Section 106 of the Copyright Act. To avoid a finding of

champerty, Righthaven raises the defense that it was acting in good faith when filing this case. Righthaven, however, could not have harbored a reasonable belief that it owned an interest in the McMurdo Article when it filed and prosecuted this case. The SAA is clear that Stephens controls the exclusive rights to exploit the article. And that reality is bolstered by the actions of the parties: Stephens continues to act as the owner of this article after this suit was filed, and Righthaven's only connection is as a litigant. On this record, Righthaven's claim that it reasonably believed that it owned the McMurdo Article rings hollow. The Court, therefore, should find lack of subject-matter jurisdiction for the independent reason that Righthaven has engaged in champerty by contracting to sue over an article in which it had no interest, thereby voiding the transaction that purportedly gave it ownership.

II.   ARGUMENT

   A.   **Righthaven Did Not Own The McMurdo Article When It Filed This Suit.**

For most of this case, Righthaven withheld the alleged assignment agreement for the McMurdo Article. It did not attach that agreement to its complaint, did not produce the document with its original set of initial disclosures, and did not turn it over in response to document requests that Mr. DiBiase served in January. Finally, Righthaven divulged the assignment for the first time when responding to this motion. That agreement—as properly interpreted with reference to the SAA—demonstrates that Righthaven did not own the copyright in the McMurdo Article when it filed this lawsuit.

Righthaven and Stephens entered into the SAA on January 18, 2010. *See* Volkmer Decl., Ex. A at 1 (Docket No. 48). The agreement sets forth detailed procedures under which Righthaven files lawsuits over Stephens' newspaper articles. *Id*. at §§ 3-4. The SAA requires Stephens to "assign" articles to Righthaven using a standard format. *Id*. at § 7.1, Exhibit 1. The SAA further states that *"despite any Copyright Assignment,"* Stephens retains an exclusive right to exploit the "assigned" articles "for any lawful purpose whatsoever" and that Righthaven "shall have no right" to exploit them. *Id*. at § 7.2 (emphasis added). Stephens also has the right to terminate any alleged assignment "and enjoy a right of complete reversion." *Id*. at § 8. Righthaven does not dispute that these terms governed the claimed assignment at issue here.

On July 19, 2010—six months after the parties signed the SAA and after Righthaven identified Mr. DiBiase's blog post at issue in this case—Stephens purported to assign the copyright in the McMurdo Article to Righthaven using the format mandated by the SAA. *Compare* Mangano Decl., Ex. 1 (purported assignment agreement for McMurdo Article) (Docket No. 58) *with* Exhibit 1 of the SAA. The alleged assignment took place "subject to" Stephens' reversion rights spelled out in the SAA. Mangano Decl., Ex. 1. The stilted language of the assignment is anything but an unconditional transfer: Stephens purports to assign the copyright in the McMurdo Article "requisite to have Righthaven recognized as the copyright owner . . . for purposes of Righthaven *being able to claim* ownership as well as the right to seek redress for past, present, and future infringement." *Id*. (emphasis added).

This purported assignment did not transfer any rights under Section 106 of the Copyright Act to Righthaven. Both before and after the "assignment," Stephens had the *exclusive right* to exploit the McMurdo Article. If anything, Stephens tried to assign to Righthaven a heavily qualified right to sue for copyright infringement, which is barred by *Silvers v. Sony Pictures Entm't, Inc.,* 402 F. 3d 881 (9th Cir. 2005). Righthaven's contrary argument is difficult to follow. It contends that "[n]othing in the SAA's provisions alter the unambiguous language of the Assignment or the rights that Righthaven acquired." Opp. at 11. The SAA, however, creates Stephens' assignment obligations in the first place, dictates the format and terms of future assignments, explains what happens "despite any Copyright Assignment," and describes the reversion rights that the assignments must expressly incorporate. *See* SAA §§ 3-4, § 7.1, § 7.2, § 8, Exhibit 1. While Righthaven notes that the SAA "does not effectuate the assignment of any work," Opp. at 11, that does not matter because the SAA *governs* the assignments that Stephens makes to Righthaven.

Righthaven apparently contends that the assignment in this case transferred the full panoply of Section 106 rights to Righthaven for a brief instant. That is wrong. Stephens at all times retained the rights to exploit the McMurdo Article *despite any assignment*. SAA § 7.2. And even if the Court were to indulge the fiction that Righthaven had Section 106 rights for some immeasurably small time period, the analysis would not change. By immediately

transferring back to Stephens the exclusive rights to exploit the McMurdo Article, Righthaven's claimed ownership interest would have been divested.  *See* 17 U.S.C. § 101 ("transfer of copyright ownership" means "an assignment, mortgage, *exclusive license*, or any other conveyance . . . of a copyright.") (emphasis added).  Accordingly, Righthaven never had the necessary statutory authority to sue over the article.  *See* 17 U.S.C. § 501(b).[1]  Nevertheless, Righthaven asserted ownership of each of the divisible Section 106 rights in the McMurdo Article, and claimed ongoing irreparable harm arising from those rights.  *See* Compl. at ¶¶ 25-35.

Righthaven also claims that Stephens' reversion rights in the McMurdo Article have "no impact" on the ownership status of the article. Opp. at 11.  Not so.  The reversion shows that any purported transfer from Stephens to Righthaven is illusory.  Indeed, the assignment agreement itself specifically references the reversion and the point of Righthaven's business model is to sue over copyrights owned by third parties and then abandon those copyrights when the lawsuits end.  Righthaven's Operating Agreement ("RHOA") could not be clearer on this point: Righthaven seeks "limited, revocable assignment[s]" from copyright owners so that it can file lawsuits, but the copyright owners will "ultimately enjoy the copyright registration upon revocation of the assignment."  RHOA §§ 3.2(c)-(d) (Docket No. 51 at Ex. B).  Righthaven's assertion that there is "nothing in the record to suggest" that Stephens will exercise its reversion rights ignores its own charter.  *See* Opp. at 11.

Stephens retains other accoutrements of ownership despite the alleged assignment to Righthaven.  Stephens can use the "assigned" copyrights as collateral when securing funding. SAA § 9.3.  And it can "sell" or "assign" the allegedly "assigned" articles to third parties so long as it receives Righthaven's prior agreement.  *Id*.  Righthaven does not try to explain how these

---

[1]  If Righthaven's ownership-for-an-instant argument were correct, the *Silvers* prohibition on assigning a naked cause of action for copyright infringement would be meaningless.  The assignor could transfer all Section 106 rights along with the right to sue for accrued causes of action, and then have the assignee immediately transfer back the Section 106 rights to the assignor.  The Ninth Circuit did not create a rule that could be circumvented so easily.

provisions can coexist with an interpretation of the SAA under which Righthaven is vested with genuine ownership rights upon the execution of an assignment agreement.

Given that copyright assignments from Stephens to Righthaven take place under the auspices of the SAA, it is surprising that Righthaven would point to cases where courts, including this one, analyzed Righthaven's standing to sue without the benefit of the SAA. *See Righthaven LLC v. Vote For The Worst, LLC, et al.*, Case No. 2:10-cv-01045-KJD-GWF (D. Nev. Mar. 30, 2011), Docket No. 28 at 3 (finding it "plausible to infer" that Righthaven had standing based on the assignment alone, but without considering or being presented with the SAA);[2] *Righthaven LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-00484-GMN-LRL, 2010 WL 4386499, at *2 n.2 (D. Nev. Oct. 28, 2010) (finding a "plausible inference" of jurisdiction based on the assignment agreement alone, but noting that "regardless of the assignment's assertions, if only a right to sue was transferred; Plaintiff may lack standing"); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No. 2:10-cv-00636-RLH-RJJ, 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010) (without the benefit of the SAA, which Righthaven did not present, this Court concluded that "the assignment in question (which Plaintiff has attached to its opposition) clearly assigns both the exclusive copyright ownership, together with accrued causes of action, i.e., infringements past, present and future.").[3] Those rulings have no applicability

---

[2] Righthaven's opposition brief in *Vote For The Worst*, supported by cherry-picked evidence (but not the SAA), argued that the assignment agreement's "unambiguous language is not subject to alternative interpretation." Case No. 2:10-cv-01045-KJD-GWF, Docket No. 28 at 10. When the SAA finally came to light, however, the defendant filed a renewed motion to dismiss for lack of subject-matter jurisdiction. *See id.* at Docket No. 33. That motion is under submission.

[3] Righthaven went so far as to file a motion for sanctions in the *Malik Law Firm* case because the defendant in that action filed a motion to dismiss for lack of subject-matter jurisdiction. *See* Case No. 10-cv-00636 at Docket No. 13. Righthaven did not disclose that existence of the SAA in its sanctions motion despite its obvious materiality, and asserted instead that "there is no division of copyright ownership as was the case in *Silvers*; Righthaven is the owner of both the exclusive rights in and to the Work and the owner of all accrued causes of action." *Id.* at 12:24-26. The SAA reveals that this representation was incorrect.

DEFENDANT-COUNTERCLAIMANT THOMAS A.  -5-
DIBIASE'S REPLY ISO MOTION TO DISMISS

here and their provenance raises questions about Righthaven's treatment of the standing issue in prior court submissions.[4]

Finally, based on the alleged intent of the parties, Righthaven urges the Court to "construe the contracts in such a way that they convey to Righthaven all rights that are necessary to have standing to maintain this action." Opp. at 13. That would be improper. The intent of the parties is for Righthaven to sue for copyright infringement with Stephens' retaining full ownership rights in the "assigned articles." *Silvers* does not permit such a construction no matter how fervently the parties want that result.[5]

* * *

The assignment agreement for the McMurdo Article did not transfer any rights under Section 106 of the Copyright Act to Righthaven. Accordingly, Righthaven did not own the article when it purported to register the work with the Copyright Office in July 2010 or when it filed this lawsuit a month later.

**B.     The SAA's Purported Amendment Does Not Cure The Jurisdictional Defects In Righthaven's Case.**

Faced for the first time with standing arguments based on the SAA, Righthaven scrambled to amend the agreement to paper over the jurisdictional defects in its case. The purported amendment, however, does not help Righthaven. First, jurisdiction is measured at the

---

[4]   Righthaven's failure to disclose the SAA in prior court submissions concerning the standing question makes ironic its claim that it would be "inequitable" for Mr. DiBiase to be allowed to challenge the "validity" of the alleged transfer agreement. Opp. at 9 n.2. Of course, Mr. DiBiase does not challenge contract validity as a general matter. Instead, he asks the Court to interpret the legal significance of the agreement. If *Silvers* is to be enforced, district courts plainly have that power. The cases Righthaven cites stand for the unremarkable proposition that defendants in some circumstances cannot invoke technical defects in assignment agreements as a defense. Mr. DiBiase's argument does not fit into that category.

[5]   Under Nevada law, "where a contract consists of several agreements, one of which is illegal, the illegal portion can be severed if it does not destroy the symmetry of the contract." *Vincent v. Santa Cruz,* 647 P. 2d 379 (Nev. 1982). However, Righthaven does not seek to have the illegal portions of the SAA severed; it seeks to have the Court rewrite a failed attempt to get around *Silvers*.

DEFENDANT-COUNTERCLAIMANT THOMAS A.           -6-
DIBIASE'S REPLY ISO MOTION TO DISMISS

time of the filing of a complaint and must exist throughout the case; a plaintiff may not manufacture jurisdiction retroactively by attempting to alter the facts after filing a lawsuit. Second, the purported amendments to the SAA do not change the underlying standing analysis. Righthaven does not own sufficient rights in the McMurdo Article to file a copyright-infringement lawsuit against Mr. DiBiase even after the amendment.

Righthaven's standing to bring this lawsuit depends on the facts as they existed when it filed this action. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992); Moore's Federal Practice § 101.32 (3d ed.) ("Standing is determined as of the time the suit is filed."). "The plaintiff must establish by a preponderance of the evidence that he had standing when the complaint was filed." *Doran v. Del Taco, Inc.*, No. SACV04046CJC(ANX), 2006 WL 2037942, *7 (C.D. Cal. July 5, 2006). Righthaven did not have standing when it filed this case in August 2010 because it did not own any Section 106 rights in the McMurdo Article at that time. The Court, therefore, should not consider Righthaven's last-second amendment when deciding the standing question. *See Carroll v. Nakatani*, 188 F. Supp. 2d 1219, 1224 (D. Haw. 2001), *aff'd*, 342 F.3d 934 (9th Cir. 2003) (refusing, for purposes of a standing analysis, to consider facts that occurred after case was filed); *Gaia Technologies v. Reconversion Tech.*, 93 F. 3d 774, 779-80 (Fed. Cir. 1996) (plaintiff lacked standing to file suit where it did not own the intellectual property at issue before filing suit; alleged *nunc pro tunc* assignment signed after the complaint was filed was ineffective to confer standing).[6]

---

[6] The non-binding cases cited by Righthaven do not compel a different result. Most involve oral assignments that were later ratified by a written agreement. *See Billy-Bob Teeth, Inc v. Novelty, Inc.*, 329 F.3d 586 (7th Cir. 2003); *Imperial Residential Design, Inc. v. The Palms Dev. Group, Inc.*, 70 F.3d 96, 99 (11th Cir. 1995); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1532 (11th Cir. 1994). Others concern written assignments that were silent about whether the assignee could sue based on accrued causes of action. *See Intimo, Inc. v. Briefly Stated, Inc.*, 948 F. Supp. 315 (S.D.N.Y. 1996); *Infodek, Inc. v. Meredith-Webb Printing Co., Inc.*, 830 F. Supp. 614 (N.D. Ga. 1993). These cases do not address the present situation where Righthaven entered into an agreement that plainly did not give it any Section 106 rights and then has attempted to fix that overarching defect by amendment.

Considering the SAA's alleged amendment at this late stage would not only conflict with established law, but prejudice Mr. DiBiase. This lawsuit concerns historical facts that took place as of August 9, 2010, and that is the case that Mr. DiBiase has been litigating for months. Some new claim that Righthaven did not own the McMurdo Article at the outset, but did acquire ownership rights nine months later,[7] would raise a host of new defenses and increase the significance of various discovery topics (*e.g.*, the drafting history of and communications concerning the purported amendment to the SAA). But it is too late to change the focus of this case. The deadline to file amended pleadings has passed, *see* Scheduling Order, Docket No. 36 at 3 (deadline to amend pleadings was March 10, 2011), and the fact-discovery period ends on August 12, 2011. Scheduling Order, Docket No. 52 at 2. The more equitable approach is to dismiss Righthaven's complaint and enter judgment in Mr. DiBiase's favor. *See Doran*, 2006 WL 2037942, at *10 (entering judgment for defendant in an ADA case where there was no credible evidence the plaintiff visited the defendant's business prior to filing his complaint). If Righthaven then wishes to file a new case against Mr. DiBiase based on alleged ownership of the McMurdo Article stemming from the May 9, 2011 amendment to the SAA, it would be free to do so (subject to Rule 11 and the doctrine of res judicata).[8]

Even if this Court were to consider the May 9, 2011 amendment to the SAA, however, dismissal is still appropriate. Section 7.2 of the SAA originally made clear that Stephens retains the exclusive right to exploit the "assigned" articles and that Righthaven did not have any of those rights. SAA § 7.2. Recognizing that this structure is fatal to any claim that Righthaven has standing to bring copyright infringement actions, the parties amended the SAA so that

---

[7] Righthaven has not asserted that Stephens executed a second assignment of the McMurdo Article pursuant to the amended SAA. Nevertheless, it appears to argue that the SAA's new language retroactively controls the July 19, 2010 assignment.

[8] Righthaven argues that it "promotes judicial economy and reduces litigation costs" to consider the amended SAA. That is not the case. If this action is dismissed now, the case will be revived only if Righthaven elects to re-file. If it does not, judicial economy and litigation costs will be *saved* by dismissal. If Righthaven re-files, the Court and the parties will benefit from litigating the effect of the amendment to the SAA in a case that raises the issue from the outset, instead of one where the issue was interjected at the eleventh hour.

Righthaven purportedly grants to Stephens a *non-exclusive* license to exploit the articles in exchange for *one dollar*. 5/9/2011 Amendment to SAA § 7.2 (emphasis added) (Hinueber Decl., Docket No. 56 at Ex. 3). But the license is non-exclusive in name only. If Righthaven wishes to exploit the articles that it allegedly owns (other than by filing lawsuits and splitting the proceeds with Stephens), it must give Stephens 30-days' notice. *Id*. Failure to provide that notice would be a material breach of the agreement, cause Stephens irreparable injury, and give Stephens the right to obtain unopposed injunctive relief. *Id*. This notice period is critical because if Righthaven ever provides notice, Stephens has the right to purchase the article back for the nominal sum of *ten dollars* well before Righthaven engages in any exploitation of the assigned articles. 5/9/2011 Amendment to SAA § 8.

After the alleged amendment, Righthaven has the right to file lawsuits over certain Stephens' articles and has no right to otherwise exploit them unless two improbable events occur: (1) Righthaven gives notice of its intent to exploit the articles (which it has no reason to do given its business purpose and the subject matter of the SAA); and (2) Stephens decides not to purchase the article back for ten dollars upon receiving such notice (which would be economically irrational). Such a hypothetical ownership interest in articles "assigned" under the amended SAA is insufficient to vest Righthaven with standing under the Copyright Act. *See, e.g., Nafal v. Carter*, 540 F. Supp. 2d 1128 (C.D. Cal. 2007), *aff'd*, 388 Fed. Appx. 721 (9th Cir. 2010). Indeed, Stephens and Righthaven did not change other aspects of the SAA that make clear that Stephens is the true owner of the "assigned" copyrights. *See* SAA § 3.3 (Stephens has veto power over Righthaven's lawsuits); SAA § 8 (Stephens may take back the allegedly assigned articles at any time and for any reason); SAA § 9.3 (Stephens may use the allegedly assigned articles as collateral and may assign them to third parties with Righthaven's approval). The Court should pay no heed to the artificial labels that Stephens and Righthaven have attached, and should instead consider the practical impact of their arrangement: Stephens is a newspaper publisher that retains the right to use "assigned" articles as if no assignment has taken place, and Righthaven's only interest in the articles is to file lawsuits.

1      * * *

2      The amendment to the SAA should not be considered because the Court measures jurisdiction at the time Righthaven filed its complaint. Regardless, even if the Court were inclined to consider the effects of the amendment, it would find that the amendment serves no legitimate business purpose and was concocted to try to avoid the *Silvers* rule. Indeed, nothing of substance has changed after the amendment. Stephens still owns all of the exclusive rights to exploit the McMurdo Article, and Righthaven has nothing other than a claimed right to sue for copyright infringement. Righthaven therefore lacks standing under the old SAA or the new one, and its case should be dismissed.

### C.   The Champertous Assignment Is Void.

The purported assignment of the copyright in the McMurdo Article is void because it was made pursuant to a champertous arrangement. Righthaven does not dispute that a champerty finding would void the purported assignment of the McMurdo Article, or that the purpose of the champerty doctrine is to avoid intermeddlers undertaking suits that others would not file. Further, Righthaven does not deny that it has prosecuted this action at its own expense in exchange for part of the proceeds of a favorable decision. The only question before the Court, therefore, is whether Righthaven has a genuine interest in this litigation. The timeline demonstrates that it has never has possessed such an interest:

**January 18, 2010**: Stephens and Righthaven enter into the SAA. Righthaven agrees to search for certain copyrighted works apparently owned by Stephens and to file lawsuits over them. Righthaven undertakes responsibility for litigation costs, and agrees to split litigation proceeds with Stephens 50/50. The parties agree on the form that copyright assignments will take, and that "despite any such Copyright Assignment," Stephens "shall retain" the exclusive right to exploit allegedly assigned articles. Righthaven, for its part, has no exploitation rights. In addition, Stephens enjoys "a right of complete reversion" in the allegedly assigned articles.

**June 11, 2010**: Stephens publishes the McMurdo Article.

**June 14, 2010**: Mr. DiBiase posts the blog post at issue.

**July 9, 2010**: Righthaven writes a letter addressed to Stephens stating that it intends to pursue an infringement action against Mr. DiBiase unless Stephens objects within five days pursuant to Section 3.3 of the SAA. *See* Volkmer Reply Decl., Ex. A.[9]

**July 19, 2010**: Stephens signs the alleged assignment agreement for the copyright in the McMurdo Article, subject to the provisions in the SAA.

**July 27, 2010**: Righthaven obtains a copyright registration for the McMurdo Article based on an alleged transfer "by written agreement" from Stephens.

**August 9, 2010**: Righthaven files this suit against Mr. DiBiase.

**May 9, 2011**: Righthaven and Stephens sign a purported amendment to the SAA.

Righthaven's champertous plan was hatched by January 18, 2010. It was implemented with respect to the McMurdo Article by Righthaven's July 9, 2010 letter offering a champertous arrangement. Not even Righthaven contends it had a legitimate interest in this action at that time. And when Righthaven filed this case on August 9, 2010, it still did not have any lawful interest in a copyright claim that Stephens might have against Mr. DiBiase based on the McMurdo Article. *See* SAA § 7.2. Instead, Righthaven was an interloper seeking to prosecute the case of another in exchange for a cut of the proceeds. For the reasons stated above, the May 9, 2011 amendment to the SAA does not change the standing analysis. But even if Stephens had granted Righthaven an unconditional assignment on that date, such an assignment would not undo the champerty that Righthaven already committed. For the doctrine to serve its deterrent purpose, liability must be measured at the time the champertous agreement is entered into. Otherwise, a party could engage in champerty with impunity by obtaining an assignment from

---

[9]   Righthaven produced this letter as part of a "Third Supplemental Initial Disclosure" on May 17, 2011. While Righthaven has not authenticated it, the letter fits within the structure dictated by the SAA. Righthaven has not produced this, or any other document, in response to Mr. DiBiase's discovery requests (such as Request for Production 74, seeking communications with Stephens Media). *See* DiBiase's Motion to Compel (Docket 53) at 31. We note that the second page of the letter has a different date than the first page (May 17, 2011). Righthaven has offered no explanation for this discrepancy.

the true owner of the claim in the event that a champerty defense is raised.  That would invite mischief and substantially weaken the doctrine.

To try to stave off a champerty finding, Righthaven claims that it harbored a "reasonable belief" that it was an interested party in this litigation.  Opp. at 18.  Even if there were evidence in the record suggesting that Righthaven subjectively believed that it had a legitimate interest in this action, such a belief could not be objectively reasonable.  The original SAA and the amended version are clear and unequivocal:  Stephens, not Righthaven, maintains exclusive rights to exploit the McMurdo Article.  It would be manifestly unreasonable for Righthaven to enter into these agreements and simultaneously conclude that it owns a real interest in the McMurdo Article.

Indeed, the parties' own behavior illustrates that Righthaven is not the true owner: Stephens continues to use the McMurdo Article as if no assignment had ever taken place, *see* http://www.lvrj.com/news/retired-teacher-gets-death-penalty-for-wife-s-murder-96191524.html?mobile=y (McMurdo Article still available on the *Las Vegas Review-Journal* website with the notation "Jun. 11, 2010 Copyright © Las Vegas Review-Journal"), while Righthaven's only use of the article has been to file this lawsuit.  Moreover, Righthaven's Operating Agreement states that it only intended to obtain "a limited, revocable assignment . . . in order to enable [it] to recover damages" with the understanding that Stephens "would ultimately enjoy the copyright registration upon revocation of the assignment."  RHOA §§ 3.2(c)-(d) (Docket No. 51 at Ex. B).  These undisputed facts doom any claim that Righthaven harbored a reasonable belief that it held a legitimate interest in this suit.

Instead of joining the merits, Righthaven takes issue with the procedure, claiming that the requirements of Rule 56 should control.  DiBiase's motion, however, establishes the lack of any genuine issues of material fact concerning Righthaven's champertous behavior.  Righthaven had an opportunity to present evidence in opposition, and in fact, submitted declarations from Righthaven and Stephens executives.  Those are not sufficient, however, to create a genuine issue of material fact concerning Righthaven's champerty.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to

particular parts of materials in the record."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ("The mere existence of some alleged factual dispute" not enough to forestall summary judgment).[10] And if there is any other evidence that might bear on the champerty question, it is evidence exclusively within Righthaven's possession that Righthaven decided not to present (and has refused to turn over in discovery). *See Precision Airmotive Corp. v. Rivera*, 288 F. Supp. 2d 1151, 1154 (W.D. Wash. 2003) ("A continuance is not justified when all the information and knowledge is already in the [non-movant's] possession.").[11] On this record, Righthaven has been extended the protections that Rule 56 accords and cannot be heard to complain that a different process would change the result. *Cf.* Fed. R. Civ. P. 12(d) (the district court may convert a Rule 12(b) or Rule 12(c) motion into a motion for summary judgment if matters outside of the pleadings are presented).

## III.   CONCLUSION

For the foregoing reasons, Mr. DiBiase respectfully requests that the Court dismiss Righthaven's Complaint with prejudice for lack of subject-matter jurisdiction.

Dated: June 3, 2011                    Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Bart E. Volkmer
Colleen Bal (*pro hac vice*)
Bart E. Volkmer (*pro hac vice*)
650 Page Mill Road
Palo Alto, California 94304

---

[10] The two declarations show that both Stephens and Righthaven intended to find a way around the *Silvers* rule under which Stephens could retain unfettered ownership rights in the articles, yet Righthaven could file lawsuits over them. *See* Hinueber Decl. at ¶ 9 (the parties' intent was "to acknowledge Stephens Media's ability to continue to use the assigned content as licensee in the same general manner it had done prior to entering in the SAA, such as the archiving of prior published literary works on the LVRJ Website").

[11] Righthaven has refused to provide discovery concerning champerty. Accordingly, DiBiase has moved to compel the production of documents related to this topic. *See* Docket No. 53.

|   |   |
|---|---|
| 1 | ELECTRONIC FRONTIER FOUNDATION |
| 2 | By: /s/ Kurt Opsahl |
|   | Kurt Opsahl (*pro hac vice*) |
| 3 | Corynne McSherry (*pro hac vice*) |
|   | 454 Shotwell Street |
| 4 | San Francisco, California 94110 |

ELECTRONIC FRONTIER FOUNDATION

By: /s/ Kurt Opsahl
Kurt Opsahl (*pro hac vice*)
Corynne McSherry (*pro hac vice*)
454 Shotwell Street
San Francisco, California 94110

CHAD A. BOWERS, LTD.

By: /s/ Chad Bowers
Chad A. Bowers
NV State Bar Number 7283
3202 W. Charleston Blvd.
Las Vegas, Nevada 89102

*Attorneys for Thomas A. DiBiase*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3th day of June, 2011 I caused a copy of Defendant-Counterclaimant Thomas A. DiBiase's Reply Brief in Support of His Motion to Dismiss for Lack of Subject –Matter Jurisdiction to be served using the Court's CM/ECF system.

/s/ Deborah Grubbs