SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
(702) 304-0432 – telephone
(702) 922-3851 – facsimile

*Attorney for Righthaven LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | Case No.: 2:10-cv-01343-RLH-PAL |
| Plaintiff, | **RIGHTHAVEN LLC'S RESPONSE TO DEFENDANT-COUNTERCLAIMANT THOMAS A. DIBIASE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |
| v. | |
| THOMAS A. DIBIASE, an individual, | |
| Defendant. | |
| AND RELATED COUNTERCLAIM | |

Plaintiff and Counter-defendant Righthaven LLC ("Righthaven") hereby responds to Defendant-Counterclaimant Thomas A. DiBiase's ("DiBiase") Motion to Compel Production of Documents (the "Motion", Doc. 53.)

Righthaven's submission is based on the below Memorandum of Points and Authorities, the declaration of Shawn A. Mangano, Esq. (the "Mangano Decl."), the pleadings and papers on file in this action, any oral argument allowed by this Court, and on any other matter of which this Court takes notice.

## I.    INTRODUCTION

When distilled to their core, the discovery requests at issue before the Court illustrate the great lengths with which DiBiase seeks to use the authority granted under Federal Rule of Civil Procedure 34 ("Rule 34") to embark on an exploration of Righthaven's business model however tangentially related to the claims and defenses at issue in this action.  For instance, DiBiase asks the Court to compel his request for all documents concerning Righthaven's settlement negotiations and formal settlement agreements in all cases it has ever filed.  (Doc. # 53 at 9:14-15.)  Likewise, despite Righthaven asserting a claim for statutory damages in this case, DiBiase seeks to compel the production of all tax returns filed by the company with any governmental body under the guise that such information is needed to ascertain whether the statutory damages claim is reasonably related to actual damages.  (*Id.* at 10:11-25.)

DiBiase's desire to probe the inner workings of Righthaven expands beyond requests specifically propounded to the company, but he claims Rule 34 extends to Stephens Media LLC ("Stephens Media"), who is not a party to this case.  (*Id.* at 16-18.)  While DiBiase could unquestionably attempt to discover materials from Stephens Media pursuant to a subpoena issued pursuant to Federal Rule of Civil Procedure 45 ("Rule 45"), he has instead moved to compel by maintaining that Righthaven scope of discoverable materials extends to a non-party.  (*Id.*)  Had DiBiase simply issued a subpoena under Rule 45, he would likely already be in possession of the materials he seeks this Court to compel Righthaven to produce from a non-party to this case.

DiBiase's zeal for information is further illustrated through the sheer number of requests propounded in this action, which total in excess of 100.  (Mangano Decl. ¶ 3.)  In conducting the initial meet and confer on his requests, DiBiase's counsel sought to simply characterize all of Righthaven's objections as being nothing more than impermissible boilerplates.  (*Id.* ¶ 4.)  It was Righthaven's refusal to accept this global proposition that resulted in counsel having to parse through all requests and objections in an effort to narrow their disputes.  (*Id.*)  As half-heartedly acknowledged in the Motion, these meet and confer efforts resulted in a retraction of numerous objections.  (Doc. # 53 at 7:7-12.)  DiBiase's Motion, however, does not acknowledge that these meet and confer efforts also resulted in a significant clarification of the scope of materials

sought, express acknowledgements that materials were not being withheld in view of numerous on lodged objections, and agreements to produce what, if any, responsive materials existed within Righthaven's custody and control.  (Mangano Decl. ¶ 4.)  Righthaven further agreed to supplement is responses in view of the meet and confer process, but DiBiase's counsel maintained that any supplementation was unnecessary and would not limit his client's ability to file a motion to compel.  (*Id.*)  Finally, while DiBiase claims that Righthaven has produced absolutely no documents in response to his requests (Doc. # 53 at 7:14-19), this fact fails to acknowledge that the company has supplemented its initial disclosures four times in this case. (*Id.* ¶ 5.)  These supplemental disclosures even include the assignment of the article at issue, which DiBiase claims has never been produced.  (Doc. # 53 at 7:17-19; Mangano Decl. ¶  5.)

As argued below, Righthaven has endeavored to fully comply with its obligations under Rule 34.  The parties have significantly narrowed the disputes between them through the meet and confer process.  Righthaven has also produced, and will continue to produce if located, materials responsive to the propounded requests as agreed to during the meet and confer process. (Mangano Decl. ¶ 5.)  Righthaven, however, does not believe that Rule 34 empowers DiBiase to explore such matters as the company's tax returns, all settlement negotiations in any case ever filed, all settlement agreements entered into in any case, or to produce materials under the custody and control of Stephens Media, which is not a party to this case.  Righthaven believes that upon through examination of the issues before it, the Court will fully appreciate why the company has properly objected to and justifiably resisted DiBiase's demand to produce materials to which he is not entitled under Rule 34.  Accordingly, Righthaven respectfully requests the Court deny the Motion or, alternatively, significantly narrow the requested scope of production sought in his Motion.

## II.   STATEMENT OF FACTS

Righthaven is the owner of a copyright registration for the literary piece "Man who killed wife sought ultimate sentence" (the "Work"), which originally appeared in the Stephens Media owned news media publication the *Las Vegas Review-Journal* on or about June 11, 2010.  (Doc. # 1 at 2-3, Ex. 2.)  After publication, Stephens Media, the original owner of the Work, assigned

all rights, title and interest in and to the Work, including the right to seek redress for all past, present and future infringements (the "Assignment").  On July 27, 2010, the United States Copyright Office (the "USCO") granted Righthaven registration for the Work.  (Doc. # 1 at 3, Ex. 4.)  Righthaven subsequently filed this copyright infringement action on August 9, 2010. (Doc. # 1.)

Righthaven contends that DiBiase is the owner of the Internet domain, and maintains control of the content posted at same, found at <nobodycases.com> (the "Website").  (Doc. # 1 at 2, Ex. 1.)  Righthaven further asserts that on or about June 11, 2010, DiBiase displayed an unauthorized 100% reproduction of the Work on the Website.  (Doc. # 1 at 2, Ex. 3.) Based on the alleged infringement of the Work, Righthaven seeks, among other things, entry of a permanent injunction and an award of statutory damages against DiBiase.  (*Id.* at 5-6.) Righthaven has demanded a jury trial in this case.  (*Id.* at 6.)

On October 29, 2010, DiBiase answered the Complaint, asserted numerous affirmative defenses, such as "Barratry And Champerty" (Doc. # 19 at 5), and alleged a counterclaim.  (*Id.*) Righthaven sought to dismiss DiBiase's counterclaim on the grounds that it was duplicative given that it exclusively sought a declaratory judgment of non-infringement.  (Doc. # 27.) Righthaven concurrently filed a reply to DiBiase's counterclaim.  (Doc. # 28.)  The Court denied Righthaven's motion to dismiss on April 15, 2011. (Doc. # 45.)

DiBiase filed a motion to dismiss this action, which requests a finding that Righthaven lacks standing to maintain this action, on May 4, 2011.  (Doc. # 47.)   DiBiase filed the instant Motion seeking to compel the production of documents on May 18, 2011.  (Doc. # 53.)  As discussed below, Righthaven requests the Court to sustain the lodged objections or, at least, narrowly tailor the scope of the requests to require the production of materials that are reasonably calculated to lead to the discovery of admissible information.  Righthaven further asks the Court to find that it is not obligated to seek documents held in the custody of Stephens Media, which not a party to this action.

## III.    ARGUMENT

### A.  DiBaise's Characterization That Requested Documents Are Discoverable Under The Auspices of Fair Use is Incorrect.

DiBiase buttresses his request for documents concerning Righthaven's commercial exploitation and details about its litigation-based enforcement efforts under the guise of the fourth fair use analysis factor, which concerns market harm.  (Doc. # 53 at 9.)  DiBiase's request to compel such information is much ado about nothing.

To begin with, and as made clear during meet and confer efforts, Righthaven has not engaged in the commercial exploitation of news articles (Request No. 30).  Commensurately, Righthaven has not derived revenue, beyond license fees clearly set forth in materials already produced, from news articles (Request No. 53).  Accordingly, Request Nos. 30 and 53, even if relevant, will result in absolutely no materials being produced to DiBiase beyond that already disclosed by Righthaven.

More specifically, Righthaven has already produced all license agreements and licensing arrangements concerning the Work, as sought under Request Nos. 31 and 32, by virtue of its production of the Strategic Alliance Agreement (the "SAA") together with its associated amendment.  Compelling these requests would not result in Righthaven disclosing any additional material beyond that which it has already produced unless its production obligation is expanded to encompass collateral matters not at issue in this action.

With regard to DiBiase's attempt to invade settlement agreements reached in other action Righthaven maintains that such information is completely outside the scope of discoverable information in view of the propounded requests.  Simply put, why would DiBiase be entitled to production of all settlement agreements, the terms of which are confidential, as a means of establishing fair use?  Even if such information were deemed to be tangentially related to fair use, it certainly does not overcome the asserted objections based on over breadth and undue burden asserted by Righthaven in view production requirements that would include settlement negotiations and agreements reached in approximately 200 actions to date.

With regard to business plans and business models, as set forth in Request No. 105, Righthaven has produced its operating agreement, the SAA and the amendment to the SAA. There is simply nothing more that materially remains to be produced with regard to Request No. 105. Righthaven agrees, consistent with its representations during meet and confer, to produce any responsive materials it discovers. That representation having been made, there is no uncovered treasure trove of materials that Righthaven is refusing to produce in this action.

Finally, DiBiase has propounded a request for production that relates to a paraphrase of the alleged content of an interview of Righthaven Chief Executive Officer Steven A. Gibson. (Doc. # 53 at 10:3-6.) In his request, DiBiase has asked for the basis underlying second-hand communications given to a reporter and replicated in a news article. As such, DiBiase's request presumes that the content of said article is accurate. Moreover, the request further presumes that there is material responsive to this action that was relied upon in providing the answer to a media question that was later reproduced in print or online form. These observations aside, however, the fact remains that the substance of the materials requested do not have anything to do with a fair use analysis. DiBiase may assert otherwise in a conclusory and authoritative manner, but that simply does not make it so.

In sum, it should be readily apparent to the Court that DiBiase's arguments are not directed toward the universe of discoverable materials, but rather a justification as to why his requests for production are relevant. The efforts made to demonstrate relevance speak loudly about his obvious concerns that such requests are irrelevant. Righthaven has either demonstrated that such requests are irrelevant or his conceded that it has no responsive materials to produce, which is wholly consistent with its representations during meet and confer with DiBiase's counsel. Accordingly, Righthaven respectfully asks the Court deny DiBiase's request to compel materials in response to the foregoing identified requests for production. Alternatively, to the extent the Court determines that Righthaven is required to produce materials in response to certain identified requests, the company asks for an opportunity to do so to the extent its discovery obligations encompass the disclosure of materials it has not already provided to DiBiase's counsel in this case.

**B.  DiBiase's Justification for Seeking Damage Documents in a Statutory Damage Case is Improper.**

DiBiase next asks the Court to compel the production of certain documents related to actual damages suffered by either Righthaven of non-party Stephens Media. (Doc. # 53 at 10, referring to Request Nos. 46-47, and 51.)  In doing so, DiBiase expressly acknowledges that Righthaven has exclusively sought a statutory damage award in this case.  (*Id.* at 10:11-13.) DiBiase asserts that materials concerning actual damages must be compelled because they are relevant on the issue of ensuring that any statutory damages award is reasonably related to the actual damages sustained.

Substantively, Righthaven can quickly dispense with two of DiBiase's requests.  First, Request No. 46 asks for the production of all documents supporting any claim that Righthaven has suffered actual damages.  Righthaven, to the best of its knowledge, has no documents in its possession or control that demonstrate it suffered any appreciable actual damages given the accrued infringement claim assigned to it by Stephens Media. (Mangano Decl. ¶ 6.)  With regard to Request No. 51, which asks for all tax returns filed by Righthaven, this request is completely overbroad and requires, at best, DiBiase to examine the correlating tax characterizations of the information provided in the tax returns to have any plausible discoverable import.  Stated differently, Righthaven's tax returns demonstrate little, if anything, concerning the viability of damage claims asserted in pending and unresolved litigation with DiBiase.  If Righthaven claimed income of some astronomical amount, would that validate the company's statutory damage claims in this case?  Likely not.  Accordingly, the Court should proceed with its examination of the issues before it with the understanding that Righthaven is not in possession of materials concerning its actual damages beyond those materials already disclosed to DiBiase.  Moreover, DiBiase's attempts to secure production of Righthaven's tax returns under the guise of the propounded requests should certainly be deemed as overly broad and marginally relevant under the facts presented.

Granted, DiBiase has cited case law that arguably relates to his entitlement of damage discovery under the content of statutory damages reasonably relating to actual damages.  (Doc. #

53 at 10:13-19.)  Unfortunately, DiBiase's counsel failed to fully convey the alleged importance of the requested information as it relates to this issue. This observation aside, Righthaven maintains that is has no document beyond what has been produced which are responsive to Request Nos. 46-47, and 51.  As stated above, there is simply no basis to require Righthaven to produce all tax returns filed with any governmental body.  At best, given the assigned nature of the infringement claim at issue, evidence related to any purported actual damages suffered by Stephens Media may be discoverable.

This tacit acknowledgement aside, there is absolutely no obligation for Righthaven to permit discovery in a statutory damage claim if damages limited to the range of $5,000 to $250. *See Robert Stigwood Group, Ltd. v. O'Reilly,* 530 F.2d 1096, 1102 (2d Cir. 1976).  Within the limits determined by the foregoing authority, the Court, in its discretion, may award damages in view of what it deems appropriate.  *See F.W. Woolworth Co. v. Contemporary Arts, Inc.,* 344 U.S. 228, 231-32 (1952).  Moreover, DiBiase's contention runs counter to the well-established principal that a plaintiff in a copyright infringement action is not required to establish actual damages in a case where recovery is predicated on statutory damage award.  *See L.A. News Serv. v. Reuters Television Int'l, Ltd.,* 149 F.3d 987, 996 (9th Cir. 1998); *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984).  Furthermore, the case law cited by DiBiase does not hold that discovery as to actual damages is required in a statutory damage case, but rather that such information is part of the overall inquiry considered in determining whether a resulting statutory damage award is consistent with constitutional mandates.  *See Sony BMG Music Entm't v. Tenenbaum,* 721 F. Supp. 2d 85, 102-118 (D. Mass. July 9, 2010).  This is hardly sufficient to compel the discovery of the requested information in this case.  Rather, in view of this record, Righthaven should be allowed to elect whether or not to produce such marginally probative information or have appropriate inferences drawn against the company under scrutiny by way of a challenge to the propriety of any resulting statutory damage award in this case.  Simply stated, the authority cited by DiBiase does not result in his entitlement to the requested information as a matter of course.  Accordingly, should the Court conclude that some of DiBiase's requests appropriately relate to actual damages in view of Righthaven's statutory damages claim, the

8

company should be given the alternative of electing to produce the requested information or forego its ability to do so and risk a reduction of any statutory damage award entered in its favor.

### C. DiBiase's Assertion That Requested Documents Relate to His Affirmative Defenses of Implied License, Waiver, Estoppel and Failure to Mitigate Lack Merit.

DiBiase's next argument is the nebulous assertion that somehow documents related to Righthaven's intellectual property enforcement efforts related to the Work (Request No. 39), the functionality of any technology measures used to identify infringing content (Request No. 45), as well as all communications between Righthaven and any third party concerning alleged copyright infringement claims (Request No. 71), must be produced because they are relevant to his defenses of implied license, waiver, estoppel and failure to mitigate damages.  (Doc. # 53 at 11.)  DiBiase's arguments are completely devoid of merit.

To begin with, DiBiase has made absolutely no showing as to how the requested materials have any tendency in reason to potentially lead to the discovery of admissible evidence as to his defenses of implied license and failure to mitigate damages.  At best, he has argued that such information relates to Righthaven and Stephens Media's ability "to find (or actually found) the blog post at issue in this case long before giving DiBiase notice."  (*Id.* at 11:13-15.)  DiBiase's characterization of relevance appears to relate to defenses sounding in waiver and estoppel.  In this regard, however, notice to DiBiase is completely immaterial to this action as is the case law cited by him in support of seeking the requested materials.  Simply put, this is not a case involving a defendant protected by the notice requirements under the Digital Millennium Copyright Act ("DMCA").  As such, neither Righthaven nor Stephens Media was required to provide DiBiase with notice prior to filing suit.  Moreover, the *Viacom Int'l., Inc. v. YouTube, Inc.* decision cited by DiBiase involves the production of materials concerning a content monitor's compliance with the notice provisions of the DMCA.  Accordingly, DiBiase has failed to articulate how Request Nos. 39, 45, and 71 meet the threshold requirements of relevance to be discoverable under Rule 34.

DiBiase's inadequate relevancy showing aside, he simply cannot overcome the unduly burdensome and over breadth of Request Nos. 39, 45, and 71.  DiBiase is simply not entitled to discovery on other collateral enforcement matters by Righthaven – whether they relate to the Work (Request No. 39) or to such enforcement efforts regardless of the nature of the copyrighted material at issue (Request No. 71).  In this regard, it would simply be unconscionable to permit DiBiase to probe settlement communications with other defendants in cases pending in other jurisdictions over acts of infringement involving copyrighted protected content held of Stephens Media, or some other entity.  This is the quintessential definition of a discovery "fishing expedition."  Likewise, DiBiase has not articulated in any meaningful way the functionality of Righthaven's technology measures are discoverable and not far afield of the issues in this case.  In short, DiBiase posted unauthorized content to his Website.  Righthaven is the registered copyright holder of the content posted by him without authorization.  How Righthaven came to discover that DiBiase was committing copyright infringement is immaterial and certainly the production of all documents related to the functionality of how DiBiase was caught violating the Copyright Act is clearly over broad.  Accordingly, Righthaven asks the Court to sustain its objections to Request Nos. 39, 45, and 71.

**D.  DiBiase's Claims That Requested Documents Relate to His Copyright Misuse Defense And His Claim For Attorney's Fees Are Misplaced.**

DiBiase next maintains that he is entitled to discovery (through Request Nos. 55 and 56) with regard to Righthaven's decision to assert a claim for domain name transfer in this action along with any third party communication concerning this decision.  (Doc. # 53 at 11:23-12:7.)  DiBiase asserts that the requested information is relevant to his copyright misuse and claim for attorney's fees.  (*Id.*)

In support of his argument, DiBiase contends that a decision in this case supports that Righthaven is not entitled to such relief under the Copyright Act.  While this may be true, it has not been decided that Righthaven is precluded from seeking such relief as a form of post-judgment enforcement efforts under Federal Rule of Civil Procedure 68 ("Rule 68").  Moreover, whether or not DiBiase is entitled to the recovery of attorney's fees under the Copyright Act has

absolutely no bearing on Righthaven's motivation to seek such tangential relief in this action. DiBiase will likely seek the recovery of attorney's fees and costs as a prevailing party, should he prevail in this case, under the Copyright Act.  This has nothing to do with Righthaven's decision to seek surrender of DiBiase's Website domain.  Likewise, DiBiase's contention that such materials may bear upon his copyright misuse defense is completely illusory.  Righthaven sought a remedy of domain name surrender, while not an expressly authorized affirmative form of relief under the Copyright Act, no decisional law precludes this relief as a means of enforcing any resulting judgment against DiBiase pursuant to Rule 68.  While DiBiase may have succeeded in striking this remedy from Righthaven's Complaint, he has not fully and finally precluded Righthaven's ability to seek surrender of the Website domain should he be unable to satisfy a judgment entered against him in this action.  Accordingly, DiBiase is not entitled to the discovery sought under Request Nos. 55 and 56 by virtue of his copyright misuse defense and contention he is entitled to attorney's fees in this case.

### E. DiBiase's Barratry And Champerty Allegations Do Not Warrant Production of The Materials Sought.

DiBiase also attempts to use his barratry and champerty allegations as a justification for his efforts to improperly delve into Righthaven's relationships with Stephens Media and other entities or persons.  (Doc. # 53 at 12-15.)  In fact, this topic area encompasses the largest amount of material upon which DiBiase's Motion is predicated.  On proper examination, however, it becomes apparent that DiBiase is merely using these requests as a means to inappropriately seek information concerning Righthaven's operations and relationships with other non-parties to this action.

As DiBiase has done, Righthaven will address each of the alleged requests upon which he claims discovery compliance is required to be compelled:

**Request Nos. 63-65:**  These requests seek "all agreements" between Righthaven and three entities: (1) Stephens Media (Request No. 63); (2) Net Sortie Systems, LLC (Request No. 64); and (3) SI Content Monitor, LLC (Request No. 65).  To begin with, these requests are not limited in time or by subject matter.  For instance, as phrased, Righthaven would be required to

produce all agreements with Stephens Media in response to Request No. 63.  Such a production would arguably include any and all settlement agreements entered into in actions where Stephens Media was named as a third party to the action.  Any "agreements" under this requirement would simply not be relevant to this action.  Nevertheless, DiBiase's insistence that such materials be produced underscores his desire to use this case as a means for exploring areas of inquiry that should be precluded from inquiry.

With regard to Net Sortie Systems, LLC and SI Content Monitor, LLC, Righthaven has produced its operating agreement, its articles of organization, the SAA, and the amendment to the SAA.  While Righthaven maintains that it should not be required to produce materials in response to Request Nos. 64 and 65, it does not believe that any such agreements exist despite this objection.  Righthaven made this point clear during meet and confer. (Mangano Decl. ¶ 6.) Despite Righthaven's counsel's representation that it such materials did not exist, DiBiase has asked for an order compelling the production of these non-existent materials.  Accordingly, Righthaven is at a loss.  It contests the propriety of the propounded requests, but in the end it does not believe, and has not located, materials responsive to Request Nos. 64 and 65.

**Request No. 58:**  DiBiase's request asks for the production of all documents concerning Righthaven's creation.  (Doc. # 53 at 13.)  To begin with, Righthaven has produced its articles of organization, its operating agreement, the SAA, and the amendment to the SAA to DiBiase in this case. (Mangano Decl. ¶ 4.)  The articles of organization and the operating agreement are unquestionably the documents that resulted in Righthaven's "creation."  Accordingly, Righthaven has fully complied with the plain meaning of Request No. 58.

DiBiase, however, apparently interprets Request No. 58 to include production of "drafts of the Operating Agreement, along with founding documents, and communications between Steven Gibson, Righthaven employees, Stephens employees, and representatives of Righthaven and owners of SI Content Monitor and Net Sortie Systems, LLC."  (Doc. # 53 at 13:11-13.) These materials, should they be assumed to exist, are completely irrelevant to this action. Without question, Righthaven's operating agreement is a completely integrated document that represents the complete understanding of the parties.  What, if anything, would a theoretical e-

mail concerning the number of membership units or discussing some other provision of an agreement that was executed by the parties and fully integrated bear upon the issues in this case? Even if materials were to reveal communications that contradicted the ultimately executed operating agreement, how would that be admissible in this action in view of the parole evidence rule?  Even if the parole evidence rule were somehow traversed, as discussed below, Righthaven should still be entitled to designate potentially responsive materials as work product protected or subject to attorney-client privilege.

Quite frankly, DiBiase's request for such information underscores his counsel's witch-hunt to find completely irrelevant and inadmissible information that can be used to promote a negative publicity campaign against Righthaven's copyright enforcement efforts.  This observation aside, Righthaven challenges DiBiase to fully explain to the Court how the requested information is at all relevant to the claims and defenses in this case.

**Request Nos. 66-67:**  These requests are unquestionably irrelevant to this action because they seek the production of "all agreements" between Righthaven and two non-parties to this action – WEHCO Media and MediaNews Group.  (Doc. # 53 at 13:18-19.)  These materials are unquestionably irrelevant to this case because they ask for the production of agreements not at issue from parties that are not involved in this dispute.  While DiBiase avers to such information being relevant to Righthaven's state of mind and pattern of practice, this is mere puffery.  Unless DiBiase can more specifically identify why these materials are relevant to this action, Righthaven reminds the Court of the degree to which he is stretching a variety of legal theories to support a fairly easily met threshold of relevance.  DiBiase's strained efforts in this regard speak loudly to the irrelevance of the production requests he seeks to compel.

**Request No. 68-70:**  These requests seek the production of all agreements between Righthaven and the following: (1) Steven Gibson (Request No. 68); (2) Charles Coons, Esq., former assistant general in-house counsel for Righthaven (Request No. 69); and (3) Joe Chu, Esq., former in-house counsel for Righthaven (Request No. 70).  (Doc. # 53 at 14:1-6.)  Once again, how any such agreements, assuming they exist, are relevant to this action completely escapes Righthaven.  While DiBiase proclaims that such agreements, should they

13

exist, would demonstrate that Righthaven is more akin to outside counsel than that of an independent entity seeking to enforce intellectual property rights, this assertion makes no sense. For example, should Righthaven enter into an employment agreement with in-house counsel, does that fact eviscerate the terms of the SAA, the amendment to the SAA and the assignment entered into by the company in acquiring the right to sue for accrued claims of copyright infringement?  Absolutely not.  If DiBiase contends otherwise, Righthaven once again challenges him to establish the fundamental requirement for discovery – that such information is relevant to this action.

**Request No. 71:**  This request seeks any and all communications between Righthaven and any third party concerning alleged copyright infringement by that party.  (Doc. # 53 at 30.) Once again, Righthaven challenges DiBiase to justify his desire to discover communications between any non-parties to this action, in any jurisdiction, concerning any allegedly infringed copyrighted work, and which was originally published or otherwise disseminated from one of numerous sources not related to this case.  Quite frankly, this is an example of the zeal with which DiBiase seeks to obtain collateral information for the purposes of besmirching Righthaven's copyright enforcement activities.  This request has absolutely nothing to do with the claims and defenses presented in this action.  Righthaven certainly challenges DiBiase to demonstrate otherwise in his reply.

**Request No. 73:**  This request seeks the production of "[a]ll analyses regarding Righthaven's anticipated recovery from its copyright infringement actions."  (Doc. # 53 at 14:13-14.)  Once again, Righthaven challenges the relevance of any responsive material to this request. For instance, if Righthaven were to provide a response that it anticipated recovering $1,000,000 or $5 from copyright infringement actions, how would this impact the claims or defenses in this action?  While it is a rather simply question that relates directly to the relevance of the requested information, it is not such an easy question to answer for DiBiase.  Accordingly, Righthaven maintains that such information is completely irrelevant to this action.   Should DiBiase demonstrate otherwise in his reply, Righthaven is certainly willing to reconsider its position.

**Request No. 74:**  This request seeks the production of "[a]ll documents, including any opinion letters, regarding the legality of Righthaven's business model."  (Doc. # 53 at 14:16-17.) As a threshold matter, even assuming such materials were relevant, which they are not, they are clearly protected by attorney-client privilege and the work product doctrine.  Moreover, this request presupposes that Righthaven obtained documents concerning the legality of its business model after formation, which if is has would certainly be reflected in the numerous filings made that contest the legality of its business model.  In sum, Righthaven is unaware of any responsive material to this request, assuming such material is relevant to this action, and should it locate any responsive material is certainly is should be permitted to appropriately log any privilege or work product protections applicable to same.

**Request No. 74:**  This request seeks all "communications between Righthaven and Stephens Media."  (Doc. # 53 at 31.)  This request is unquestionably over broad and unduly burdensome, even if deemed relevant.  As noted in footnote 9 to the Motion (Doc. # 53 at 14), Righthaven has agreed to produce communications with Stephens Media concerning DiBiase. This proffer, however, is apparently unacceptable to DiBiase.  Rather, DiBiase wishes to apparently use this request as a means to explore any settlement related or other communication in which Stephens Media is a party.  The request is also not limited to time and, as illustrated, not limited whatsoever to any applicable or otherwise discernable subject matter.  Accordingly, Righthaven stands on its objections.  DiBiase can demonstrate how such information is relevant and not unduly burdensome or overly broad in his reply.

**Request Nos. 97-102:**  As noted by DiBiase, these requests seek the production of a subset of communications with a variety of non-parties to this action.  (Doc. # 53 at 15:3-10.) These communications include communications with Stephens Media's general counsel, general counsel for associated entities owned by subsidiaries of the Stephens family, as well as Warren Stephens.  Once again, Righthaven simply cannot comprehend how any such communications, which it does not believe exist, are at all relevant to the claims and defenses in this case.  Quite frankly, Righthaven believes these requests were specifically propounded as a means to harass and interfere with those persons with which is has even a tangential business relationship.  Once

again, DiBiase has not demonstrated even the most marginal basis of relevance for such communications.  This is apparently a reoccurring theme for the requests upon which the Motion is based.   More tellingly, however, his inability to articulate the relevance of the requests upon which the Motion is based speaks volumes as to the merits of his alleged complaints of Righthaven's non-compliance.

In sum, DiBiase has clearly failed to demonstrate that his requests are relevant to the claims and defenses in this action.  DiBiase's reliance on his barratry and champerty allegations does not cure this glaring defect.  Accordingly, Righthaven respectfully requests that DiBiase's Motion be denied on the grounds set forth above.

## F. DiBiase's Reliance on His Counterclaim Does Not Warrant Production of The Documents Sought.

DiBiase further asserts that Request Nos. 85 through 88 and 91 through 94 specifically relate to Righthaven's denials in its reply to his counterclaim.  (Doc. # 53 at 15.)  DiBiase's relied upon requests, however, completely mischaracterize Righthaven's responses in replying to his counterclaim allegations.  (Mangano Decl. ¶ 7.)

Quite simply, DiBiase seeks to rely upon discovery requests that characterize Righthaven's responses to certain counterclaim allegations as mere "denials", which they clearly are not.  (*Id.*)  In replying to DiBiase's counterclaim allegations at issue in Request Nos. 85 though 88 and 91 through 94, Righthaven specifically stated why it was unable to admit or deny the asserted content and that it denied such averments on information and belief or otherwise.  (*Id.*) Thus, this is not a case where an allegation is made that "the light was red" and the responding party simply denied the "light was red."  Rather, DiBiase's counterclaim allegations were much more convoluted and based upon his beliefs, speculations and other non-fact based predicates.  Righthaven objected to the requested discovery on the grounds that the requested material simply paraphrased its responses and improperly characterized them as simple denials of fact, which they clearly were not.

Moreover, DiBiase's claim that he is entitled to materials responsive to his requests that relate to Righthaven's purported "denials" of certain allegations fails to acknowledge the factual

background giving rise to Righthaven's reply.  Righthaven moved to dismiss DiBiase's

counterclaim through its present counsel, who had recently appeared in the case.  (Mangano

Decl. ¶ 7.)  Righthaven's new counsel was unaware of language appearing in a prior stipulation

between DiBiase's counsel and Righthaven's in-house counsel that stated Righthaven would

answer his counterclaim in view of an extension of time granted.  (*Id.*)  Once new counsel

became aware of the language contained in the stipulation after filing a motion to dismiss, which

he believed constituted a responsive pleading, a one-day extension of time was requested.  (*Id.*)

DiBiase's counsel refused to grant this request despite Righthaven's new counsel having been

unaware of the requirement to apparently file a reply to the counterclaim.  (*Id.*)  Given these

circumstances, Righthaven's counsel worked diligently to file both the motion to dismiss and a

reply to the counterclaim despite DiBiase's counsel's refusal to extend a one-day, ministerial

extension of time in view of the circumstances.

       DiBiase subsequently sought to mischaracterize Righthaven's responses to his

counterclaim by inaccurately paraphrasing these responses in the form of discovery requests.

When this point was brought to DiBiase's counsel's attention during meet and confer, his

counsel refused to acknowledge the readily apparent attempts at improperly characterizing and

paraphrasing Righthaven's responses as a means to seek discoverable materials.  (*Id.*)

Obviously, DiBiase feels that Righthaven's view of the circumstances is not justified and an

impasse requiring this Court's intervention has resulted.  Righthaven continues to maintain that

DiBiase improperly paraphrased and characterized the company's responses as mere denials,

which they were not.  Righthaven asks the Court to adopt this construction in ruling upon

DiBiase's entitlement to the materials sought in Request Nos. 85 through 88 and 91 through 94.

If such a construction is adopted, then DiBiase's request to compel production on these requests

must be denied.

### G.  Contrary to DiBiase's Characterization, Righthaven Has Not Asserted Boilerplate Objections And Modified Any Such Objections Through Meet And Confer.

DiBiase contends that Righthaven has asserted boilerplate objections that must be overruled.  (Doc. # 53 at 15-16.)  This is simply not the case.

As noted above, DiBiase attempted to cast all of Righthaven's objections as being "boilerplate" and improper during meet and confer.  (Mangano Decl. ¶ 4.)  The "boilerplate" nature of Righthaven's objections is clearly contrary to the four meet and confer sessions engaged in by the parties.  (*Id.*)  At least Righthaven's counsel was given the impression that these meet and confer sessions resulted in meaningful discussion and the associated narrowing of the materials sought by DiBiase.  (*Id.*)  Righthaven has sought to comply with the refined scope of DiBiase's discovery requests through the production of documents by way of supplemental initial disclosures.  (*Id.* ¶ 5.)

Righthaven's counsel is well aware of the prohibition against lodging boilerplate objections to discovery requests.  In this regard, Righthaven has specifically identified those portions of the propounded requests were objectionable.  The company did not merely lodge a host of objections in a vacuum.  Righthaven had thought it addressed DiBiase's counsel's concern over the alleged to the boilerplate nature of the lodged objections during the four meet and confer sessions held between the parties.  Apparently despite the discussion and discourse engaged in, DiBiase maintains that all lodged objections are simply impermissible, "boilerplate" responses.  This is news to Righthaven.  Righthaven believes that upon proper examination of the objections lodged and in view of the resulting multiple meet and confer efforts engaged in by the parties, the Court will not conclude that all objections made are merely "boilerplate" in nature that should be summarily disregarded in ruling on the Motion.

### H.  Righthaven Should Not be Compelled to Search For Documents Within The Custody And Control of Stephens Media, Which is Not a Party to This Action.

DiBiase next asks the Court to conclude that Righthaven's discovery obligations should extend to Stephens Media, which is not a party to this action.  (Doc. # 53 at 16-18.)  A contrary

conclusion would unquestionably expand Righthaven's obligations beyond those reasonably envisioned under Rule 34.

As a threshold matter, Righthaven is not, contrary to DiBiase's assertion, seeking to shield Stephens Media from producing relevant, discoverable material to this case. (Doc. # 53 at 18:2-6.)  Rather, Righthaven's stance reasonably reflects the fact that DiBiase could readily and permissibly make such discovery requests to Stephens Media pursuant to Rule 45.  In fact, DiBiase has availed himself of Rule 45 by issuing a subpoena to Stephens Media requesting materials and other information related to the author of the Work and the scope of his assignment in creating the Work.  (Mangano Decl. ¶ 8.)  Thus, it is completely disingenuous for DiBiase to claim that Righthaven is somehow seeking to interfere or otherwise shield Stephens Media from producing discoverable materials in this case.  Such a contention completely ignores DiBiase's own discovery efforts directed to Stephens Media pursuant to Rule 45 in this case.

DiBiase's position in this regard also unjustifiably characterizes Righthaven and Stephens Media as affiliated entities.  (Doc. # 53 at 18.)  Stephens Media and Righthaven are separate and distinct limited liability companies.  (Mangano Decl. ¶ 8.)  Stephens Media is not a member of Righthaven.  (*Id.*)  Righthaven is not a member of Stephens Media.  (*Id.*) Different counsel from Righthaven's represents Stephens Media.  (*Id.*)  DiBiase knows this fact by virtue of his own counsel's negotiations over Stephens Media's response to his subpoena in this case.  (*Id.*)

 DiBiase's reliance on the terms of the SAA does not alter the conclusion that Righthaven and Stephens Media are two separate and distinct entities.   For instance, DiBiase's contention that Stephens Media "cooperate fully and candidly" with respect to Righthaven's lawsuits does not mean that the company agreed to be subject to the discovery of materials in response to requests that were not directed to it.  As noted above, Stephens Media is represented by counsel. (*Id.*)  Expanding the scope of discovery under Rule 34 to include Stephens Media would eviscerate the company's ability to appropriately object to or otherwise withhold potentially responsive information on grounds unknown to Righthaven.  Rather, such a result would require Righthaven to forward DiBiase's discovery requests to Stephens Media's outside counsel so that it could lodge any applicable objections while Righthaven engaged in its own response efforts.

Righthaven would then be under the burden of justifying objections made by Stephens Media's counsel, even if it did not concur with said objections. This discovery quagmire is completely obviated by issuance of a subpoena to Stephens Media under Rule 45. In response, Stephens Media's outside counsel can lodge whatever objections they deem proper and defend their position should DiBiase disagree with their propriety.

DiBiase's reliance on Magistrate Judge Johnson's recent decision in *JP Morgan Chase Bank, N.A.* does not alter this rationale. Unlike the factual scenario in that case, in this action Righthaven has been assigned ownership of the Work and the right to sue for, among other things, past copyright infringement of the Work. Righthaven thereafter sought copyright registration for the Work. Righthaven has attached the Work as it appeared in the *Las Vegas Review-Journal*, as well as how it appeared without authorization on DiBiase's Website. These are the rather rudimentary elements required to bring the copyright infringement claim for relief at issue in this case. *See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). Thus, the core underlying factual elements necessary to establish liability have unquestionably been provided to DiBiase as exhibits to the Complaint in this case. This is simply not a scenario where a claim has been assigned, but the underlying supporting basis for recovery is in the hands of a related entity.

In this regard, it should be expressly noted that DiBiase does not contend that some, but not all, of his requests for production should be interpreted to apply to Stephens Media. (Doc. # 53 at 16-18.) Rather, DiBiase apparently asks the Court to find that Stephens Media *is within the scope of all 105 propounded requests for production*. Such a result was certainly not envisioned, and it was unquestionably not expressed by DiBiase's counsel, either at the time Righthaven responded or during the meet and confer process. Thus, Stephens Media's outside counsel provided absolutely no input concerning the lodged objections or agreed with the Righthaven's concessions made during meet and confer with regard to the requests for production. Fundamentally, it seems completely inequitable to deny Stephens Media the right to have its outside counsel participate in responding to the propounded discovery or engaging in the meet and confer sessions if it would be subject to this Court's ruling on its obligation to produce

materials under Rule 34.  Once again, these concerns would be readily address by DiBiase's

issuance of a subpoena under Rule 45, which he has already done once in this case.

Accordingly, Righthaven asserts that its Rule 34 obligations should not be expanded to include

Stephens Media.  If the Court is inclined to conclude otherwise, it seems appropriate to permit

Stephens Media to set forth its own objections or other limitations to the materials sought

through DiBiase's requests for production.

## I.   DiBiase's Request For a Privilege Log Must First Consider The Discoverable Scope of His Requests For Production, Which The Court Will Determine.

DiBiase also asks the Court to compel Righthaven to produce a privilege log despite the

company having lodged numerous objections to the discovery requests at issue.  (Doc. # 53 at

18-19.)   In this regard, any non-privilege based objections to discovery must be overruled

before an obligation to produce a privilege log arises.   Magistrate Judge Foley recently

acknowledged the propriety of this position in a recent motion to compel hearing conducted on

June 9, 2011, in *Righthaven LLC v. Democratic Underground, et al.,* 2:10-cv-01356-RLH-

GWF.  Simply put, Federal Rule of Civil Procedure 26(b)(5) expressly states that a party must

only produce a privilege log if the party withholds information that is "otherwise discoverable."

FED. R. CIV. P. 26(b)(5).  The Advisory Committee further instructed as follows:

> The obligation to provide pertinent information concerning withheld privileged material applies only to items "otherwise discoverable."  If a broad discovery request is made – for example, for all documents of a particular type during a twenty year period – and the responding party believes in good faith that production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with respect to the documents generated in that three year period, produce the unprivileged documents and describe those withheld under the claim of privilege.  If the court later rules that documents for a seven year period are properly discoverable, the documents for the additional four years should then be either produced (if not privileged) or described (if claimed to be privileged).

Advisory Committee Notes, 146 F.R.D. 401 (1993).

This approach has been endorsed by highly regarded civil procedure commentators:

> The requirement that specifics be provided should not always apply with respect to materials that are withheld on additional grounds other than privilege, such as that production would be unduly burdensome or that they are irrelevant, since those materials are not "otherwise discoverable."
>
> ***
>
> Ultimately, courts will need to make a judgment whether the nonprivilege grounds for objection are sufficiently substantial to excuse immediate presentation of detailed justification for privilege claims.

*See* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2016.1 (3d ed. 2010).

Based on the foregoing, the Court should first rule on the non-privilege objections raised by Righthaven in response to the requests for production. If the asserted objections are overruled, then the Court should require a privilege log to be produced if responsive materials are withheld based on an asserted privilege. DiBiase's contention that such a privilege log is required at this point of the proceedings is not warranted. Accordingly, Righthaven asks the Court to compel production of a privilege log, if any, following a ruling on the objections lodged by the company in response to DiBiase's requests for production.

## IV.   CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court deny DiBiase's Motion along with granting such relief as the deemed proper and just.

Dated this 9th day of June, 2011.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am a representative of Righthaven LLC and that on this 9th day of June, 2011, I caused a copy of the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
9960 West Cheyenne Avenue, Suite 170
Las Vegas, Nevada 89129-7701
Tel: (702) 304-0432
Fax: (702) 922-3851

*Attorney for Righthaven LLC*