1   COLLEEN BAL (*pro hac vice*)                KURT OPSAHL (*pro hac vice*)
    cbal@wsgr.com                               kurt@eff.org
2   BART E. VOLKMER (*pro hac vice*)            CORYNNE MCSHERRY (*pro hac vice*)
    bvolkmer@wsgr.com                           corynne@eff.org
3   WILSON SONSINI GOODRICH & ROSATI            ELECTRONIC FRONTIER FOUNDATION
    650 Page Mill Road                          454 Shotwell Street
4   Palo Alto, Ca 94304-1050                    San Francisco, Ca 94110
    Telephone: (650) 493-9300                   Telephone: (415) 436-9333
5   Facsimile: (650) 493-6811                   Facsimile: (415) 436-9993

6
    CHAD BOWERS
7   bowers@lawyer.com
    CHAD A. BOWERS, LTD
8   Nevada State Bar No. 7283
    3202 West Charleston Boulevard
9   Las Vegas, Nevada 89102
    Telephone: (702) 457-1001
10
    Attorneys For Defendant & Counterclaimant
11  THOMAS A. DIBIASE

12

13                       **UNITED STATES DISTRICT COURT**

14                            **DISTRICT OF NEVADA**

15  RIGHTHAVEN LLC, a Nevada limited-    )   CASE NO.:  2:10-cv-01343-RLH-PAL
    liability company,                   )
16                                       )   **DEFENDANT/COUNTERCLAIMANT**
                                         )   **THOMAS A. DIBIASE'S MOTION FOR**
17              Plaintiff,               )   **ATTORNEY'S FEES AND NON-**
          v.                             )   **TAXABLE COSTS**
18                                       )
    THOMAS A. DIBIASE, an individual,    )
19                                       )
                Defendant.               )
20                                       )
                                         )
21  _____   )
    THOMAS A. DIBIASE, an individual,    )
22                                       )
                Counterclaimant,         )
23        v.                             )
                                         )
24  RIGHTHAVEN LLC, a Nevada limited-    )
    liability company,                   )
25                                       )
                Counter-defendant.       )
26                                       )
                                         )
27  _____   )

28

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................1

    A.    Righthaven's Formation and Litigation Campaign ...................................1

    B.    Righthaven's Lawsuit Against DiBiase .....................................................4

III.  ARGUMENT ........................................................................................................7

    A.    Mr. DiBiase Is a Prevailing Party Under Section 505 of the Copyright Act ..........7

    B.    The Relevant Factors Support a Fees Award in This Action ....................7

    C.    Mr. DiBiase Seeks Reasonable Fees and Costs .....................................12

        1.    Mr. DiBiase's Attorneys Worked A Reasonable Number of Hours ........13

        2.    The Rates Sought Are Reasonable ............................................15

        3.    A Lodestar Award Is Appropriate .............................................17

        4.    Non-taxable Costs Should Also Be Awarded ...........................18

IV.   CONCLUSION ...................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<b>Page(s)</b>

### CASES

*Autodesk, Inc. v. Flores*, Case No. 10–cv–01917–LHK, 2011 WL 1884694 (N.D. Cal. May 18, 2011) ................................................................................ 15, 21

*Cuellar v. Joyce*, 603 F.3d 1142 (9th Cir. 2010) ........................................................ 17

*Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-05278 SI, 2008 WL 2331959 (N.D. Cal. June 4, 2008) .............................. 15

*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211 (9th Cir. 1997) .................................................................................. 9

*Fantasy, Inc. v. Fogerty*, 94 F. 3d 553 (9th Cir. 1996) ............................................ 8

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340 (1991) ................... 12

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................... 8, 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................ 13

*In re Sony BMG CD Technologies Litigation* (S.D.N.Y. Case No 1:05-cv-09575-NRB) ...................................................................................... 15

*Incorp Services, Inc. v. Nevada Corporate Services, Inc.,* Case No. 2:09-cv-01300-GMN-GWF, 2011 WL 686262 (D. Nev. 2011) ....................................... 17, 21

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ................................. 13, 18

*Love v. Mail on Sunday,* Case No. CV05-7798 ABC (PJWX), 2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) ................................................................... 7

*Maljack Productions v. GoodTimes Home Video Corp.*, 81 F. 3d 881 (9th Cir. 1996) ........................................................................................... 7, 12

*Mattel, Inc. v. Walking Mountain Productions*, Case No. CV99-8543RSWL(RZX), 2004 WL 1454100 (C.D. Cal. June 21, 2004) ......................................... 12

*Matthew Bender & Co., Inc. v. West Publishing Co.*, 240 F.3d 116 (2d Cir. 2001) ...................... 9

*Moore v. Jas H. Matthews & Co.*, 682 F.2d 830 (9th Cir. 1982) .................................. 16

*OPG v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004) ....................................... 15

*Perfect 10, Inc. v CCBill, LLC*, 488 F.3d 1102 (9th Cir. 2007) ................................... 9

*Righthaven, LCC v. Jama*, Case No. 2:10–CV–1322 JCM (LRL), 2011 WL
 1541613 (D. Nev. April 22, 2011) ................................................................. 4, 12

*Righthaven LLC v. Democratic Underground, LLC*, __ F. Supp. 2d, Case No. 2:10–
 cv–01356–RLH–GWF, 2011 WL 2378186 (D. Nev. June 14, 2011) ..................... *passim*

*Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No. 2:10-cv-00636-
 RLH-RJJ, 2010 WL 3522372 (D. Nev. Sept. 2, 2010) ..................................... 10

*Righthaven LLC v. Hill*, Case No. 1:11-cv-00211-JLK, Docket No. 16 at 2 (D.
 Colo. April 7, 2011) ........................................................................................... 9

*Righthaven, LLC v. Hoehn*, __ F. Supp. 2d __, Case No. 2:11–CV–00050–PMP–
 RJJ, 2011 WL 2441020 (D. Nev. June 20, 2011) .............................................. 7

*Silvers v. Sony Pictures Entertainment, Inc.*, 402 F. 3d 881 (9th Cir. 2005) ........................... 2, 10

*Twentieth Century Fox Film Corp. v. Entertainment Distrib.*, 429 F.3d 869 (9th
 Cir. 2005) ......................................................................................................... 18

*Van Asdale v. International Game, Technology*, Case No. 3:04–cv–00703–RAM,
 2011 WL 2118637 (D. Nev. May 24, 2011) ..................................................... 13

**STATUTES**

17 U.S.C. § 101 .................................................................................................... 9

17 U.S.C. § 106 .................................................................................................... 4

17 U.S.C. § 505 ............................................................................................ 1, 2, 7, 18

**RULES**

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 5

Fed. R. Civ. P. 26(a)(1)(A)(ii) ............................................................................ 11

Fed. R. Civ. P. 54(d)(2) ........................................................................................ 1

**MISCELLANEOUS**

10 Moore's Federal Practice, §54.190[2][b] at 54-472 ..................................... 16

**NOTICE OF MOTION & MOTION**

Please take notice that defendant and counterclaimant Thomas DiBiase ("Mr. DiBiase") respectfully moves for an order awarding attorney's fees and non-taxable costs pursuant to 17 U.S.C. § 505, Federal Rule of Civil Procedure 54(d)(2), and Local Rule 54-16 against defendant Righthaven LLC ("Righthaven").  This motion is supported by the accompanying memorandum of points and authorities, the declaration of Bart E. Volkmer ("Volkmer Decl."), the declaration of Kurt Opsahl ("Opsahl Decl."), any arguments of counsel, and any other matters that the Court deems appropriate when considering the motion.

**MEMORANUDM OF POINTS & AUTHORITIES**

**I.      INTRODUCTION**

Righthaven's lawsuit against Mr. DiBiase was a shameless attempt to extract a nuisance-value settlement from someone who spends his free time trying to assist prosecutors and investigators by maintaining a one-stop Internet resource for information about "no body" murder cases.  Mr. DiBiase prevailed in this action because he demonstrated that Righthaven could not—as a matter of law—establish the first element of a valid copyright infringement claim: ownership of a copyright.  Righthaven's case was objectively unreasonable from the outset and motivated by improper purposes throughout.  Indeed, this Court has found that Righthaven's interpretation of the agreement that allegedly gave it the right to sue over Stephens Media's articles was "flagrantly false—to the point that the claim is disingenuous, if not outright deceitful."  If there were ever a case where an award of attorney's fees was warranted under Section 505 of the Copyright Act, this is it.  Mr. DiBiase is entitled to attorney's fees in the amount of **$116,687** and non-taxable costs in the amount of **$2,770**.

**II.     FACTUAL BACKGROUND**

       **A.      Righthaven's Formation and Litigation Campaign**

Righthaven formed on January 18, 2010.  *See* Docket No. 51, Ex. B (Righthaven Operating Agreement ("RHOA")) at 1.  Its operating agreement candidly describes its business goals.  Righthaven seeks a "limited, revocable assignment (with a license-back) of copyright from third Persons."  RHOA § 3.2(c).  It then obtains copyright registrations listing it as the

1  copyright owner and files lawsuits with the understanding that the real copyright owner "would

2  ultimately enjoy the copyright registration."  *Id.* §§ 3.2(c), 3.2(d).  Righthaven's members—

3  Steven Gibson (under the name Net Sortie LLC) and SI Content Monitor (a Stephens Media

4  shell company)—were keenly aware that Righthaven's ownership position would not withstand

5  scrutiny.  *See* RHOA § 19.4(d) (memorializing the risk that "the willingness of consumers to

6  understand and agree to the assignment and license-back structure that is inherent in the

7  company's business structure may not be consistent or even prevalent.").  On the day that it

8  executed its Operating Agreement, Righthaven also entered into a Strategic Alliance Agreement

9  ("SAA") with Stephens Media, LLC ("Stephens").   Volkmer Decl., Ex. A.  Under the SAA,

10  Righthaven would file copyright infringement lawsuits based on Stephens' articles and the

11  parties would split any proceeds from the cases 50/50, less costs.  SAA § 5.

12       There was, however, an underlying problem.  The Ninth Circuit does not allow a copyright

13  holder to assign an accrued cause of action for infringement.  *See Silvers v. Sony Pictures*

14  *Entertainment, Inc.*, 402 F. 3d 881 (9th Cir. 2005).  And Stephens did not want to assign the

15  copyrights for its articles to Righthaven.  *See* Declaration of Mark Hinueber (Docket No. 56) at ¶ 9

16  (stating Stephens' intent to be able to continue to use the purportedly assigned content in the same

17  general manner as before signing the SAA).  Nor was Stephens interested in litigating to enforce

18  its copyrights, which would involve undertaking discovery burdens as a party.[1]  To accommodate

19  these concerns, Righthaven and Stephens concocted a champertous plan under which: (1) they

20  would try to shield Stephens from litigation; (2) Stephens would enjoy all of the rights of

21  copyright owners; and (3) no court would have the opportunity to rule on the parties' failed

22  attempt to contract around *Silvers*.

23  _____

24       [1] This can be deduced from Stephens's behavior.  If Stephens were interested in proceeding
as a party, it could have simply hired an attorney and filed suit, without any need for Righthaven.

25  And in fact, it may have been impossible for Stephens to transfer ownership, because it had
already pledged the articles to secure loans.  *See* SAA § 9.3 (permitting Stephens to "*maintain*

26  Encumbrances on Stephens Media Assigned Copyrights as part of an overall funding
securitization.") (emphasis added).  Section 9.3 of the SAA was not modified by the

27  "Clarification," and neither Stephens nor Righthaven has ever explained how Stephens can
mortgage assets that it claims not to own.

28

1    To accomplish this, Stephens "assigned" copyrights using a format that was drafted to

2  obscure the truth about the rights that Righthaven had actually received.  See SAA § 7.1, Ex. 1.

3  The standard assignment language speaks vaguely of "monetary commitments and commitments

4  to services to be provided."  SAA, Ex. 1.  While the term "monetary commitments" could be

5  construed as a promise to pay a specified sum, in truth it was a commitment to split litigation

6  proceeds.  Moreover, the "Copyright Assignment" purported to transfer "all copyrights *requisite*

7  to have Righthaven recognized as the copyright owner," obscuring the fact that Stephens was only

8  transferring to Righthaven an unadorned cause of action for infringement, and not any rights of

9  copyright.  *Id*. (emphasis added).

10    After receiving a sham "assignment" from Stephens, Righthaven then obtained copyright

11  registrations as an alleged owner.  This was—of course—all for show.  The SAA, which

12  Righthaven secreted, made abundantly clear that Stephens retained all of the relevant rights in the

13  allegedly "assigned" copyrights.  *See Righthaven LLC v. Democratic Underground, LLC*, __ F.

14  Supp. 2d __, Case No. 2:10–cv–01356–RLH–GWF, 2011 WL 2378186, *3 (D. Nev. June 14,

15  2011) (rejecting Righthaven's contrary interpretation as "flagrantly false—to the point that the

16  claim is disingenuous, if not outright deceitful.").  The purpose of this design is obvious.  In

17  litigation, Righthaven could trot out a copy of the one-page assignment, assert a presumption of

18  ownership based on a fraudulently obtained copyright registration, and keep the true nature of the

19  transaction hidden from defendants.  And Righthaven was not shy about executing this plan,

20  aggressively using the assignment to misdirect defendants away from Stephens Media and leading

21  "the district judges of this district to believe that it was the true owner of the copyright in the

22  relevant news articles."  *Democratic Underground,* 2011 WL 2378186 at *6.[2]

23  _____

24    [2] Another important component of this plan was to disguise Stephens' true connection with
Righthaven.  Stephens' principals created a holding company, SI Content Monitor LLC, to invest

25  in Righthaven.  While SI Content Monitor LLC was ostensibly a separate entity, the SAA required
that Stephens ensure that SI Content Monitor and Stephens would both be controlled by "common

26  owners with no material variation in said ownership."  SAA § 2.  Righthaven's Operating
Agreement even provided that, should SI Content Monitor experience a change in control such

27  that it was no longer controlled by "members of the family of Warren A. Stephens and trusts for
the benefit of such individuals," it would forfeit its interest in Righthaven to Mr. Gibson's own

28  shell company, Net Sortie LLC.  RHOA, § 15.5.

1   Indeed, under the defective structure set forth in the RHOA and SAA, Righthaven filed

2   more than 200 cases in this district.  Volkmer Decl., ¶ 2.  Many of those cases appear to have

3   settled before substantive litigation took place.  *Id.*

4       **B.       Righthaven's Lawsuit Against Mr. DiBiase**

5       On June 11, 2010, Doug McMurdo published an article in the *Las Vegas Review-Journal*

6   concerning a "no body" murder case (the "McMurdo Article").  Compl. ¶ 19.  On July 19,

7   2010—six months after the parties signed the SAA and after Righthaven identified the McMurdo

8   Article on Mr. DiBiase's blog—Stephens purported to assign the copyright in the article to

9   Righthaven using the format mandated by the SAA.  *See* Docket No. 59 (Mangano Decl., Ex. 1)

10  (purported assignment agreement for the McMurdo Article).  On August 9, 2010, Righthaven

11  filed this action.  Righthaven's complaint twice alleged that it owned the copyright in the

12  newspaper article at issue—allegations it must have known were false.  Compl. ¶¶ 6, 18.

13      Righthaven's complaint also included rhetorical flourishes designed to mislead Mr.

14  DiBiase about who owned the Stephens' articles.  Righthaven claimed to hold: (1) "the exclusive

15  right to reproduce the Work, pursuant to 17 U.S.C. § 106(1)"; (2) "the exclusive right to prepare

16  derivative works based upon the Work, pursuant to 17 U.S.C. § 106(2)"; (3) "the exclusive right

17  to distribute copies of the Work, pursuant to 17 U.S.C. § 106(3)"; and (4) "the exclusive right to

18  publicly display the Work, pursuant to 17 U.S.C. § 106(5)."  Compl.  ¶¶ 25-28.  These

19  statements, too, were patently false.  *See* SAA, § 3.3.  Righthaven also attached to the complaint

20  a purported copyright registration listing Righthaven as the owner of the work based on a

21  "written agreement."  Compl, Ex. 4.   That registration was obtained by fraud.  There was no

22  "written agreement" that transferred the copyright at issue from Stephens to Righthaven.

23      Once in court on false pretenses, Righthaven tried to invent copyright remedies that did

24  not exist and misuse actual copyright remedies to try to induce a quick settlement.  *See, e.g.,*

25  *Righthaven v. Rawlings*, Case No. 2:10-cv-01527-JCM–GWF (D. Nev. June 28, 2011), Docket

26  No. 25 (Righthaven reporting to the Court a settlement in the amount of $1,000).  Its prayer for

27  relief asked the Court to transfer the domain for Mr. DiBiase's website to Righthaven even

28  though the Copyright Act does not allow such a remedy.  Compl., Prayer for Relief at ¶ 3;

1   *Righthaven, LLC v. DiBiase*, Case No. 2:10-cv-01343-RLH-PAL, 2011 WL 1458778, *2 (D.

2   Nev. Apr. 15, 2011) ("Righthaven's request for such relief fails as a matter of law and is

3   dismissed"); *accord Righthaven LLC v. Pak.org, et al.*, Case No 2:10-cv-02155-JCM-PAL, 2011

4   WL 1743839, *5 (D. Nev. May 03, 2011).  Righthaven also asked for $75,000 in statutory

5   damages for "willful infringement," along with attorney's fees.  Compl., Prayer for Relief at ¶¶

6   4-5; Civil Cover Sheet, Docket No. 1-2.

7          Mr. DiBiase, however, stood up to Righthaven despite the unfavorable economics based

8   on principle: his posting of a *Las Vegas Review-Journal* article to his criminal-justice blog was a

9   fair use and did not cause Righthaven (or Stephens for that matter) a single penny in harm.  Mr.

10  DiBiase would have moved to dismiss Righthaven's complaint under Rule 12(b)(1) for lack of

11  subject-matter jurisdiction had he known about the SAA when he filed his original motion to

12  dismiss in October 2010.  Volkmer Decl. ¶ 4.  But Righthaven did not include that dispositive

13  document as an exhibit to its complaint or otherwise alert Mr. DiBiase to its existence at the

14  pleadings stage.  Accordingly, Mr. DiBiase answered the complaint and successfully moved to

15  dismiss Righthaven's request for a domain-name transfer.  *See* Docket Nos. 17, 19.

16         During the litigation, Righthaven serially tried to conceal that Stephens was the true

17  owner of the McMurdo Article.  Its Certificate of Interested Parties did not list Stephens even

18  though Stephens held a 50% interest in any proceeds from this case.  Docket No. 6.  On January

19  7, 2011, Righthaven served its initial disclosures, but it did not disclose or turn over the SAA.

20  Volkmer Decl., ¶ 5.  One aspect of Stephens' ongoing involvement with Righthaven was more

21  difficult to hide.  The articles over which Righthaven was suing (including the McMurdo Article)

22  continued to appear, for no charge, on Stephens' website.  Righthaven's explanation for this was

23  less than forthcoming.   In a court hearing in a different case, Righthaven's counsel told Judge

24  Mahan that, while he was "sure" that Stephens' continued publication of the news article at issue

25  was "covered in their license agreement with the RJ and the assignment," he was "not privy to

26  that information as to how."  *Righthaven v. Jama*, Case No. 2:10-cv-01322-JCM–LRL,

27  Transcript of Dec. 28, 2010 Hearing, (Docket 27) at 34.  Judge Mahan also asked if Righthaven

28

1   had "licensed the rights to others."  Righthaven's attorney responded, "I don't know as I stand

2   here right now."  *Id*. at 24.  Another opportunity to disclose the SAA thus slipped away.

3        On February 25, 2011, Righthaven responded to Mr. DiBiase's Rule 34 request seeking

4   "[a]ll agreements between Righthaven and Stephens Media" with a dizzying torrent of

5   objections, but no documents:

> 6   Righthaven objects to this request on the grounds that the definitions of
>     'Righthaven' and 'Stephens Media' are vague, ambiguous, overly broad and
> 7   impose compliance requirements outside of those authorized under Rule 34.
>     Righthaven further objects to this request as it is compound, overly broad, vague,
> 8   and ambiguous in its use of the terms and phrases 'all agreements.' Righthaven
>     additionally objects to this request as calling for the production of irrelevant
> 9   materials. Moreover, this request may invade the privacy rights of third parties.
>     Righthaven additionally objects to this request on the grounds that it calls for the
> 10  production of materials protected from discovery under the attorney work product
>     doctrine and/or attorney client privilege. Righthaven further objects to this request
> 11  on the ground that it calls for the disclosure of confidential and/or proprietary
>     information and the parties have yet to enter into an agreeable Stipulated
> 12  Protective Order in this case.  As such, no protective order has been entered by
>     the Court under which an appropriate confidentiality designation, if any, could be
> 13  applied to responsive materials **to the extent such materials exist**.

14  Volkmer Decl., Ex. C at 40-41 (Response to Document Request No. 64) (emphasis added).  The

15  purpose of these objections was to delay, perhaps indefinitely, the production of the SAA and

16  other relevant evidence.

17        On April 8, 2011, Righthaven finally turned over the SAA as a "supplemental initial

18  disclosure."  Volkmer Decl., ¶ 3.  But the only reason it did so was because *Stephens* had

19  produced the document in the *Democratic Underground* case and Righthaven had no choice but

20  to provide it in this action as well.  After receiving a copy of the SAA, Mr. DiBiase promptly

21  filed a motion to dismiss this case for lack of standing.  Righthaven still did not relent.  It

22  opposed Mr. DiBiase's motion based on an untenable reading of the SAA.  *See* Docket No. 55.

23  And it frantically tried to "clarify" the SAA to try to grant itself *nunc pro tunc* ownership rights.

24  *Id*.  That gambit was also unsuccessful: the "clarification" did not come close to vesting

25  Righthaven with rights in the McMurdo Article.  *See Righthaven, LLC v. Hoehn*, __ F. Supp. 2d

26  __, Case No. 2:11–cv–00050–PMP–RJJ, 2011 WL 2441020, *6 (D. Nev. June 20, 2011) (even

27  after the clarification, "Righthaven does not have any exclusive rights in the Work").  On June

28  23, 2011, this Court dismissed Righthaven's complaint.  Docket Nos. 72-73.

1    **III.    ARGUMENT**

2           Righthaven was hoping that it would never have to turn over the SAA in discovery

3    because the defendants in its numerous cases would settle, rather than spend time and resources

4    fighting Righthaven's claims and uncovering the truth about who owned the articles at issue.

5    That was a serious miscalculation.  Mr. DiBiase stood up to Righthaven's threats, and prevailed

6    by defeating the first element of a copyright infringement claim: ownership of the work being

7    asserted.  Mr. DiBiase is now entitled to an award of attorney's fees and non-taxable costs.  Such

8    an award is appropriate based on the frivolousness of Righthaven's case, the need to encourage

9    parties like Mr. DiBiase to fight fraudulent copyright infringement lawsuits, and the need to deter

10   Righthaven—and other entities like it—from running litigation shake-down operations that stifle

11   legitimate online speech.

12          **A.      Mr. DiBiase Is a Prevailing Party Under Section 505 of the Copyright Act.**

13          The Copyright Act states that prevailing parties may recover "a reasonable attorney's

14   fee" along with "full costs."  17 U.S.C. § 505.  Mr. DiBiase is a prevailing party based on the

15   Court's June 22, 2011 Order granting his motion to dismiss for lack of subject-matter

16   jurisdiction.  *See* Docket No. 72.  In *Maljack Productions v. GoodTimes Home Video Corp.*, 81

17   F. 3d 881, 889 (9th Cir. 1996), the Ninth Circuit affirmed an order granting attorney's fees to the

18   defendant under Section 505 after the district court dismissed the action for lack of subject-

19   matter jurisdiction because the plaintiff did not own the copyright being asserted.  Under this

20   authority, Mr. DiBiase is a prevailing party.  *See also Love v. Mail on Sunday,* Case No. CV05-

21   7798 ABC (PJWX), 2007 WL 2709975, *5 (C.D. Cal. Sept. 7, 2007) (awarding attorney's fees

22   where "Defendants were completely successful against the copyright claims, securing their

23   dismissal with prejudice in their first motion to dismiss.  The claims bordered on frivolous and

24   were not objectively reasonable because Plaintiff did not own the copyrights.").

25          **B.      The Relevant Factors Support a Fees Award in This Action.**

26          The Supreme Court has held that prevailing defendants in copyright cases are entitled to

27   attorney's fees on the same terms as prevailing plaintiffs.  *See Fogerty v. Fantasy, Inc.*, 510 U.S.

28   517, 527 (1994) ("a successful defense of a copyright infringement action may further the

1    policies of the Copyright Act every bit as much as a successful prosecution of an infringement

2    claim by the holder of a copyright.").  The following non-exclusive factors guide courts when

3    deciding whether to award fees and costs: "frivolousness, motivation, objective unreasonableness

4    (both in the factual and in the legal components of the case) and the need in particular

5    circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n.19.

6    Courts also may take into account other factors, like the purposes of the Copyright Act and the

7    degree of success obtained. *See Fantasy, Inc. v. Fogerty*, 94 F. 3d 553, 559 (9th Cir. 1996).

8    These considerations support a full award of attorney's fees and costs in this action.

9         **Frivolousness**:  While Mr. DiBiase does not need to show frivolousness to be entitled to

10   a fees award, *see Fogerty*, 510 U.S. at 532 n.18, that label accurately describes Righthaven's

11   case.  It practically goes without saying that Righthaven's ownership position was frivolous.

12   Indeed, this Court found one of Righthaven's contract interpretation positions to be "flagrantly

13   false—to the point that the claim is disingenuous, if not outright deceitful." *See Democratic

14   Underground*, 2011 WL 2378186 at *3.

15        **Motivation:**  Righthaven also harbored an improper motive: extorting nuisance-value

16   settlements from vulnerable defendants.  It was not interested in vindicating any important

17   principle of copyright law or obtaining fair recompense for alleged infringement.  Instead,

18   "Righthaven and Stephens Media have attempted to create a cottage industry of filing copyright

19   claims, making large claims for damages and then settling claims for pennies on the dollar."

20   *Righthaven v. Democratic Underground*, Case No. 2:10-cv-1356, Docket No. 94.  Righthaven's

21   extortionate business model has clogged up the Court's docket and inconvenienced hundreds of

22   innocent parties all to advance what amounts to a get-rich-quick scheme.  *See Righthaven LLC v.

23   Hill*, Case No. 1:11-cv-00211-JLK, Docket No. 16 at 2 (D. Colo. April 7, 2011) (Righthaven's

24   business plan is "encouraging and exacting settlements from Defendants cowed by the potential

25   costs of litigation and liability.").  As Righthaven itself concedes, the "the presence of improper

26   motivation in bringing a lawsuit, or the presence of other bad faith conduct in the course of

27   litigation, bolsters the argument in favor of awarding attorneys' fees." *See Righthaven v.*

28

1  *Democratic Underground*, Case No. 2:10-cv-1356, Docket No. 36 at 17 (citing *Matthew Bender*

2  *& Co., Inc. v. West Publishing Co.*, 240 F.3d 116, 124-27 (2d Cir. 2001)).

3    **Objective Unreasonableness:** The objective unreasonableness of Righthaven's case also

4  favors a fee award. *See Perfect 10, Inc. v CCBill, LLC*, 488 F.3d 1102, 1120 (9th Cir. 2007)

5  (requiring the court to consider the objective unreasonableness of a party's claims, "both in the

6  factual and in the legal components of the case"); *see also Entertainment Research Group, Inc. v.*

7  *Genesis Creative Group, Inc.,* 122 F.3d 1211, 1229 (9th Cir. 1997) ("because the evidence in the

8  record reveals that [the losing plaintiff] never had any evidence to support its … claims, the

9  district court properly found that it was objectively unreasonable for [the plaintiff] to have

10  maintained these claims").

11    Righthaven's claim to own the copyright in the McMurdo Article was objectively

12  unreasonable, as was its conduct in trying to cover up the fact that Stephens was the true owner.

13  Righthaven's complaint in this action—and in others—explicitly claimed to own the article and

14  recited four distinct Section 106 rights that it purported to control.  Compl. ¶¶ 6, 18, 25-28.[3]

15  Righthaven also attached a copyright registration asserting that it owned the work-in-suit.

16  Compl, Ex. 4.  Righthaven made those false statements to prevent defendants like Mr. DiBiase

17  from being able to evaluate properly the ownership issue, and that behavior strongly supports a

18  fees award.  *See Righthaven v. Democratic Underground*, Case No. 2:10-cv-1356-RLH, Docket

19  No. 36 at 17 (Righthaven conceding that a party can show improper motive by demonstrating

20  "the plaintiff's assertion of knowingly false allegations in the pleadings.").  Righthaven even

21  briefed pleadings motions directed to ownership in other cases and obtained favorable rulings by

22  concealing the SAA from the Court.  *See Righthaven LLC v. Vote For The Worst, LLC, et al.,*

23  _____

24    [3] In its briefing on the Motion to Dismiss, Righthaven advanced a theory that it temporarily
owned the rights before they were automatically licensed back to Stephens.  Even if that

25  argument were given credence, there is no dispute that Stephens owned an exclusive license to
all of the rights *at the time the Complaint was filed*.  An exclusive license is a transfer of

26  ownership.  17 U.S.C. § 101 ("A 'transfer of copyright ownership' is an assignment, mortgage,
exclusive license, or any other conveyance . . . of a copyright or of any of the exclusive rights

27  comprised in a copyright, whether or not it is limited in time or place of effect, but not including
a nonexclusive license.").

28

1   Case No. 2:10-cv-01045-KJD-GWF (D. Nev. Mar. 30, 2011), Docket No. 28 at 3; *Righthaven*

2   *LLC v. Majorwager.com, Inc.*, Case No. 2:10-cv-00484-GMN-LRL, 2010 WL 4386499, at *2

3   n.2 (D. Nev. Oct. 28, 2010); *Righthaven LLC v. Dr. Shezad Malik Law Firm P.C.*, Case No.

4   2:10-cv-00636-RLH-RJJ, 2010 WL 3522372, at *2 (D. Nev. Sept. 2, 2010).  Righthaven then

5   tried to bootstrap these improperly obtained rulings when opposing Mr. DiBiase's meritorious

6   motion to dismiss this action for lack of standing.  *See* Docket No. 55 at 4 (Righthaven arguing

7   that "DiBiase's reliance on the SAA is merely an attempt to divert the Court's inquiry from the

8   Assignment's unambiguous language in view of the requirements under *Silvers*, which multiple

9   courts from this district have correctly found to vest Righthaven with standing to maintain

10  accrued copyright infringement actions.").[4]

11      While it is bad enough that Righthaven filed a case over a copyright it did not own,

12  Righthaven exacerbated that problem by actively concealing that Stephens was the true owner.

13  **First**, Righthaven filed a Certificate of Interested Parties that neglected to list Stephens.  Docket

14  No. 6; *see also Democratic Underground*, 2011 WL 2378186 at *9 (Righthaven's failure to

15  disclose Stephens in its Certificate of Interest was "the most factually brazen" of Righthaven's

16  "multiple inaccurate and likely dishonest statements to the Court.").  **Second**, Righthaven's

17  answer to Mr. DiBiase's counterclaim was designed to convey the false impression that

18  Righthaven was a genuine copyright owner.  *See* Docket No. 19 at ¶¶ 5-9, 25; Docket No. 28 at

19  ¶¶ 5-9, 25.  **Third**, Righthaven did not produce or identify the SAA when it served initial

20  disclosures in January 2011 despite Rule 26's clear directive that a party must provide a copy or

21  description of all documents that the party "may use to support its claims or defenses."  Fed. R.

22  Civ. P. 26(a)(1)(A)(ii); Volkmer Decl., Ex. B.  **Fourth**, Mr. DiBiase served a document request

23  specifically asking for all agreements between Righthaven and Stephens.  Instead of agreeing to

25      [4]  In *Righthaven v. Malik,* Righthaven vigorously argued that the Assignment provided all
26  the information necessary to show that it, not Stephens Media, owned the copyright, and that no
further analysis was necessary.  *See Righthaven v. Dr. Shezad Malik Law Firm*, Case No. Case
2:10-cv-00636-RLH-RJJ, Docket No. 11.  Indeed, Righthaven went so far as to move for Rule 11
27  sanctions, contending that Malik's arguments that Righthaven did not have standing under *Silvers*
were baseless.  *Id.* at Docket No. 13.  While ultimately Malik was shown correct, it was long after
28  he reached a settlement.  *Id.* at Docket No. 26.

produce responsive materials (or at least the SAA), Righthaven responded with every boilerplate objection in the book.  Volkmer Decl., Ex. C.  The SAA finally came to light when *Stephens* produced the document in the *Democratic Underground* case, approximately one year after Righthaven began its litigation campaign.  Only after the die was cast did Righthaven hand over the SAA in this action—as a supplemental initial disclosure, not as a discovery response.[5]

**Compensation and Deterrence:**  Considerations of compensation and deterrence strongly support a fees award here.  On compensation, Mr. DiBiase and his pro bono attorneys should be made whole for the time and effort they put in defending a frivolous case.  It would have been tempting for Mr. DiBiase to settle this matter on nuisance-value terms and walk away from the whole affair.  Indeed, Righthaven offered to settle the case if Mr. DiBiase would pay $7,500—a fraction of the costs of litigating.  Opsahl Decl. ¶ 19.  Instead, Mr. DiBiase pressed forward to vindicate broader principles, and he should be compensated for taking that risk.

An award of fees would also help deter Righthaven from continuing with its litigation campaign, and discourage others who might have the same idea.  Indeed, given the allure of statutory damages and attorney's fees, district courts across the country have been beset with dubious lawsuits filed against individuals and small companies by the alleged "assignees" of copyrighted works.  An award of fees here would send a strong message that filing baseless copyright lawsuits has consequences.  *See Maljack*, 81 F.3d at 890 ("[W]e consider that an award of fees may deter baseless suits."); *see also Mattel, Inc. v. Walking Mountain Productions*, 2004 WL 1454100, *2 (C.D. Cal. 2004) (Plaintiff "brought objectively unreasonable copyright claims against an individual artist. This is just the sort of situation in which this Court should award attorneys fees to deter this type of litigation which contravenes the intent of the Copyright Act.").

**Purpose of the Copyright Act**:  "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible."  *Fogerty*, 510 U.S. at 527.  As

---

[5] To the best of our knowledge, Righthaven has not produced documents in response to discovery in *any* of its cases, preferring instead to occasionally provide "supplemental intitial disclosures" of cherry-picked documents.

1   Judge Mahan has found, Righthaven's "litigation strategy . . . does nothing to advance the

2   Copyright Act's purpose of promoting artistic creation." *Jama*, 2011 WL 1541613 at \*5.  In

3   contrast, by litigating this case despite strong economic incentives to settle, Mr. DiBiase helped

4   demarcate the boundaries of copyright law.  His defense generally served as a check against

5   Righthaven's unfair business model, which is antithetical to public access to creative works and

6   chills the fair use of them.  *Id.*  Specifically, Mr. DiBiase achieved a precedent-setting ruling that

7   the Copyright Act does not authorize Righthaven's demand for a domain-name transfer.  *See*

8   *DiBiase*, 2011 WL 1458778 at \*2.  That order also cast doubt on Righthaven's ability to obtain

9   attorney's fees for work performed by its in-house counsel.  *Id.*  In addition, Mr. DiBiase

10  contributed a full set of briefs on the key standing issue that resolved this matter.  *See* Docket

11  Nos. 47, 64.  A fees award is appropriate because Mr. DiBiase's defense advanced the purposes

12  of the Copyright Act for the benefit of the public.

13        **Degree of Success:**   As Righthaven concedes, the first element of copyright

14  infringement is ownership of a copyright.  *See Feist Publications, Inc. v. Rural Telephone*

15  *Service Co., Inc.*, 499 U.S. 340, 361 (1991); *Democratic Underground*, Docket No. 36 at 16 (the

16  "law is venerable that to prove copyright infringement, one must demonstrate . . . ownership of

17  the allegedly infringed work.").  The Court's order dismissing this action established that

18  Righthaven's infringement claim failed on the merits.  Mr. DiBiase, therefore, achieved a

19  complete victory.  Fees are appropriate for that reason as well.

20                                        \* \* \*

21        Any one of these factors alone might justify a fees award.  Taken together, they present

22  the paradigmatic case for awarding fees under the Copyright Act.

23        **C.     Mr. DiBiase Seeks Reasonable Fees and Non-taxable Costs.**

24        When awarding attorney's fees, the district court first determines the lodestar by

25  multiplying the number of hours reasonably expended by a reasonable hourly rate.  *Hensley v.*

26  *Eckerhart*, 461 U.S. 424, 433 (1983).  That figure may be adjusted based on the factors set forth

27  in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975) "which have not been

28  subsumed in the lodestar calculation." *Van Asdale v. International Game, Technology*, Case No.

3:04–cv–00703–RAM, 2011 WL 2118637, *2 (D. Nev. May 24, 2011).[6]  However, "[o]nly in

rare instances should the lodestar figure be adjusted on the basis of these considerations."  *Id.*

Under the lodestar formula, Mr. DiBiase seeks **$116,687** in attorney's fees and **$2,770** in non-

taxable costs.[7]

### 1.    Mr. DiBiase's Attorneys Worked a Reasonable Number of Hours.

Mr. DiBiase was represented in this action by the Electronic Frontier Foundation ("EFF")

and Wilson Sonsini Goodrich & Rosati ("WSGR").  In calculating the reasonable hours

expended, attorneys from the EFF and WSGR examined their contemporaneous records and took

a conservative approach concerning the billed hours for which they would seek compensation.

Opsahl Decl. ¶12; Volkmer Decl. ¶ 7.  In doing so, they struck or reduced time entries where the

work was duplicative or took longer than might have been expected.  *Id.*  They also struck time

entries where the work was administrative or of a general nature.  *Id.*  In essence, the attorneys

"wrote off" a substantial portion of the fees bill to ensure that they arrived at a reasonable figure.

Kurt Opsahl from the EFF billed 177.5 hours to this matter through June 30, 2011, an

average of 19.7 hours per month.  Opsahl Decl. ¶ 10.  He performed the following tasks:

(1) reviewing and analyzing Righthaven's complaint and Mr. DiBiase's defenses; (2) drafting

Mr. DiBiase's counterclaim and revising his answer; (3) revising the briefing on Mr. DiBiase's

motion to dismiss Righthaven's request for attorney's fees and domain-name transfer;

(4) attending to various discovery matters; (5) drafting, revising and setting strategy on the

---

[6] The *Kerr* factors are: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or other circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70. The first five factors are subsumed in the lodestar and the sixth factor may not be considered. *Van Asdale*, 2011 WL 2118637 at *2. The *Kerr* factors are also set forth in Local Rule 54-16. We address these factors in the text of this memorandum and in the attached Appendix A.

[7] The loadstar fee sought here is only for the work through June 30, 2011.  Because work on this motion is ongoing, Mr. DiBiase will file a supplemental declaration adding the July 2011 hours with the reply brief in support of this motion.

1  briefing concerning the SAA and its "clarification"; (6) reviewing and revising Mr. DiBiase's

2  motion to compel; and (7) drafting and revising the present motion.  Opsahl Decl., Ex. A.

3  Corynne McSherry, the Intellectual Property Director at EFF, billed 19.50 hours to this matter

4  through June 30, 2011, reviewing and revising court submissions and participating strategy

5  conferences regarding those filings.  Opsahl Decl. ¶ 10.  Other attorneys and staff at the EFF

6  assisted on this case, but Mr. DiBiase does not seek fees for their time; nor does he seek fees

7  incurred by his local counsel, Chad Bowers.  *Id.*

8      Bart Volkmer from WSGR billed 142.3 hours to this matter through June 30, 2011, an

9  average of 15.8 hours per month.  He performed the following tasks: (1) research for and drafting

10  of Mr. DiBiase's motion to dismiss Righthaven's request for domain-name transfer and

11  attorney's fees; (2) drafting Mr. DiBiase's answer and revising his counterclaim; (3) attending to

12  various discovery matters; (4) drafting Mr. DiBiase's opposition to Righthaven's motion to

13  dismiss the counterclaim; (5) drafting briefing on Mr. DiBiase's motion to compel; (6) drafting

14  briefing on Mr. DiBiase's motion to dismiss for lack of standing; and (7) drafting the present

15  motion.  Volkmer Decl., ¶ 8.

16      Colleen Bal from WSGR billed 10 hours to this matter through June 30, 2011.  She

17  reviewed and revised court submissions and conducted strategy conferences regarding those

18  filings.  Volkmer Decl., ¶ 9.  Evan Stern from WSGR billed 29.1 hours to this matter through

19  June 30, 2011, an average of 3.2 hours per month.  *Id.*  He conducted legal and factual research

20  supporting Mr. DiBiase's defenses and court submissions.  *Id.*  He also prepared collateral

21  documents supporting court filings.  *Id.*  Other attorneys at WSGR billed time to this matter, but

22  we do not seek reimbursement for their time.  *Id.*  Full time records containing narrative task

23  descriptions and hours worked are attached to the Volkmer and Opsahl declarations as Exhibits

24  D and A, respectively.

25      In total, Mr. DiBiase seeks compensation for 378.4 attorney hours.  That averages out to

26  approximately 42 hours per month, or 10.5 attorney-hours per week.  Those hours are

27  reasonable.  *See, e.g., Autodesk, Inc. v. Flores*, Case No. 10–cv–01917–LHK, 2011 WL

28  1884694, *2 (N.D. Cal. May 18, 2011) (awarding reasonable attorney's fees for 109.4 hours

worked in a copyright action resolved by a default judgment).  Mr. DiBiase was forced to take on

numerous litigation tasks because Righthaven filed suit over a copyright that it did not own:

(1) moving to dismiss portions of Righthaven's complaint; (2) preparing a counterclaim of non-

infringement and an answer; (3) opposing Righthaven's motion to dismiss the counterclaim;

(4) preparing and serving written discovery and disclosures; (5) extensively meeting and

conferring with Righthaven when it elected to respond to Mr. DiBiase's document requests with

objections only; (6) filing a motion to compel the production of documents; (7) taking the Rule

30(b)(6) deposition of Righthaven's CEO Steven Gibson; (8) subpoenaing the author of the

article at issue, Doug McMurdo; (9) analyzing the Operating Agreement, the SAA and the

"clarification" of that agreement; (10) filing a motion to dismiss based on lack of subject-matter

jurisdiction; and (11) filing this motion.  Volkmer Decl. ¶ 10.

### 2.   The Rates Sought Are Reasonable.

Turning to the reasonable rate, Kurt Opsahl bills his time at $525 per hour.  Opsahl Decl.

¶ 4.  That figure is a reasonable rate for attorneys in the San Francisco Bay Area of similar skill

and experience.  *Id*. at ¶ 5.  Other EFF attorneys have been awarded fees at similar rates.  *Id*. at

¶ 6.[8]  Mr. Opsahl has expertise in copyright law and has been practicing law for 14 years.  *Id*.

at ¶¶ 8-9.  In 2007, Mr. Opsahl was named one of the "Attorneys of the Year" by California

Lawyer magazine.  *Id*. at ¶ 8.  Prior to joining the EFF, Mr. Opsahl worked at the law firm of

Perkins Coie.  *Id*.  He received his law degree from the University of California at Berkeley's

Boalt Hall.  *Id*. at ¶ 7.  Corynne McSherry is a 2002 graduate of Stanford Law School, with

extensive experience in intellectual property matters.  *Id*. at ¶ 13.  She billed her time at $475 per

hour in 2010.  *Id*.

---

[8] In *Elec. Frontier Foundation v. Office of the Director of National Intelligence*, No. 07-05278 SI, 2008 WL 2331959 (N.D. Cal. June 4, 2008), Judge Illston found reasonable the 2007 hourly rates of EFF's attorneys, and awarded a total of $51,540.00 in attorneys' fees at those rates.  In *Apple v. Does* (Santa Clara Superior Ct., Case No. 1-04-cv-032178), EFF was awarded attorneys' fees in accordance with their lawyers' 2006 and 2007 rates.  In *In re Sony BMG CD Technologies Litigation* (S.D.N.Y. Case No 1:05-cv-09575-NRB), EFF attorneys were paid fees at their hourly rates as part of the settlement of the action in June 2006.  Further, in *OPG v. Diebold*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004), EFF attorneys were paid fees after a summary judgment victory at the organization's 2004 hourly rates.

1    Bart Volkmer billed his time at $570 per hour when this case started, and now bills at

2  $610 per hour.  Volkmer Decl., ¶ 11.  For purposes of this submission, Mr. Volkmer uses the

3  $570 rate.  This rate is paid by private parties in the marketplace, and is therefore a

4  presumptively reasonable starting point for purposes of the lodestar calculation.  *See* 10 Moore's

5  *Federal Practice*, §54.190[2][b]at 54-472 (Matthew Bender 3d ed.) ("If the fee movant's counsel

6  is in private practice, the most convincing evidence of the market rate is the rate the counsel

7  charges a client in similar actions.  As a practical matter, an attorney who has established a

8  normal billing rate will ordinarily recover fees based on that rate.");  *Moore v. Jas H. Matthews*

9  *& Co.*, 682 F.2d 830, 840 (9th Cir. 1982) ("Unless counsel is working outside his or her normal

10  area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal

11  billing rate.").  This rate also conforms to the rates charged by attorneys with comparable

12  experience working at similar Bay Area firms.  Volkmer Decl., ¶ 11.  Mr. Volkmer has been

13  practicing law for over eight years and has extensive experience handling cutting-edge copyright

14  and Internet matters.  *Id*.  He graduated *summa cum laude* from the Santa Clara University

15  School of Law, and then clerked for the Honorable Richard Seeborg before joining WSGR.  *Id*.

16    Colleen Bal is partner as WSGR who billed her time at $725 per hour when this case

17  started, and now bills at $750 per hour.  Volkmer Decl., ¶ 12.  For purposes of this submission,

18  Ms. Bal uses the $725 rate.  Her rates are also paid by private clients and conform to the rates

19  charged by attorneys working at comparable firms.  *Id*.  Ms. Bal has been practicing law for over

20  17 years and specializes in intellectual property and complex commercial litigation for

21  technology companies.  *Id*.  She graduated from Harvard Law School.  *Id*.  Evan Stern is a 2009

22  graduate from the Georgetown University Law Center.  Volkmer Decl., ¶ 13.  He billed his time

23  at $290 per hour when this case started, and now bills at $380 per hour.  *Id*.  For purposes of this

24  submission, Mr. Stern uses the $290 rate.  His rates are also in line with similar firms in the Bay

25  Area and are paid by private parties in the marketplace.  *Id*.

26    To account for the difference in billing rates between the San Francisco Bay Area market

27  and the Las Vegas market and in a good-faith effort ensure the overall reasonableness of this

28  submission, we reduce the billing rates by 33% for EFF and 50% for WSGR.  Pursuant to that

1  revision, we apply the following effective rates:  Kurt Opsahl: $350; Bart Volkmer: $285;

2  Colleen Bal: $362.50; Evan Stern: $145; Corynne McSherry: $316.  Those effective rates

3  conform to, or are below, the prevailing rates in the Las Vegas market.  *See Incorp Services, Inc.*

4  *v. Nevada Corporate Services, Inc.*, Case No. 2:09-cv-01300-GMN-GWF, 2011 WL 686262, *2

5  (D. Nev. 2011) (approving rates of $400 per hour for law-firm partners, $350 for an eighth-year

6  associate, $295 for a fifth-year associate, $275 for a sixth-year associate, $250 for a fourth-year

7  associate); *Righthaven v. Leon,* Case No. 2:10-cv-01672-GMN –LRL, July 5, 2011 Order

8  (Docket No. 52) (finding $275 per hour a reasonable rate for an associate who became a member

9  of the bar in 2010); *Righthaven v. Hyatt*, Case 2:10-cv-01736-KJD-RJJ, Declaration of Shawn

10  Mangano (Docket No. 13) (Righthaven seeking an attorney's fees award of $300 per hour for

11  Mr. Mangano's time).  Using this reduced-rate structure, Mr. DiBiase seeks attorney's fees

12  totaling **$116,687**.[9]

13  **3.    A Lodestar Award Is Appropriate.**

14      A lodestar award is warranted given the facts here.  Attacking Righthaven's claims

15  presented novel and difficult legal issues because Righthaven concealed that Stephens was the

16  true owner of the copyright at issue.  That was, in fact, the very purpose of the overly

17  complicated agreements between Righthaven and Stephens and the various corporate shells they

18  set up.  Indeed, Righthaven had little trouble persuading courts that its complaints sufficiently

19  pled facts to demonstrate ownership.  Against this backdrop, Mr. DiBiase needed attorneys with

20  expertise in both copyright law and discovery in complex cases.   In addition, both the EFF and

21  WSGR took on this matter pro bono without any prior relationship with Mr. DiBiase.  That

22  meant that the EFF passed up other opportunities to provide free legal services in order to take

23  on this case.  It also meant that the WSGR attorneys diverted resources from its other matters to

24  assist Mr. DiBiase in vindicating his rights.

25

26      [9] WSGR and EFF provided legal services to Mr. DiBiase pro bono.  That fact, however, does not disqualify them from seeking compensation for reasonable fees incurred.  *Righthaven v.*

27  *Leon,* Case 2:10-cv-01672-GMN–LRL, July 5, 2011 Order (Docket No. 52) (citing *Cuellar v. Joyce*, 603 F.3d 1142 (9th Cir. 2010) (denying attorney's fees would discourage pro bono

28  representation)).

1    Indeed, the non-subsumed *Kerr* factors suggest that an *increase* in the lodestar is

2  appropriate: (1) Mr. DiBiase achieved a complete victory in a case that sought $75,000 in

3  statutory damages and attorney's fees; (2) Mr. DiBiase was represented by attorneys with

4  specialized experience in copyright law of strong reputation and ability; and (3) the case was

5  "undesirable" in the sense that fees were guaranteed to exceed what a settlement would have

6  cost, leaving Mr. DiBiase with few options if he had not obtained pro bono representation.  *See*

7  *Kerr*, 526 F.2d at 69.  Given the considerable reductions that have already been applied, Mr.

8  DiBiase should receive a fees award of no less than the full lodestar amount of **$116,687**.

9  Pursuant to the *Kerr* factors, the Court may increase the award to the full fee amount without the

10  discount noted above.  Without a discount, the total would be **$199,250**.

11             **4.      Non-taxable Costs Should Also Be Awarded.**

12    Under the Copyright Act, Mr. DiBiase is entitled to "full costs" in addition to fees.  17

13  U.S.C. § 505.  Mr. DiBiase's attorneys incurred **$2,770** in non-taxable costs in this action for

14  travel expenses, delivery costs, Westlaw research fees, copying costs, document preparation

15  costs, and pro hac vice fees.  Volkmer Decl., Ex. H.  Righthaven should be ordered to pay those

16  costs as well.  *See Twentieth Century Fox Film Corp. v. Entertainment Distrib.*, 429 F.3d 869,

17  885 (9th Cir. 2005) (Section 505 authorizes an award of non-taxable costs in addition to fees).

18  **IV.     CONCLUSION**

19    For the foregoing reasons, Mr. DiBiase respectfully requests that the Court order

20  Righthaven to pay reasonable attorney's fees of no less than **$116,687** and **$2,770** in non-taxable

21  costs.

22

23

24

25

26

27

28

1

2   Dated: July 6, 2011                              Respectfully submitted,

3                                                     WILSON SONSINI GOODRICH & ROSATI
                                                      Professional Corporation
4
                                                      By: /s/ Bart E. Volkmer
5                                                     Colleen Bal (*pro hac vice*)
                                                      Bart E. Volkmer (*pro hac vice*)
6                                                     650 Page Mill Road
                                                      Palo Alto, California 94304
7
                                                      ELECTRONIC FRONTIER FOUNDATION
8
                                                      By: /s/  Kurt Opsahl
9                                                     Kurt Opsahl (*pro hac vice*)
                                                      Corynne McSherry (*pro hac vice*)
10                                                    454 Shotwell Street
                                                      San Francisco, CA 94110
11
                                                      CHAD A. BOWERS, LTD.
12
                                                      By: /s/  Chad Bowers
13                                                    Chad A. Bowers
                                                      NV State Bar Number 7283
14                                                    3202 W. Charleston Blvd.
                                                      Las Vegas, Nevada 89102
15
                                                      *Attorneys for Thomas A. DiBiase*
16

17

18

19

20

21

22

23

24

25

26

27

28

## Appendix A

**Local Rule 54-16(b)(3) Summary**

**(A)      The results obtained and the amount involved**:   Mr. DiBiase obtained a complete victory when the Court dismissed this action.  Righthaven had sought $75,000 in statutory damages and its attorney's fees, as well as non-monetary relief.

**(B)      The time and labor required**:  WSGR attorneys put in more than 181 hours defending Mr. DiBiase in this action, and EFF attorneys put in more than 197 hours.

**(C)      The novelty and difficulty of the questions involved**:  This action presented difficult litigation circumstances because Righthaven attempted through various artifices to hide the fact that Stephens was the true owner of the copyright at issue.  In addition, Righthaven sought an order transferring the domain name of Mr. DiBiase's website to Righthaven.  That remedy is not allowed under the Copyright Act, and therefore, Mr. DiBiase's attorneys were required to research this novel issue when preparing the original motion to dismiss in this action. This case also presented overarching questions related to fair use, to which Mr. DiBiase's attorneys devoted much of their discovery efforts.

**(D)      The skill requisite to perform the legal service properly**:  To perform the legal services properly, an attorney needed to have expertise in copyright law and be prepared to engage in time-consuming efforts to conduct discovery given Righthaven's unwillingness to provide crucial evidence voluntarily.

**(E)      The preclusion of other employment by the attorney due to acceptance of the case**:  The EFF and WSGR diverted resources to provide a defense for Mr. DiBiase and would have been working on other matters if they had not undertaken this case.

**(F)      The customary fee**:  Based on a recent decision in a Righthaven case awarding fees in the amount of $275 per hour for an associate attorney who joined the bar in 2010, the billing rates charged in this matter are reasonable.  So are the number of hours worked.  Mr. DiBiase seeks compensation for approximately 42 attorney hours per month for the nine months that this case was in active litigation.

**(G)      Whether the fee is fixed or contingent**:  The EFF and WSGR provided legal services on a pro bono basis.

**(H)      The time limitations imposed by the client or the circumstances**:  The circumstances warranted inherent time limitations.  Both the EFF and WSGR attorneys working on this case had other litigation matters that they needed to attend to, and were therefore required to prioritize the tasks that they performed for this matter.

**(I)      The experience, reputation, and ability of the attorney(s)**:  Mr. DiBiase has provided the biographies of the attorneys working on this matter and respectfully submits that they are experienced, skilled, and highly regarded in the community.

**(J)      The undesirability of the case, if any**:  This case was "undesirable" in the sense that the fees expended were virtually guaranteed to exceed a nuisance-value settlement.  That limited the pool of attorneys who could have agreed to take on this representation.

**(K)      The nature and length of the professional relationship with the client**:  Mr. DiBiase had no prior relationship with the attorney representing him in this case before this action was filed.

(**L)      Awards in similar cases**:  In *Incorp Services, Inc. v. Nevada Corporate Services, Inc.,* Case No. 2:09-cv-01300-GMN-GWF, 2011 WL 686262, *2 (D. Nev. 2011), the Court approved rates of $400 per hour for law-firm partners, $350 for an eighth-year associate, $295 for a fifth-year associate, $275 for a sixth-year associate and $250 for a fourth-year associate. The effective rates sought by this motion compare favorably with those rates.  *See also Righthaven v. Leon,* Case 2:10-cv-01672-GMN –LRL, July 5, 2011 Order (Docket No. 52) (finding $275 per hour for a reasonable rate for an associate who became a member of the bar in 2010).  The hours worked here, 378.4, were reasonable in light of nine months of litigation with active motion practice and ongoing discovery and case-management demands.  *See Autodesk, Inc. v. Flores*, Case No. 10–CV–01917–LHK, 2011 WL 1884694, *2 (N.D. Cal. May 18, 2011) (awarding reasonable attorney's fees for 109.4 hours worked in an action resolved by a default judgment).