COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>THOMAS A. DIBIASE, an individual,<br><br>    Defendant.<br><hr><br>THOMAS A. DIBIASE, an individual,<br><br>    Counterclaimant,<br><br>    v.<br><br>RIGHTHAVEN LLC, a Nevada Limited-Liability Company,<br><br>    Counter-defendant. | CASE NO.: 2:10-cv-1343 RLH PAL<br><br>**MOTION FOR ORDER TO SHOW CAUSE REGARDING RIGHTHAVEN'S CONTEMPT OF COURT** |

PLEASE TAKE NOTICE that Judgment Creditor Mr. Thomas DiBiase, by and through his attorneys, hereby brings this motion seeking this Court to issue an Order to Show Cause as to why Plaintiff Righthaven LLC ("Righthaven") and its Chief Executive Officer Mr. Steven A. Gibson should not be sanctioned for failing to Comply with this Court's February 7, 2012 order regarding DiBiase's Motion for Judgment Debtors' Examination.

**I.     Procedural History**

On Tuesday, January 24, 2012, a hearing was held before Magistrate Judge Peggy A. Leen on Mr. DiBiase's Motion for a Judgment Debtor's Examination.  At the hearing, Righthaven agreed, as a potential alternative to the examination, to produce a copy of the transcript of the judgment debtor's examination of Righthaven Chief Executive Office Steven Gibson and Chief Administrative Officer Raisha Gibson conducted on or around January 9, 2012 in *Righthaven v. Hoehn*, D. Nev. Case No. 2:11-cv-00050-PMP-RJJ.  Mr. DiBiase was willing to review the transcript to see if all reasonably necessary and appropriate questions had been already covered. Mr. DiBiase also sought the production of documents.

Following the discussions of counsel, the Court ordered the parties to "jointly submit a Proposed Stipulation summarizing their agreement concerning the previous Judgment Debtor Examination Transcript and Protective Order, as discussed in open court, by the end of this week." Minutes of Proceeding (Dkt. 101).  The Court denied the motion as moot, but without prejudice. After the hearing, counsel for the parties discussed the details, agreeing that the transcript and documents previously produced in *Hoehn* would be provided by February 7, and the remaining documents would be produced by February 14. Opsahl Decl., ¶ 2.

Counsel for Mr. DiBiase prepared a draft stipulation to reflect the parties' in-court agreement, and sent it to Righthaven on Wednesday, January 25, 2012. *Id*., ¶ 3. Righthaven responded that day, adding a new paragraph contending that it might be unable to produce some of the responsive documents by February 14. *Id*., ¶ 3. That night, counsel for Mr. DiBiase provided a revision to the draft, allowing that Righthaven might be late with the documents, but requiring a declaration detailing its good faith efforts to comply. *Id*., ¶ 3. Righthaven failed to respond. *Id*., ¶ 3.

1  Counsel for Mr. DiBiase wrote to counsel to Righthaven again on Thursday, January 26, seeking Righthaven's agreement and/or comments. *Id*., ¶ 4. Again, there was no response. *Id*., ¶ 4. DiBiase's counsel wrote again on Friday, January 27, reminding Righthaven of the Court's requirement to get the stipulation on file by the end of the week. *Id*., ¶ 5. Righthaven failed to respond. *Id*., ¶ 5.

After Mr. DiBiase's attempts to finalize a stipulation without court intervention had been unavailing, he filed a notice to inform the court of the situation. Dkt. 102. In response, Judge Leen set a status hearing for February 9, 2012. Dkt. 103. Only then did Righthaven agree to the written stipulation, which was filed February 6 and signed by the Court on February 7. Dkt. 104 and 105.

Righthaven, however, did not comply with the February 7 Order. Counsel for Mr. DiBiase wrote to Righthaven's counsel on February 8, asking about the late documents. Opsahl Decl., ¶ 6. In response, Righthaven provided a redacted copy of some of its Bank of Nevada statements, but failed to provide the transcript of the prior debtors' examination. *Id*., ¶ 6. Righthaven subsequently failed to show up at the February 9 status conference. *Id*., ¶ 7.

Counsel for Mr. DiBiase wrote again on February 15, reminding Righthaven that the production was overdue and requesting immediate compliance. *Id*., ¶ 8. Righthaven's counsel promised a response "as soon as possible. If I can do so today, I will." *Id*., ¶ 9. However, Righthaven's counsel has not provided the promised response. *Id.*

Counsel for Mr. DiBiase wrote three more times to Righthaven's counsel, on February 16, 21 and 23. *Id*., ¶ 10. Righthaven's counsel has not responded. *Id.*

**II.   Argument**

Righthaven should be held in contempt because it has refused to comply with this Court's February 7 Order. "A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983); *see also Spallone v. United States*, 493 U.S. 265, 276 (1990) ("courts have inherent power to enforce compliance with their lawful orders through civil contempt" (citation omitted)(internal quotation marks omitted)). "A person fails to act as ordered by the court when he fails to take 'all the reasonable steps within [his] power to

insure compliance with the [court's] order[].'" *Shuffler*, 6720 F.2d at 1146-47 (quoting *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 406 (9th Cir.1976)).

"The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir.1999) (citation omitted); *see also In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002).

The February 7 Order is a specific and definite order of the court. The Order requires Righthaven to provided two specific sets of documents by two specified dates. It includes substantial detail on the documents to be produced, and even provided for a declaration by which Righthaven could explain its good faith efforts to comply. Nevertheless, Righthaven has failed to comply with the Order. Opsahl Decl., ¶¶ 3-11. Accordingly the standard for contempt has been met.

### A. Sanctions are Proper

A court may issue civil contempt sanctions for the purpose of coercing a party to comply with a court order, to compensate the party seeking sanctions for losses incurred, or both. *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Both are proper here.

In determining the appropriate civil contempt sanctions for coercing Righthaven to comply, *U.S. v. Parker*, D. Nev. Case No. 2:08-cv-01200-LDG-LRL is instructive. In that case, the defendant failed to respond to "post-judgment interrogatories, inquiring as to the location of the computer, the names of the persons who have knowledge of the computer's location, and the actions that defendant has taken to comply with the court's order." *See Parker,* Dkt. 91. After the defendant failed to comply and failed to appear at a hearing, the Court imposed civil contempt sanctions of "$500 each day from the entry of [the contempt] Order until he purges himself of contempt …." *Parker,* Dkt. 112.[1]

---

[1] After the defendant's defiance continued, the Court ultimately held a hearing on whether to impose the additional sanctions of incarceration, granted the order and issued a warrant. *Parker*, Dkt. 123. Hopefully this case will never get to such a point.

1    Like Parker, Righthaven simply refuses to respond to post-judgment discovery order
2  requiring production of information about assets.  Having exhausted all other options, DiBiase has
3  no choice but to respectfully request that this Court set a coercive civil contempt sanction of $500
4  per day until Righthaven complies.  *See generally U.S. v. Ayres*, 166 F. 3d 991, 995 (9th Cir. 1999)
5  ("A per diem fine imposed for each day a contemnor fails to comply with an affirmative court
6  order [is a] 'paradigmatic civil contempt' sanction[].")(citation omitted).
7    In addition, Mr. DiBiase respectfully requests compensatory sanctions for the $3,412.50 in
8  attorneys' fees required to research, write and file this motion.  Opsahl Decl., ¶ 13.

9    **B.    Righthaven's "inaccessible" computer server is no defense.**

10   As noted in the February 7 Order, Righthaven has asserted that "its computer server is
11  currently inaccessible because it is disconnected from a power source, the Internet and any other
12  associated computer network." Order at ¶ 6.  These issues, however, do not excuse Righthaven
13  from complying with the Order or protect it from a finding of contempt.  As an initial matter,
14  Righthaven has promised to engage in a good faith effort to access the server, and it should be a
15  fairly simple matter: plug it into a power source, and connect the applicable network cables.  "[A]
16  district court is justified in adjudging a person to be in civil contempt for failure to be reasonably
17  diligent and energetic in attempting to accomplish what was ordered." *Bad Ass Coffee Co. of*
18  *Hawaii, Inc. v. Bad Ass Coffee Ltd. Partnership,* 95 F.Supp.2d 1252, 1256 (D. Utah 2000) (citation
19  omitted)(footnote omitted).  A contempt finding is appropriate to coerce Righthaven to
20  energetically attempt to comply.
21   Moreover, Righthaven's purported inability to access its server is self-inflicted.  At one
22  time, and presumably for the bulk of Righthaven's existence, its computer servers were accessible
23  and used in the regular course of business.  It cannot avoid production of documents by the self-
24  inflicted wound of disconnecting the server. *See United States v. Asay*, 614 F.2d 655, 660 (9th Cir.
25  1980) (finding that self-imposed inability to comply is not a defense to contempt, citing *U.S. v.*
26  *Bryan*, 339 U.S. 323 (1949)); *FTC v. Affordable Media, LLC*, 179 F.3d at 1239.

### C. Righthaven's CEO Mr. Gibson Must Be Liable for the Sanctions

A sanction payable only by Righthaven would not be an effective form of coercion. Righthaven already owes Mr. DiBiase over $120,000, but has refused to pay a single penny. Likewise, sanctions payable to the Court have not been effective against Righthaven. Righthaven has already been sanctioned $5,000 by Judge Roger Hunt in *Righthaven v. Democratic Underground,* Case No. 2:10-cv-01356-RLH –GWF, Dkt. 138 (D. Nev. July 14, 2011) ("Righthaven is sanctioned in the amount of $5,000.00 which shall be paid to the Clerk of Court within two weeks.")  As with this Court's other judgments and orders, Righthaven ignored Judge Hunt's sanctions order. Ospahl Decl., ¶¶ 14-18.

To be clear, Righthaven has had the ability to pay some or all of its debts to the parties and the courts. Righthaven's Bank of Nevada statements show that, in the months after July 14, 2011, Righthaven's CEO, Mr. Steven A. Gibson deposited a substantial amount into Righthaven's bank account.[2] *Id*., ¶ 17. On August 18, 2011, for example, the company had more than enough to pay the sanctions. *Id*., ¶ 19. This money, however, was spent in other ways, such as a $4,475 payment in August 2011 to Stevens Investments Holding, a company affiliated with Righthaven owner SI Content Monitor LLC. *Id*., ¶¶ 20, 21.

Simply put, Righthaven appears content to ignore any and all efforts to force it to comply with legal process. Therefore, Mr. DiBiase urges the Court to make any sanctions order actually effective by imposing it where it properly belongs, on Mr. Gibson, who is the Chief Executive Officer of Righthaven, the Manager of Righthaven and, through his shell company Net Sortie LLC, 50% owner of Righthaven. "'A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs.'" *N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 634 (9th Cir. 1977) (quoting *United States v. Greyhound Corp*., 363 F.Supp. 525, 571 (N.D.Ill.1973), *aff'd*, 508 F.2d 529 (7th Cir. 1974)).

Accordingly, the order to Righthaven was in effect, a command to Mr. Gibson. As the person solely responsible for the conduct of Righthaven's affairs, "[i]t is imperative that we hold

---

[2] Transfers between Mr. Gibson and Righthaven were commonplace. Over the previous year or so of Righthaven's existence, the company had written numerous checks to Mr. Gibson, in addition to the generous salary paid to him as CEO.

these officers in contempt if [courts] are to have respect for and obedience to [court] orders in such cases." *Id.; see also* Fed. R. Civ. P. 65 (court orders may be enforced against a party's officers); *Wilson v. United States*, 221 U.S. 361, 376 (1911) ("A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.")

Where, as here, a court "order unequivocally directs an organization to produce records, the persons who have knowledge of the court's action and who 'fail to take appropriate action within their power' to comply with the subpoena or order may be held in contempt." *United States v. Voss*, 82 F. 3d 1521, 1536 (10th Cir. 1996).

Mr. Gibson has actual or constructive knowledge of the order. Righthaven is charged with knowledge of the stipulated court order because in "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)).

Moreover, as the principal officer, Mr. Gibson is legally identified with Righthaven, and is therefore also charged with notice. *See N.L.R.B.*, 568 F.2d at 633; *see also Colonial Williamsburg Found. v. Kittinger Co.*, 792 F.Supp. 1397, 1406 (E.D.Va.1992) ("[T]he case law establishes that an individual who is responsible for ensuring that a corporation complies with a court order cannot escape liability merely by removing himself from the day-to-day operations of the corporation and washing his hands of responsibility."), *aff'd*, 38 F.3d 133 (4th Cir.1994); *see also United States v. Laurins*, 857 F.2d 529, 535 (9th Cir.1988) (Defendant's de facto control over a corporation after the corporation received a summons supported a finding of criminal contempt), *cert. denied*, 492 U.S. 906 (1989).

Accordingly, sanctioning Mr. Gibson along with Righthaven is not only proper, but may be the only way effectively to coerce Righthaven to comply with this Court's February 7 Order.

### III. Conclusion

For the reasons stated above, Mr. DiBiase respectfully requests this Court issue an order to show cause why Righthaven and Mr. Gibson should not be jointly and severally sanctioned $500 each day from the entry of the contempt order until Righthaven purges itself of contempt by complying fully with the February 7 Order and further jointly and severally sanctioned $3,412.50 as compensation for Mr. DiBiase's attorneys' fees.

DATED:  February 27, 2012                                  Respectfully submitted,


                                           */s/* Kurt Opsahl
                                           KURT OPSAHL
                                           ELECTRONIC FRONTIER FOUNDATION
                                           454 Shotwell Street
                                           San Francisco, CA 94110
                                           Telephone:  (415) 436-9333
                                           Facsimile:  (415) 436-9993
                                           Attorneys for Judgment Creditor
                                           THOMAS A. DIBIASE

\*   \*   \*

### CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b) and as provided for under the applicable Local Rules of Civil Practice, I certify that on this 27th day of February, 2012, I caused a true and correct copy of the MOTION FOR ORDER TO SHOW CAUSE REGARDING RIGHTHAVEN'S CONTEMPT OF COURT to be served on all counsel properly registered and appearing in this action as listed in the Court's ECF system.

Dated:  February 27, 2012                     */s/* Kurt Opsahl
                                                     KURT OPSAHL