COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>  Plaintiff,<br><br>  v.<br><br>THOMAS A. DIBIASE, an individual,<br><br>  Defendant.<br>_____<br>THOMAS A. DIBIASE, an individual,<br><br>  Counterclaimant,<br><br>  v.<br><br>RIGHTHAVEN LLC, a Nevada Limited-Liability Company,<br><br>  Counter-defendant. | CASE NO.: 2:10-cv-1343 RLH PAL<br><br>**DEFENDANT THOMAS DIBIASE'S REPLY IN SUPPORT OF PROPOSED ORDER FINDING RIGHTHAVEN IN CONTEMPT OF COURT AND IMPOSING SANCTIONS** |

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................................1

II.  Argument ....................................................................................................................2

    A.   Righthaven's CEO Steven Gibson Has the Ability to Comply ................................2

    B.   Righthaven and its CEO Steven Gibson Had Notice ......................................5

    C.   Coercive Sanctions Against Steven Gibson Remain Proper ........................8

III. Conclusion ..................................................................................................................9

I.      **Introduction**

If further evidence of the contempt of Steven Gibson, CEO of Plaintiff Righthaven LLC,[1] for this Court were needed, it is provided by his response to the Proposed Order. Where a degree of contrition would be more appropriate, Mr. Gibson offers excuses and proposals for further delays, none of which explains Righthaven's ongoing failure to be "reasonably diligent and energetic in attempting" to accomplish what this Court ordered. *E.E.O.C. v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir.1985), *aff'd*, 478 U.S. 421 (1986). Mr. Gibson proposes that the Court place responsibility solely on its counsel of record, Shawn Mangano. Given that, as even Mr. Gibson acknowledges, Mr. Mangano is nowhere to be found, this is actually a request for Righthaven, and Mr. Gibson, to avoid all accountability.

Mr. Gibson's proposal runs directly contrary to settled law. "An order issued to a corporation is identical to an order issued to its officers, for incorporeal abstractions act through agents." *Reich v. Sea Sprite Boat Co.*, 50 F.3d 413, 417 (7th Cir. 1995); *accord N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 634 (9th Cir. 1977). Thus, Mr. Mangano's unavailability does not absolve Righthaven of responsibility. Mr. Gibson can hire another lawyer or get it done himself.

The time for excuses and blaming others has long since past. Mr. Gibson, as CEO and the principal officer of Righthaven, has to comply with this Court's order and purge the ongoing contempt of court. There really is a simple solution for this problem (that should not have required all these hearings or briefs): *hand over the documents*. Because he continues to fail to do so, Mr. Gibson must be sanctioned for his contempt of court.

Accordingly, Defendant Thomas DiBiase respectfully requests this Court enter the order he proposed.

---

[1] Mr. Gibson claims to be a non-party. There is a host of compelling evidence that Righthaven is actually an alter-ego of Mr. Gibson. However, this Court need not decide that issue yet, because the case law "does not require that the corporate veil be capable of being pierced prior to imposing personal liability on the corporate officers responsible for insuring the corporation's compliance with a court order." *Connolly v. J.T. Ventures*, 851 F.2d 930, 935 (7th Cir. 1988); *accord N.L.R.B. v. Maine Caterers, Inc.*, 732 F. 2d 689 (1st Cir. 1984).

II.     Argument

   A.     **Righthaven's CEO Steven Gibson Has the Ability to Comply**

To excuse his failures, Mr. Gibson claims to be at "a complete legal inability" to comply, and that "[a]s CEO of Righthaven, I do not have any means to effect compliance with the Minute Order to the extent I even have full cognizance of same." Gibson's Response to DiBiase's Proposed Order (Dkt. 110) at 2, 3. This argument is meritless. Mr. Gibson is the CEO, Manager, in-house counsel and principal employee of Righthaven – he certainly has the *legal* ability to provide both the transcript and Righthaven's documents. *See generally* Righthaven Operating Agreement (Dkt. 51-2) at §§ 5.2 (Certain Powers of the Manager), 6.3 (Authority of the CEO). Indeed, the principal officer is precisely the person one would expect to provide responsive documents.

Mr. Gibson's claim that he has "not heard from Righthaven's legal counsel [Mr. Mangano] since February, 2012," and that Mr. Mangano has simply disappeared is similar to Mr. DiBiase's experience.[2] Resp. at 3. However, it is quite perplexing in light of Righthaven's consent to the withdrawal of attorney Dale Cendali just last week in *Righthaven v. Democratic Underground*, Case No. 10-cv-01356-RLH-GWF (Dkt. 186) (March 21, 2012), knowingly leaving that case solely in the hands of Mr. Mangano. Presumably Mr. Gibson, as a responsible CEO, would not give that consent knowing it left Righthaven without representation.

Mr. Gibson also takes great pains to claim to have done everything in his power:

> There has been no request made of me by Mangano that I did not fully cooperate with and I have, as CEO of Righthaven, at all times instructed Mangano to fully comply with all court orders to the best of Righthaven's ability.

Resp. at 5. However, Mr. Gibson cannot reconcile this self-serving assertion with Righthaven's actual behavior, such as its failure to comply with a $5,000 sanctions order by Judge Roger Hunt in *Righthaven v. Democratic Underground*, Minute Order on Show Cause Hearing (Dkt. 138) (D. Nev. July 14, 2011) ("Righthaven is sanctioned in the amount of $5,000.00 which shall be paid to the Clerk of Court within two weeks."). As explained previously, Righthaven had sufficient

---

[2] Counsel for Mr. DiBiase have also not heard from Mr. Mangano since mid-February. *See* Opsahl Decl., at ¶¶ 8-10. It is unclear whether he is unable or unwilling to act as an attorney.

funds to pay. *See* DiBiase's Motion for Order to Show Cause Regarding Righthaven's Contempt of Court (Dkt. 106) at 6.[3]

Beyond offering dubious platitudes, Mr. Gibson claims he cannot comply because "I do not have the Transcript nor do I know the other documents agreed to be provided." Resp. at 6. He presents no evidence that he even tried to obtain the transcript once it became apparent that Mr. Mangano had failed to complete the task, nor took the simple step of obtaining a copy the stipulated court order from PACER to find out what documents were to be provided.[4]

Mr. Gibson asserts Righthaven lacks the funds to order the transcript. Resp. at 6, n.5. Mr. Gibson does not provide any evidence to support his claim of no funds (the very evidence sought by the underlying February 7 Order). To the extent that Mr. Gibson is attempting to belatedly assert an impossibility defense, he has utter failed to show "categorically and in detail" why he is unable to comply. *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir.1973). Even accepting that "Righthaven currently has no revenues." Gibson Decl. (Dkt. 111) at ¶ 10, this does not mean it has no assets or access to funds.[5] Indeed, Mr. Gibson specifically states there is "no reason to believe that one or more of Righthaven's parents would not continue to make capital contributions… ." Resp. at 7. Mr. Gibson is obliquely referencing himself. As noted previously, Righthaven's Bank of Nevada statements show that Mr. Gibson has been personally funding Righthaven to keep its balance just above zero. Opsahl Decl. (Dkt. 106-1) at ¶ 17.

Moreover, Mr. Gibson admits that Righthaven had access to sufficient funds to pay Mr. Mangano for months after its revenue dried up, asserting "[u]p until Mangano became totally

---

[3] In addition, long before Mr. Mangano went out communication, Righthaven failed to comply with numerous court orders in *Righthaven v. Hoehn*, 2:11-cv-00050-PMP-RJJ. *See e.g. Hoehn* Dkt. 68 at 1-3 (detailing Righthaven's failure to comply with a court order); 69 (Hoehn's motion for contempt); and 70 (notice from the receiver of Righthaven's failure to comply). Mr. Gibson's assertion is just not credible.

[4] For Mr. Gibson's convenience, a copy of the February 7 Order (Dkt. 105) is attached and served herewith at Exhibit A. *See* Response at 1, n.1 (accepting electronic notice by the CM/ECF system).

[5] The available documents suggest that Righthaven acquired all sorts of assets, including computers, servers and printers that remain unaccounted for. An initial budget valued these assets at $119,500. *See* DiBiase's Motion for Judgment Debtor Exam (Dkt. 98) (Nov. 18, 2011) at 3.

3

*incommunicado* [mid-February 2012], Righthaven fulfilled all payment obligations to Mangano." Resp. at 7. Righthaven's bank records show that Mr. Mangano was being paid regularly in installments of around $2,475.00. *See e.g.* Opsahl Decl. (Dkt. 106-1), Ex. C. The money Righthaven will now save by not paying Mr. Mangano is more than enough to pay for the transcript of a half-day debtor's examination. Mr. Gibson's deliberate decision not to use funds available to Righthaven does not constitute "impossibility."

Indeed, Righthaven has been on notice for some time that Mr. Mangano needed help. *See Righthaven v. Democratic Underground*, Order on Motion to Stay (Dkt. 148) (D. Nev. August 2, 2011) at 3 ("Further, if counsel does not have time to do all that he needs to in Righthaven's dozens of cases, the Court kindly suggests that he or Righthaven obtain additional help . . . ."). The solution for Mr. Mangano's failures is not to order him to appear, while Mr. Gibson ignores one of a few actively litigated cases still on Righthaven's docket. Rather, it is the captain who must be the last off the ship. Accordingly, Righthaven should either hire a new attorney or Mr. Gibson should return to this litigation as counsel of record.

Perhaps anticipating this obvious course of action, Mr. Gibson asserts, without citation, that he "cannot represent Righthaven before the Court" and that he does not have the "capability to personally appear before the Court without legal counsel." Resp. at 5. This assertion is belied by the fact that Mr. Gibson *actually has* represented Righthaven before this Court *in this case*. *See* Order Granting Substitution (Dkt. 26). Indeed, three other Righthaven in-house counsel have represented Righthaven over the course of this litigation: Charles Coons, Joseph Chu and Anne Peroni.[6] When Mr. Gibson was representing Righthaven in litigation, he often negotiated directly with opposing counsel, and has appeared in court. There is no impediment to Mr. Gibson entering an appearance, especially if that is what is required for him to comply with court orders.

Mr. Gibson also argues that "[i]t is Mangano's professional responsibility to conduct the interface with this Court and with opposing counsel on behalf of Righthaven. Righthaven's CEO is

---

[6] While only Ms. Peroni has withdrawn (Dkt. 46), it is our understanding that Mr. Coons and Mr. Chu no longer work for Righthaven. *Righthaven v. Democratic Underground,* Righthaven's Response to Order to Show Cause (Dkt. 127) (Jun. 29, 2011) at 3, n.2.

4

simply not in a position to conduct such activities nor is permitted to do so." Resp. at 7. He does not explain why. To the extent that Mr. Gibson is arguing that his not *currently* being counsel of record somehow prevents him from complying with the court order, this argument is meritless. Mr. Gibson cannot evade his responsibility to comply with court orders by refusing to hire competent counsel or enter an appearance, because self-imposed inability to comply is not a defense to contempt. *U.S. v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (citing *U.S. v. Bryan*, 339 U.S. 323 (1949)).

### B. Righthaven and its CEO Steven Gibson Had Notice

Mr. Gibson asserts, without citation, that "as Mangano has failed to communicate with Righthaven, despite Righthaven's fervent attempts to communicate with Mangano, Righthaven, as an entity, has not received notice of noncompliance." Resp. at 5. To the contrary, Righthaven is charged with notice of the February 7 Order and the Order to Show Cause because in "our system of representative litigation . . . each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" *Link v. Wabash Railroad Co.*, 370 U.S. 626, 634 (1962) (quoting *Smith v. Ayer*, 101 U.S. 320, 326 (1879)).

To hold otherwise would lead to the possibility of an impenetrable wall against effective notice. Opposing counsel is prohibited from communicating with represented parties on the subject of the representation (*see* Nev. Rule of Prof. Conduct 4.2), and a nefarious party could effectively immunize itself against notice if its counsel chose not to forward documents. This would lead to chaos and encourage gamesmanship. And yet, this is exactly what Mr. Gibson proposes, asking this Court to deny any motion by Mr. Mangano to withdraw even though he contends that Mr. Mangano fails to forward notices.

Mr. Gibson has no one to blame but himself for Mangano's inaction. Mr. Gibson "voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link*, 370 U.S. at 633-34.

Furthermore, as CEO of Righthaven, Mr. Gibson is charged with notice under the facts of this case. In *Sequoia*, the officers claimed "that service on Sequoia's attorney was inadequate to

5

bind them personally to the judgment's terms." *Sequoia*, 568 F.2d at 633. However, they "concede[d] knowledge that the order had been issued and served on the union attorney." *Id*. The Ninth Circuit found this sufficient.

Finally, Mr. Gibson admits that he knew of the stipulation at issue. Gibson Decl. (Dkt. 111) at ¶ 5. He admits that he "was aware of an upcoming order that may have addressed Mangano's failure to act."[7] Resp. at 3. "In civil contempt proceedings, formal or personal service is not required. . . . Knowledge of the order suffices." *U.S. v. Baker*, 641 F. 2d 1311, 1316 (9th Cir. 1981) (citations omitted); *see also Shakman v. Democratic Org. of Cook County*, 533 F.2d 344 (7th Cir.), *cert. denied*, 429 U.S. 858 (1976) (city employee could be held in contempt for violation of order against city if he knew of the issuance of the order, although without knowledge of all its terms) (dictum). Mr. Gibson is in contempt of court because he had knowledge and therefore notice.[8]

Mr. Gibson's attempt to distinguish *United States v. Voss*, 82 F. 3d 1521 (10th Cir. 1996) is unavailing. First, as explained above, Mr. Gibson did have knowledge of the existence of a court order. In *Voss*, the defendants likewise admitted to knowledge of the court order. This was sufficient to confer notice, even though the orders at issue were directed to the organization.

Second, Mr. Gibson does not dispute *Voss*' holding that when a court "order unequivocally directs an organization to produce records, the persons who have knowledge of the court's action and who 'fail to take appropriate action within their power' to comply with the subpoena or order may be held in contempt." *Voss*, 82 F. 3d at 1536. Vaguely hoping that Mr. Mangano will re-

---

[7] In addition, Mr. Gibson has been repeatedly asked for comment about this lawsuit by reporter Steve Green of the *Las Vegas Sun*. *See e.g.* Steve Green, *Problems pile up for Righthaven with new ruling*, LAS VEGAS SUN, Mar. 7, 2012, http://www.vegasinc.com/news/2012/mar/07/problems-pile-righthaven-new-ruling/ (asking Gibson for comment on this Court's Order to Show Cause). His claim of lack of notice simply does not hold water.

[8] In *Sequoia*, the court also noted "evidence from which the Special Master could conclude that they had actual notice of the order's terms *by virtue of their long-standing relation to the underlying controversy*." *Sequoia*, 568 F.2d at 634 (emphasis added). Likewise, Gibson has had a long-standing relation to the underlying controversy in this litigation, including appearing as counsel of record, a deponent as the person most knowledgeable, re-negotiating the Strategic Alliance Agreement (twice), etc., etc. Indeed, this lawsuit is one of the few things that Righthaven, a company devoted entirely to litigation, *does*.

6

appear and somehow take care of everything is not taking all the appropriate action within the CEO's power.

Likewise, Mr. Gibson's discussion of *Colonial Williamsburg Found. v. Kittinger Co.,* 792 F. Supp. 1397 (E.D. Va. 1992) does not help his argument.

First, in *Colonial Williamsburg*, the court found that Michael Carlow, the CEO of Kittinger, had sufficient notice of a Consent Judgment, even though the evidence included (1) no one who remembered any conversations with Mr. Carlow concerning the Consent Judgment; (2) Mr. Carlow's testimony that he never read the Consent Judgment; and (3) Mr. Carlow's testimony that he never even saw the Consent Judgment until his deposition. *Id*. at 1403. Like the Consent Judgment at issue in *Colonial Williamsburg,* the stipulated February 7 Order was the result of negotiations between the parties, of which Mr. Gibson admits he was aware. Thus, the evidence before this Court shows that Mr. Gibson had even more awareness of the court order than the CEO of Kittinger.

Second, Mr. Gibson does not distinguish or dispute the quoted holding of *Colonial Williamsburg*:

> [T]he case law establishes that an individual who is responsible for ensuring that a corporation complies with a court order cannot escape liability merely by removing himself from the day-to-day operations of the corporation and washing his hands of responsibility.

792 F. Supp. at 1406. Instead, Mr. Gibson devotes his discussion of *Colonial Williamsburg* to arguing that he *has* removed himself from the day-to-day operations of Righthaven ("I simply do not have nor have I had access to the Transcript. I am unaware of what other documents opposing counsel seeks."), and therefore, he argues, has no responsibility. Resp. at 6. Indeed, this erroneous argument is the thrust of the Response as a whole.

Nor does the holding of *U.S. v. Laurins,* 857 F.2d 529 (9th Cir. 1988) help Mr. Gibson's position. As the Ninth Circuit explained:

> A nonparty may be held liable for contempt if he or she either abets or is legally identified with the named defendant. . . . Those not legally identified with a party but actively in concert with the party must have actual knowledge of the order to be bound.

*Laurins*, 857 F.2d at 535 (citations omitted). Thus, under *Laurins* there are two ways to hold a non-party liable for contempt. One is to show they non-party is "legally identified" with the named party. Second – if the non-party is not legally identified – is to show actual knowledge.

Mr. Gibson falls within *both* categories. As discussed above, Gibson had actual knowledge. Moreover, Mr. Gibson is liable for contempt the additional reason that, as the CEO, Manager, principal officer, and in-house counsel, he is legally identified with the party. In *Sequoia*, the court held the officers responsible because "[i]t can hardly be argued that the principal officers of a labor union are not legally identified with it, and thus liable in contempt for disobeying an order directed to the union." *Sequoia*, 568 F.2d at 633. Likewise, in *G. & C. Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F. 2d 29 (1st Cir. 1980), the court noted that officers, agents, servants, employees, and attorneys are legally identified with the party (and found that limiting 'legally identified' to this list would be too narrow); *see also Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500 (8th Cir. 2000) (sole shareholder and corporate officer legally identified with party).

### C. Coercive Sanctions Against Steven Gibson Remain Proper

Through his declaration and admissions in the brief, Mr. Gibson shows that, at a minimum, he **now** has knowledge of the existence of this Court's order. Yet, he has continued to make no serious effort to comply, let alone the reasonably diligent and energetic effort required by law.

Accordingly, moving forward Mr. Gibson must be held jointly liable for the coercive sanctions until he purges Righthaven's civil contempt because he, as CEO/Manager of Righthaven, continues to fail "to take all reasonable steps within [his] power to comply." *See In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993). While Mr. Gibson's brief frequently asserts his purported desire to comply, this is not at issue: his contempt "need not be willful," and there is no good faith exception to the requirement to obey a court order.[9] *Id*.

---

[9] Mr. Gibson argues that, "given the professional irresponsibility of Mangano, it appears rather dubious that Righthaven should be sanctioned." Resp. at 5. This appears to be an argument that Righthaven's non-compliance is not willful. As explained in *In re Dual-Deck,* this argument is not persuasive, since Righthaven's willfulness is also not at issue.

8

There is no question that Righthaven has not complied with the Court's order. There is also no question that Mr. Gibson has not accepted responsibility to comply with the Court's order, even though he is the sole person in charge of Righthaven. Given his continuing refusal to obey, a sanction of $500 per day, payable by both Mr. Gibson and Righthaven, is the only way to coerce compliance.

### III.   Conclusion

For the reasons stated above, Mr. DiBiase respectfully requests this Court enter the proposed order and hold Mr. Gibson and Righthaven jointly and severally liable for compensatory sanctions in the amount of $3,412.50 and coercive sanctions in the amount of $500 each day from the entry of the contempt order until Righthaven purges itself of contempt by complying fully with the February 7 Order.

DATED: March 29, 2012                           Respectfully submitted,

                                                                         */s/* Kurt Opsahl
KURT OPSAHL
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x108
Facsimile:  (415) 436-9993
Attorneys for Judgment Creditor
THOMAS A. DIBIASE

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b) and as provided for under the applicable Local Rules of Civil Practice, I certify that on this 29th day of March, 2012, I caused a true and correct copy of the DEFENDANT THOMAS DIBIASE'S REPLY IN SUPPORT OF PROPOSED ORDER FINDING RIGHTHAVEN IN CONTEMPT OF COURT to be served on all counsel properly registered and appearing in this action as listed in the Court's ECF system.

Dated: March 29, 2012            /s/ Kurt Opsahl
                                   KURT OPSAHL

# Exhibit A

# Exhibit A

| | |
|---|---|
| COLLEEN BAL (*pro hac vice*) | KURT OPSAHL (*pro hac vice*) |
| cbal@wsgr.com | kurt@eff.org |
| WILSON SONSINI GOODRICH & ROSATI | CORYNNE MCSHERRY (*pro hac vice*) |
| 650 Page Mill Road | corynne@eff.org |
| Palo Alto, CA 94304-1050 | ELECTRONIC FRONTIER FOUNDATION |
| Telephone: (650) 493-9300 | 454 Shotwell Street |
| Facsimile: (650) 493-6811 | San Francisco, CA 94110 |
| | Telephone: (415) 436-9333 |
| CHAD BOWERS | Facsimile: (415) 436-9993 |
| bowers@lawyer.com | |
| CHAD A. BOWERS, LTD | |
| Nevada State Bar No. 7283 | |
| 3202 West Charleston Boulevard | |
| Las Vegas, Nevada 89102 | |
| Telephone: (702) 457-1001 | |

Attorneys for Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | CASE NO.: 2:10-cv-1343 RLH PAL |
| Plaintiff, | |
| v. | **STIPULATION AND ORDER REGARDING THOMAS A. DIBIASE'S MOTION FOR JUDGMENT DEBTORS EXAMINATION** |
| THOMAS A. DIBIASE, an individual, | |
| Defendant. | Magistrate Judge Peggy A. Leen |
| THOMAS A. DIBIASE, an individual, | |
| Counterclaimant, | |
| v. | |
| RIGHTHAVEN LLC, a Nevada Limited-Liability Company, | |
| Counter-defendant. | |

1

1       IT IS HEREBY STIPULATED BETWEEN Plaintiff/Judgment Debtor Righthaven LLC ("Righthaven"), through its attorneys of record, and Defendant/Judgment Creditor, Thomas A. DiBiase, through his attorneys of record, that:

   1.   Righthaven shall produce to Mr. DiBiase's counsel, Kurt Opsahl, Electronic Frontier Foundation, 454 Shotwell Street, San Francisco, CA 94110, **by February 7, 2012** the transcript of the judgment debtor's examination of Steven Gibson and Raisha Gibson conducted on or around January 9, 2012 in *Righthaven v. Hoehn*, Case No. 2:11-cv-00050-PMP-RJJ. If appropriate, Righthaven may designate portions of the transcript as Confidential pursuant to the Stipulated Protective Order in this matter (Dkt. 41) as modified (Dkt. 42). Consistent with the Court's Minute Order dated January 24, 2012, Mr. DiBiase reserves his right to re-notice his motion for a judgment debtor's exam (Dkt. 98) or to seek other additional relief if he believes he has not received everything to which he is entitled.

   2.   Pursuant to paragraph 7(g) of the Stipulated Protective Order, Righthaven and DiBiase agree that all documents, information, or things designated as Confidential in this matter may be made available to Ms. Lara Pearson, the Receiver for Righthaven, so that she may use the information to the extent reasonably necessary for conducting the receivership or assisting in the enforcement of judgment. Counsel for Mr. DiBiase will provide Ms. Pearson with a copy of the Stipulated Protective Order and the Order and request that Ms. Pearson execute any documentation required so that she is bound by the terms of the Stipulated Protective Order.

   3.   Righthaven shall produce to Mr. Opsahl, **by February 7, 2012**, all documents previously produced to Mr. Hoehn or his counsel in advance of the January 9, 2012 judgment debtor's examination held in that action, which may be provided via electronic mail in PDF format.

   4.   Righthaven shall produce to Mr. Opsahl, by **February 14, 2012**, all information and documents identifying, related to, and/or comprising the following:

   a.   Any and all information and documentation identifying real property, computers, intellectual property, vehicles, brokerage accounts, bank deposits and all other assets that may be available for execution to satisfy the Judgment entered by the Court, including, but not limited to, information

          relating to financial accounts, monies owed to Righthaven by others, etc.

    b. Documents sufficient to show Righthaven's balance sheet for each month for the years 2010 through the present.

    c. Documents sufficient to show Righthaven's gross revenues for each month for the years 2010 through the present.

    d. Documents sufficient to show Righthaven's costs and expenses for each month for the years 2010 through the present.

    e. All tax returns filed by Righthaven with any governmental body for the years 2010 through the present, including all schedules, W-2s and 1099s.

    f. All of Righthaven's accounting records, computerized, electronic and/or in printed or paper format for the years 2010 through the present.

    g. All of Righthaven's statements, cancelled checks and related banking documents for any bank, brokerage or other financial account at least partially controlled by Righthaven, or recorded in the name of Righthaven or one of its directors or officers for Righthaven's benefit, for the years 2010 through the present.

    h. All of Righthaven's checkbooks, checkbook stubs and checkbook entries for the years 2010 to the present.

    i. Documents sufficient to identify the "significant intangible assets" referenced on page 11 of *Righthaven LLC v. Hoehn*, Case No. 2:11-cv-00050-PMP–RJJ, Dkt. 52.

    j. Documents sufficient to identify the "significant proprietary rights in its copyright infringement search engine software" referenced on page 13 of *Righthaven LLC v. Hoehn*, Case No. 2:11-cv-00050-PMP-RJJ, Dkt. 52.

    k. Documents sufficient to identify to the "Business Method IP" referenced in Exhibit 9.1(A) of the Righthaven Operating Agreement, as produced with Righthaven's Fifth Supplemental Initial Disclosures.

    l. Documents sufficient to show the means and source of payment of the

|   |   |   |
|---|---|---|
| 1 |   | appeal fee in the appeal of *Righthaven LLC v. Newman*, Case No. 2:10-cv- |
| 2 |   | 01762-JCM–PAL, on or around November 7, 2011, receipt number 0978- |
| 3 |   | 2175649. |
| 4 | m. | Documents sufficient to show the means and source of payment of any rent |
| 5 |   | or other monies paid for the use of 4475 South Pecos Road, Las Vegas, |
| 6 |   | Nevada. |
| 7 | n. | Documents sufficient to show the means and source of payment of |
| 8 |   | Righthaven's outside counsel in this matter. |
| 9 | o. | Any settlement agreements by which another party has agreed to pay money |
| 10 |   | to Righthaven, such as, but not limited to, the settlement agreement |
| 11 |   | referenced in *Righthaven LLC v. Rawlings*, Case No. 2:10-cv-01527-JCM- |
| 12 |   | GWF, Dkt. 25. |

5. Righthaven shall produce to Mr. Opsahl, **by February 14, 2012**, all information and documents sufficient to show the whereabouts of the following:

   a. Each of the "dedicated cellular telephone[s] for use on Company business" referenced in Section 6 (Benefits) of the employment agreements with Steven Gibson, Raisha Gibson, and David Brownell.

   b. Each of the "dedicated laptop computer[s] for use on Company business" referenced in Section 6 (Benefits) of the employment agreements with Steven Gibson, Raisha Gibson, and David Brownell.

   c. The "Additional Furniture/Phone" listed in Exhibit 13 (Budget) to the Righthaven Operating Agreement, as produced in Righthaven's Fifth Supplemental Initial Disclosures.

   d. The computer equipment, cell phones, printers, furniture and other property listed on the following excerpt from page 107 of Righthaven's Fifth Supplemental Initial Disclosures:

3

| | Start up |
|---|---|
| **Computer Equipment** | |
| Server | $ 5,000.00 |
| Desktops | $ 10,000.00 |
| Laptops | $ 5,000.00 |
| Cell Phones | $ 1,500.00 |
| Printers | $ 1,500.00 |
| Phone System | $ 7,500.00 |
| Network Switches | $ 1,000.00 |
| **Security** | |
| Email--Barracuda/Defender | $ 1,000.00 |
| Power--Battery Backup | $ 500.00 |
| Physical Intrusion--Cameras | $ 1,000.00 |
| Network Intrusion--Firewall | $ 2,000.00 |
| Software | $ 22,500.00 |
| Local Counsel Retainers | $ 15,000.00 |
| Tenant Improvements | $ 5,000.00 |
| Furniture | $ 20,000.00 |
| Section 5.10 Reimbursement | $ 21,000.00 |
| **Totals** | **$ 119,500.00** |

  e. Any other computers equipment, cell phones, or other similar assets that are now, or have been since January 2010, owned by Righthaven.

  f. To the extent that any of the above referenced property is not currently owned by Righthaven or is not currently in Righthaven's possession, custody or control, Righthaven shall provide all documents that refer or relate to any disposition, sale or other transfer of ownership, possession, custody or control of the referenced property.

 6. Righthaven states that certain potentially responsive information may be stored on its computer server and in other storage facilities. Righthaven states that it has access to those storage facilities, but that its computer server is currently inaccessible because it is disconnected from a power source, the Internet and any other associated computer network.. Righthaven agrees to engage in a good faith effort to access its computer server in order to complete the document production by February 14, 2012.

 In the event that Righthaven is not able to complete the document production by February 14, 2012, Righthaven will provide to counsel to Mr. DiBiase a sworn declaration describing its good faith efforts to access its computer server and stating that it has produced all responsive documents from its storage facilities. Righthaven and Mr. DiBiase, through their

counsel, will then meet and confer to determine the soonest date that Righthaven can complete the production stipulated herein. Should the parties fail to reach agreement through that meet and confer process, Mr. DiBiase may seek appropriate relief from the Court.

IT IS SO STIPULATED AND AGREED          DATED: February 6, 2012

| | |
|---|---|
| */s/* Shawn Mangano | */s/* Kurt Opsahl |
| SHAWN A. MANGANO, LTD.<br>Shawn A. Mangano, Esq.<br>8367 West Flamingo Road, Suite 100<br>Las Vegas, Nevada 89147<br>Telephone: (702) 304-0432<br>Facsimile: (702) 922-3851<br><br>*Attorney for Judgment Debtor Righthaven LLC* | ELECTRONIC FRONTIER FOUNDATION<br>Kurt Opsahl, Esq.<br>454 Shotwell Street<br>San Francisco, CA 94110<br>Telephone: (415) 436-9333 x108<br>Facsimile: (415) 436-9993<br><br>WILSON SONSINI GOODRICH & ROSATI<br>Colleen Bal, Esq.<br>650 Page Mill Road<br>Palo Alto, California 94304-1050<br><br>CHAD A. BOWERS, LTD.<br>Chad A. Bowers, Esq.<br>3202 West Charleston Boulevard<br>Las Vegas, Nevada 89102<br><br>*Attorneys for Judgment Creditor Thomas DiBiase* |

**IT IS SO ORDERED:**

_____
UNITED STATES MAGISTRATE JUDGE

DATED: February 7, 2012

**DECLARATION PURSUANT TO SPECIAL ORDER 109**

I, Kurt Opsahl, hereby declare pursuant to Special Order 109 that I have obtained Judgment Debtor's concurrence in the filing of this document from Shawn Mangano, Counsel for Judgment Debtor Righthaven LLC.

Executed on January 18, 2012, in San Francisco, California.

*/s/ Kurt Opsahl*
Kurt Opsahl

\*     \*     \*     \*     \*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2012, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on February 6, 2012, in San Francisco, California.

*/s/ Kurt Opsahl*
Kurt Opsahl