SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
SHAWN A. MANGANO, LTD.
8367 West Flamingo Road, Suite 100
Las Vegas, Nevada 89147
(702) 683-4788 – telephone
(702) 922-3851 – facsimile

*Attorney for Righthaven LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS A. DIBIASE, an individual,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM | Case No.: 2:10-cv-01343-RLH-PAL<br><br>**RIGHTHAVEN LLC'S RESPONSE TO ORDER TO SHOW CAUSE** |

Shawn A. Mangano, counsel of record pending his withdrawal on behalf of Plaintiff and Counter-defendant Righthaven LLC ("Righthaven"), hereby responds to the Court's September 18, 2012 Order to Show Cause (the "OSC," Doc. # 113). This response based on the below Memorandum of Points and Authorities, the declaration of Shawn A. Mangano, Esq., the pleadings and papers on file in this action, any permitted oral argument and on any other matter of which this Court takes notice.

## I.   INTRODUCTION

As required by the OSC, this response addresses the Court's March 2, 2012 Order to Show Cause (the "March 2nd OSC," Doc. # 107) together with the associated proposed order (the "Proposed Order," Doc. # 109). The March 2nd OSC and the Proposed Order both relate to Righthaven's compliance with a February 6, 2012 stipulation (the "February Stipulation," Doc. # 104), which was entered as an Order by the Court the following day. (Doc. # 105.)

At the time the February Stipulation was entered into between the parties, Righthaven had ceased to exist as a going concern. Facing numerous adverse subject matter jurisdiction decisions in the District of Nevada and elsewhere, Righthaven had been forced to suspend its copyright enforcement efforts while review was sought on appeal. The company was also facing judgment enforcement efforts from an attorneys' fees award issued in *Righthaven, LLC v. Hoehn,* No. 2:11-cv-00050-PMP-RJJ ("*Hoehn*"). On December 12, 2011, a receiver had been appointed over the company in *Hoehn* to seize and liquidate all of its tangible and intangible assets. Righthaven could no longer employ anyone. It had been forced to move offices twice while it challenged the attorneys' fees award and the appointment of the receiver in *Hoehn* multiple times before the district court and the Ninth Circuit. These efforts failed. Sometime in January 2012, the company relinquished its minimal office space and set up a "virtual" office, which merely consisted of an Internet maintained e-mail account that did not require maintenance through a physical server.

After relinquishing its office space, all of Righthaven's electronically stored information became inaccessible. The company's computer server, several desktop computers and a couple of printers were placed in storage. A few of chairs and some file boxes containing litigation materials were also placed in storage. Righthaven did not maintain hard copy documentation for its accounting and operational records, but was instead apparently accessed electronically.  In sum, nothing of substance remained of Righthaven once the proverbial plug was pulled on its physical presence.

In early January 2012, judgment debtor examinations of Steven A. Gibson ("Mr. Gibson") and Raisha Gibson ("Mrs. Gibson"), both of whom served as company officers, were

conducted in *Hoehn*. As part of these examinations, counsel for Mr. Hoehn had requested that Righthaven produce numerous documents concerning its financial affairs and operations. Righthaven advised Mr. Hoehn's counsel that it could not do so because virtually all potentially responsive information was stored on its inoperative computer server or associated desktop computers. Moreover, Righthaven did not have the financial resources to make this information accessible. The company did, however, manage to access detailed banking records that showed all checks that had been issued, electronic transactions it had undertaken and deposits made since its inception. The company produced these records to Mr. Hoehn's counsel prior to the judgment debtor examinations. In doing so, Righthaven's counsel advised Mr. Hoehn's counsel that the information contained in these banking records mirrored that which would be reflected in the company's electronically inaccessible records. At the time Mr. and Mrs. Gibson's judgment debtor examinations occurred, Righthaven was awaiting a ruling by the Ninth Circuit on what would be its final request for a stay pending appeal of the *Hoehn* judgment.

   The February Stipulation was entered into between the parties in an attempt to avoid the need for conducting a second round of judgment debtor examinations of Mr. Gibson and Mrs. Gibson. The understanding between the parties was to allow Mr. DiBiase's counsel to review the transcript from Mr. and Mrs. Gibson's judgment debtor examinations in *Hoehn* and then advise whether or not additional testimony would be required. While Righthaven's counsel did not have the court reporter's contact information, he believed Mr. Hoehn's counsel had ordered transcripts of the examinations. It was expressly understood that Righthaven's counsel would attempt to secure copies of the transcripts from Mr. Hoehn's counsel because the company lacked the financial resources to acquire them independently.

   The February Stipulation also required Righthaven to produce numerous categories of documents and other material. At the time the February Stipulation was discussed, Righthaven's counsel expressly advised Mr. DiBiase's counsel that the company did not have access to virtually any responsive materials. All of the company's records were believed to be stored on its disconnected and inaccessible server or potentially on one or more inoperable desktop computers. Righthaven simply did not have the funds necessary to recreate its computer

network so that it could access and identify materials potentially responsive to Mr. DiBiase's requests. Mr. DiBiase's counsel was told that Righthaven could produce the same banking records it had provided to Mr. Hoehn's counsel, which was believed to be fairly comprehensive. Under no circumstances did Righthaven's counsel lead Mr. DiBiase's counsel to believe that the company had access to other responsive materials. This conclusion was based in part on the fact that a similar search had recently been undertaken in response to the document requests made in the *Hoehn* matter. As the primary client representative, Mr. Gibson was fully apprised of the foregoing discussions and expressly authorized counsel to enter into the February Stipulation.

Shortly after the February Stipulation was entered, the Ninth Circuit denied Righthaven's final stay request. Upon receipt of this decision, Mr. Hoehn's counsel and the receiver increased their judgment enforcement efforts. The receiver proceeded to exercise control over all company property – both tangible and intangible. Righthaven's counsel was threatened with sanctions if he did not comply with the receiver's requests. Mr. Gibson, on the other hand, continued his demands to challenge the receiver's authority and the district court's power to appoint her. In sum, an existing and enforceable court order was in place that granted the receiver power to take all of the actions she was demanding while a recalcitrant client urged counsel not to comply with these demands. Eventually the receiver fired Mr. and Mrs. Gibson from their positions with Righthaven. The receiver also independently engaged counsel on behalf of the company to dismiss its pending appeals.

By the end of February 2012, the receiver had exercised control over Righthaven's assets. The desktop computers and server, minus any internal storage devices, were now under her control.[1] The copyright registrations were judicially transferred to her possession. She had seized and sold company's domain name at auction. All of these events were inevitable after the Ninth Circuit had denied Righthaven's stay efforts.

---

[1] As explained later in this submission, Magistrate Johnston authorized this exception during oral argument conducted in connection with Mr. Gibson's judgment debtor examination. (*Hoehn,* No. 2:11-cv-00050-PMP-RJJ (Doc. # 77)).

[2] During Mr. Gibson's judgment debtor examination, counsel for Mr. Hoehn requested an order compelling Righthaven to surrender its server and desktop computers. Righthaven's counsel objected to doing so because attorney-client privileged materials and potentially discoverable information related to on-going litigation were likely stored on this equipment. As a result,

4

Mr. DiBiase's counsel was fully aware that the receiver was dismantling Righthaven after its final stay request was denied. Sometime in late February 2012, Righthaven's counsel advised Mr. DiBiase's counsel that he had made several unsuccessful inquiries to Mr. Hoehn's counsel about obtaining the judgment debtor examination transcripts. Righthaven's counsel further advised Mr. DiBiase's counsel that he had no way of contacting either the court reporter or the court reporting agency because he has no idea of their identity. Righthaven also lacked the funds necessary to obtain the transcripts if either the reporter's identity or the agency's name could be identified. Righthaven's counsel additionally informed Mr. DiBiase's counsel that the company had no money and that all of its assets, tangible and intangible, were now controlled by the receiver. Mr. DiBiase's counsel appreciated the gravity and futility of the situation in any judgment enforcement efforts. Moreover, a receiver was in place to seize and liquidate assets for distribution to creditors such as Mr. DiBiase. Thus, there was at least an implied expectation that the receiver would be taking judgment enforcement efforts that could potentially benefit Mr. DiBiase. From February 23, 2012 to September 25, 2012, Righthaven's counsel received no communications from Mr. DiBiase's counsel concerning this matter or compliance with the February Stipulation.

Beginning in mid-February 2012, Righthaven's counsel began experiencing some significant personal issues that required immediate attention. Counsel's seventy-eight year old mother, who is his only living parent, began experiencing life threatening health conditions. Over the next several months, counsel's mother was repeatedly hospitalized for cardiac-related conditions. During this time, and continuing to the present, counsel has been forced to travel to Southern California on short notice and often for several weeks to care for his mother. These events have caused an enormous emotional strain on counsel. It has also significantly impacted his legal practice. He has been forced to have other attorneys appear at hearings for him and he has needed to tell opposing counsel when his mother's condition has unexpectedly required him to leave the jurisdiction before a scheduled appearance.

Through all of these unfortunate events, compliance with the February Stipulation was thought to be a moot issue. Whatever tangible and intangible assets Righthaven had were now

property of the receiver. The debtor examination transcripts could not be obtained despite counsel's efforts to do so. The receiver had fired Mr. and Mrs. Gibson from their positions with the company. New counsel had also been hired to dismiss the company's pending appeals. Moreover no communications had been received from Mr. DiBiase's counsel in over six months. Righthaven's counsel believed that any issues concerning the company were either being addressed by the receiver or had been abandoned as futile given the circumstances. There certainly was no intent to deprive Mr. DiBiase or his counsel of any materials that Righthaven had within its possession or that could be reasonably accessed by it. In fact, Righthaven's counsel fully informed Mr. DiBiase's counsel about the futility in seeking the requested materials given the overall state of affairs before entering into the February Stipulation.

Despite the apparently insurmountable circumstances, Mr. DiBiase's counsel still seeks to enforce the February Stipulation, which he is unquestionably entitled to do. Righthaven's counsel certainly believed these issues were rendered moot given the company's implosion as a result of Mr. Hoehn's judgment enforcement efforts, which included the receiver seizing Righthaven's intangible and intangible assets. Adding to these circumstances, Mr. DiBiase's counsel has also been informed that Righthaven's counsel has not been paid for his services for approximately seven or eight months. Moreover, as a result of this case apparently continuing to be litigated despite Righthaven's demise, counsel will be seeking to withdraw from representing Righthaven on several grounds. Should Mr. DiBiase's counsel wish to continue to pursue his demand for information in the event Righthaven's counsel's request to withdraw is granted, he can do so directly with the receiver, Mr. Gibson or Mrs. Gibson.

**II.   ARGUMENT**

The OSC response can essentially be distilled down to compliance with the parties' February Stipulation. The February Stipulation required Righthaven to produce copies of Mr. and Mrs. Gibson's judgment debtor's examinations, produce whatever materials had been provided to Mr. Hoehn's counsel in connection with the judgment debtor examinations and to also provide certain other materials requested by Mr. DiBiase or to set forth the basis as to why

6

such materials were not available through a written declaration. (Doc. # 104.) The Court entered the February Stipulation as an Order the day after it was submitted. (Doc. # 105.)

### A. Knowledge And Notice of The February Stipulation by Righthaven

As a threshold matter, Righthaven's counsel was unquestionably authorized to enter into the February Stipulation by Mr. Gibson. Mr. Gibson was apprised of all meaningful litigation decisions and he actively participated in them. The February Stipulation was one such event. Mr. Gibson, as well as his wife, had undergone the inconvenience of a judgment debtor's examination in the *Hoehn* matter. They wanted to avoid undergoing the same inconvenience in this case. Mr. Gibson further understood the nature of materials being requested as part of the proposed stipulation. He indicated that he did not have any responsive materials accessible to him beyond the bank records previously provided in connection with the *Hoehn* judgment debtor examinations. Mr. Gibson then authorized counsel to enter into the February Stipulation on behalf of Righthaven.

While it is conceded that a declaration was not submitted as to the costs and efforts explored for Righthaven to access electronically stored information, counsel certainly discussed these circumstances with Mr. DiBiase's counsel. Through these conversations it was relayed that Righthaven did not have the financial resources necessary to reestablish its network in any capacity and that it would cost at least a couple of thousand dollars to do so. Moreover, following the denial of Righthaven's final stay application, the receiver had asserted control over the server and the desktop computers along with other company property.

In sum, Righthaven's counsel entered into the February Stipulation upon receiving Mr. Gibson's express authorization to do so. Mr. Gibson understood its terms and conditions, but also appreciated that it was virtually impossible to comply with its document requests given that the company's server and desktop computers were inoperable. Granted, a declaration should have been prepared by counsel that detailed Righthaven's inability to access the requested information. This omission, however, should be mitigated by the fact that Righthaven's counsel had advised Mr. DiBiase's counsel throughout the process of complying with the February

Stipulation. Mr. DiBiase's counsel was well aware that the company could not afford to make its electronically stored information available.

### B.    The Judgment Debtor Examination Transcripts

Turning to the judgment debtor transcripts, Righthaven's counsel used his best efforts to obtain them from Mr. Hoehn's counsel who conducted the examinations. Multiple requests were made of Mr. Hoehn's counsel, which included asking for the court reporter's identity or the company with whom she was employed. These efforts proved fruitless. Mr. DiBiase's counsel was fully advised of Righthaven's counsel's efforts and his inability to secure copies of the transcripts. In fact, Mr. DiBiase's counsel has since admitted that he learned from Mr. Hoehn's counsel that transcripts from the judgment debtor examinations were never ordered. Accordingly, compliance with the February Stipulation was impossible with regard to producing copies of the judgment debtor examination transcripts by obtaining them from Hoehn's counsel because they were never order. Moreover, Righthaven's counsel did not know the court reporter's identify or the company she was affiliated with and this information was never provided to him despite several inquiries.

### C.    Production of The Requested Materials

Turning next to the production of materials called for under the February Stipulation, counsel made an inquiry with Mr. Gibson as to whether or not he was in possession of any responsive documents. Counsel did this by telephonically conferring with Mr. Gibson at the same time he sought authorization to enter into the February Stipulation. Righthaven's counsel read off the list of requested materials to Mr. Gibson. In response, Mr. Gibson indicated that except for the bank records previously produced in connection with the judgment debtor examinations in the *Hoehn* matter he was not in possession of any responsive materials. Mr. Gibson speculated that some responsive materials were possibly stored in electronic format on the company's inoperative computer server. While Mr. Gibson believed it was unlikely any responsive materials were stored on the desktop computer hard drives, he could not definitively rule out this possibility.

After Mr. Gibson approved the February Stipulation, Mr. DiBiase's counsel was informed that Righthaven did not possess any responsive materials beyond the bank records it had produced in *Hoehn*. Mr. DiBiase's counsel was also advised that it was unclear what responsive materials were electronically stored on the company's inoperative server and desktop computer hard drives. As set forth in the February Stipulation, counsel agreed that he would attempt to secure an estimate for making the server and desktop computer hard drives operative.[2]

While counsel was attempting to obtain the judgment debtor examination transcripts and while he was securing the estimate for making the server and desktop computers operational, his mother was hospitalized in Southern California. Upon learning of her condition, counsel immediately left the jurisdiction to be by his mother's bedside. Counsel stayed in Southern California for over two and a half weeks to help his mother recuperate from heart surgery. During this time, counsel inquired required make the server and the desktop computers operational. It was estimated to cost between $2,000 and $2,500 to do so. While counsel obtained this information, he failed to prepare a declaration detailing his efforts, the amount of the estimate obtained and the fact that the server and desktop computers were inoperable. This information was certainly known to Mr. DiBiase's counsel based on the conversations that had occurred between the parties. Although it does not excuse counsel's failure to prepare the declaration required under the February Stipulation, he was under a tremendous amount of stress dealing with his mother's unfortunate condition.

During this time, the receiver was exercising complete control over Righthaven's property and operations. Despite having full authority to do so, Mr. Gibson refused to acknowledge the receiver's power. As a result, counsel was placed in the unenviable position of listening to Mr. Gibson's demands while attempting to comply with the receiver's instructions in order to avoid contempt proceedings being initiated. Quite frankly, counsel was simply

---

[2] During Mr. Gibson's judgment debtor examination, counsel for Mr. Hoehn requested an order compelling Righthaven to surrender its server and desktop computers. Righthaven's counsel objected to doing so because attorney-client privileged materials and potentially discoverable information related to on-going litigation were likely stored on this equipment. As a result, Magistrate Johnston authorized Righthaven to remove all hard drives and storage devices from the server and desktop computers. (*Hoehn*, No. 2:11-cv-00050-PMP-RJJ (Doc. # 77)).

overwhelmed by the circumstances surrounding Righthaven's collapse along with his mother's ill health. Again, while this does not justify failing to prepare the declaration required under the February Stipulation, counsel simply overlooked the need to do so given everything that was occurring at that time.

### D. The Proposed Order

The OSC also requires a response to the Proposed Order submitted by Mr. DiBiase's counsel. The Proposed Order imposes excessive penalties given the circumstances underlying Righthaven's non-compliance with the February Stipulation, which is the linchpin for the company's alleged failures to act.

To begin with, Mr. DiBiase's counsel was provided with all of the materials that were produced to Mr. Hoehn's counsel in connection with the judgment debtor examinations. These materials consisted of bank records that had been redacted and scanned into PDF format. Mr. DiBiase's counsel was provided these materials in the exact same format in which they were provided to Mr. Hoehn's counsel. When Righthaven's counsel spoke to Mr. DiBiase's counsel shortly after producing these materials, Mr. DiBiase's counsel stated that he had already obtained unredacted copies of the company's bank records in response to a subpoena. So while he was appreciative for having received these materials from Righthaven's counsel, he did not need them. Nevertheless, Righthaven fully complied with this aspect of the February Stipulation by producing the exact same materials that were provided to Mr. Hoehn's counsel.

Turning next to the judgment debtor examination transcripts, Righthaven did not hire the court reporter used to transcribe the examinations. Mr. Hoehn's counsel did so. In an attempt to comply with the February Stipulation's requirements, Righthaven's counsel tried several times to obtain copies of the transcripts from Mr. Hoehn's counsel. Mr. Hoehn's counsel initially stated that he had not received copies of the transcripts and agreed to inform Mr. DiBiase's counsel of this fact because Righthaven's counsel was at his ailing mother's bedside. Righthaven's counsel also tried to obtain the name of the court reporter hired to transcribe the examinations, but these efforts failed. Mr. DiBiase's counsel was fully informed of the difficulties being experienced in attempting to secure the deposition transcripts. In the end,

Righthaven's counsel did the best he could to obtain the transcripts, but Mr. Hoehn's counsel never ordered copies. Moreover, no one knew the name of the assigned court reporter or her company. These circumstances certainly do not seem to justify issuing sanctions for civil contempt.

With regard to Righthaven's failure to produce the other materials identified in the February Stipulation, the company's failure to do so is directly attributable to its server and desktop computers being inoperable. A search for responsive hard copy documents was certainly performed by Mr. and Mrs. Gibson. No responsive documents were located. Rather, it was believed that responsive materials were stored on the company's inoperable server and possibly one or more of the desktop computers located in storage.

From the time the February Stipulation was first discussed between the parties, the inoperability of Righthaven's server and desktop computers was fully disclosed. The company no longer had funds to maintain an office. Its chairs, some miscellaneous litigation files, the server and the desktop computers were placed into storage. The receiver had asserted ownership over these items, but Righthaven was authorized by Judge Johnston to remove the hard drives from the server and the desktop computers before surrendering them. Mr. DiBiase's counsel was apprised of these facts. Mr. DiBiase's counsel was also told that Righthaven could not afford to make its server and computer desktops operational, which was estimated to cost between $2,000 and $2,500. Granted, a declaration was not prepared by counsel attesting to these facts. Counsel's failure to do so was not intentional. It was an oversight by a person dealing with a host of issues caused by his mother's poor health. These circumstances do not justify a civil contempt finding.

The Court must keep the overall landscape in context when considering the issues presented in the Proposed Order. Righthaven is no longer a going concern. It has not been so for several months. Any money it had in a company bank account was executed against by Mr. Hoehn's counsel months ago. The company is penniless today. The receiver has auctioned off Righthaven's domain name. Its copyrights have been surrendered to the receiver through court order. The receiver has taken control over the few tangible items of property owned by the

company. The receiver has fired Mr. and Mrs. Gibson from their positions with Righthaven. Righthaven's pending appeals have been dismissed at the receiver's direction. Righthaven has produced its bank records. The financial institutions formally used by Righthaven have also produced the company's bank records. The company has collapsed. Nothing of substance remains aside from a few chairs, a server and some desktop computers. Making the company's server operational so that balance sheets and other accounting records can be accessed will not revive Righthaven or aid Mr. DiBiase's judgment enforcement efforts.

Given this backdrop, Mr. DiBiase's motivation for seeking to hold Mr. Gibson personally liable for civil contempt is readily apparent. Righthaven has no money to satisfy an award of monetary sanctions. Mr. Gibson, however, may be able to satisfy such an award because he is a practicing attorney. Simply put, adopting this result by following the Proposed Order would be an injustice. To begin with, the receiver fired Mr. Gibson from his position with Righthaven. At the time the February Stipulation was entered into, Righthaven did not have the funds required to make the server and desktop computers accessible so that a search for potentially responsive materials could be performed. Mr. Gibson was certainly under no obligation to pay this expense on behalf of Righthaven. These facts demonstrate that it would simply be wrong to saddle Mr. Gibson with over $3,400 in motion-related sanctions together with a daily penalty of $500 until Righthaven makes its inoperable server and desktop computers accessible, which clearly implies that he should also pay the $2,000 to $2,500 that it is estimated to bring these systems online.

Likewise, Mr. DiBiase's proposed sanctions should not be leveled against Righthaven's counsel. Righthaven's counsel produced the same bank records previously provided to Mr. Hoehn's counsel in connection with the judgment debtor examinations. Mr. DiBiase's counsel readily acknowledged that he already had copies of these materials based a subpoena issued to Righthaven's bank. Righthaven's counsel also used his best efforts to obtain the judgment debtor examination transcripts only to learn that Mr. Hoehn's counsel never ordered them from the court reporter. Righthaven's counsel also fully disclosed that a vast majority of potentially responsive materials to Mr. DiBiase's document requests were stored on an inoperable server

and possibly on one or more non-functioning desktop computers. Mr. DiBiase's counsel was further informed that Magistrate Johnston had authorized Righthaven to remove the hard drives from these devices so that their remaining components could be surrendered to the receiver. Mr. DiBiase's counsel was additionally told that Righthaven did not have the money to make the server and desktop computers accessible, which was estimated to cost between $2,000 and $2,500. Righthaven's counsel was certainly not expected to cover these expenses on behalf of the company.

As explained earlier, counsel overlooked his obligation to put the foregoing facts into a declaration at a time when his mother was unexpectedly hospitalized. Counsel was required to stay with his mother and care for her over the course of several weeks while she recovered from surgery. This pattern has unfortunately repeated itself over the last several months, which has severely restricted counsel's ability to maintain his practice. The last several months have been emotionally and financially difficult. Caring for a sole surviving parent has not been easy. Similarly, it has been financially burdensome during these months because it has been difficult to maintain a legal practice under such trying circumstances.

Continuing to monitor the activity in vast number of Righthaven cases without compensation since early 2012, while often being conflicted between Mr. Gibson's and the receiver's directives, has only added to counsel's burdens. Unfortunately, Righthaven's counsel of record is literally the last man standing. All of Righthaven's staff attorneys are long gone. Most, like Righthaven's current counsel, have been used as scapegoats to mitigate the responsibility of decisions made by others. This is but a minor consequence of acting as counsel for Righthaven. Over the course of representation, Righthaven's counsel has been subjected to repeated physical threats, faced multiple motions for sanctions, endured the criticism of several judges and has had his professional competence and judgment questioned on numerous occasions in publicly filed documents. Often these filings have been widely reported through news media and Internet blogs. While it may be said that the first one through the wall is the person who experiences the most pain, Righthaven's counsel could never adequately express the degree of scorn and contempt that he has endured by representing the company. In sum,

Righthaven's counsel admittedly erred in the face of some trying circumstances. These circumstances do not demonstrate actions rising to the level of civil contempt.

If sanctions are deemed appropriate for Righthaven's counsel's forgetting to file the declaration required under the February Stipulation and for not appearing at a March 20, 2012 hearing while caring for his ailing mother, hopefully the Court will take the personal and professional hardships that he has endured into consideration. In this regard, Mr. DiBiase's Proposed Order apparently recognizes the unenviable position that Righthaven's counsel has been placed in and that he has experienced as a result of circumstances beyond his control. He did not anticipate his mother falling ill. He filed numerous appellate briefs and fought numerous battles in several jurisdictions on behalf of Righthaven. After several applications for stay relief failed, nothing could be done to save the company from collapse after the receiver had been appointed and Mr. Hoehn's judgment enforcement efforts were allowed to proceed. All of these events have taken their toll on Righthaven's counsel. He has endured all that he can on behalf of the company. Righthaven's counsel will be moving to withdraw from representing the company in this action. He will be doing the same in, at least, the *Hoehn* matter. In over 14 years of practice in the State of Nevada, Righthaven's counsel has never, and he would never, disrespect or intentionally ignore an order, hearing or mandate from this Court. Mistakes have been made for which he accepts responsibility. Righthaven's counsel asks the Court to for leniency in view of the foregoing circumstances if it finds that sanctions against him are warranted.

///
///
///
///
///
///
///
///
///

## III. CONCLUSION

For the foregoing reasons, Righthaven respectfully requests the Court not enter a finding of civil contempt in this matter. Righthaven additionally asks the Court decline entry of the Proposed Order in this action if sanctions are deemed necessary. Instead, Righthaven asks the Court to fashion such relief as it deems appropriate in view of the totality of the circumstances before it.

Dated this 2nd day of October 2012.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
shawn@manganolaw.com
8367 West Flamingo Road, Suite 100
Las Vegas, Nevada 89147

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that on this 2nd day of October 2012, I caused a copy of the foregoing document to be served by the Court's CM/ECF system.

SHAWN A. MANGANO, LTD.

By: /s/ Shawn A. Mangano
SHAWN A. MANGANO, ESQ.
Nevada Bar No. 6730
shawn@manganolaw.com
8367 West Flamingo Road, Suite 100
Las Vegas, Nevada 89147
Tel: (702) 683-4788
Fax: (702) 922-3851