COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevada 89102
Telephone: (702) 457-1001

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Defendant & Counterclaimant
THOMAS A. DIBIASE

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>       Plaintiff,<br><br>       v.<br><br>THOMAS A. DIBIASE, an individual,<br><br>       Defendant.<br><br>THOMAS A. DIBIASE, an individual,<br><br>   Counterclaimant,<br><br>   v.<br><br>RIGHTHAVEN LLC, a Nevada Limited-Liability Company,<br><br>   Counter-defendant. | CASE NO.: 2:10-cv-1343 RLH PAL<br><br>**JUDGMENT CREDITOR THOMAS DIBIASE'S REPLY IN SUPPORT OF PROPOSED ORDER FINDING RIGHTHAVEN IN CONTEMPT OF COURT AND IMPOSING SANCTIONS** |

## I. Introduction

At this point, all Judgment Creditor Thomas DiBiase is looking for is documentation to back up Righthaven's claim to have no funds and to identify its remaining assets (originally worth close to $120,000), so that these assets can be transferred to the receiver for sale. This fairly simple request, which was agreed by stipulation (Dkt. 104) and ordered by the Court (Dkt. 105), has been met with nothing but delay and obstruction, part of Righthaven's ongoing failure to be "reasonably diligent and energetic in attempting" to accomplish what this Court ordered. *E.E.O.C. v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 753 F.2d 1172, 1178 (2d Cir.1985), *aff'd*, 478 U.S. 421 (1986).

It is time for the obstruction to end. Accordingly, Mr. DiBiase respectfully requests this Court enter the order he proposed.

## II. Argument

### A. Righthaven Improperly Destroyed Evidence

Righthaven's opposition brief provides an additional basis for granting Mr. DiBiase's requested motion: Righthaven's improper destruction of documents and evidence.

Mr. DiBiase's Motion for a Judgment Debtor Examination (Dkt. 98), including a demand for documents, was filed in November 2011. Righthaven failed to oppose the motion, and Mr. DiBiase notified the court that Righthaven had consented to the motion by non-opposition in December. DiBiase Notice of Non-Opposition (Dkt. 99). A hearing on the motion was set and held in January 2012. *See* Notice of Hearing (Dkt. 100) and Minutes of Proceeding (Dkt. 101).

Despite having been served with Mr. DiBiase's motion, including its list of document requests pertaining to Righthaven's assets and finances, and having been ordered to produce documents in *Righthaven v. Hoehn*,[1] Righthaven nevertheless proceeded to deliberately make all of its records inaccessible. According to Righthaven, "[s]ometime in January 2012, the company relinquished its minimal office space and set up a 'virtual' office, which merely consisted of an

---

[1] In *Hoehn*, Case 2:11-cv-00050-PMP–RJJ, judgment debtor's examination procedures were underway, including a December 2011 court order to produce certain categories of documents. (*Hoehn* Dkt. 67). Righthaven failed to comply with that order. (Hoehn Motion for Sanctions,

1

Internet maintained e-mail account that did not require maintenance through a physical server." Righthaven Response to OSC (Dkt. 114) at 2. In other words, in January, Righthaven threw out or destroyed any paper records it may have had, unplugged the server and ripped the hard drives from its computers. After this, "nothing of substance remained of Righthaven once the proverbial plug was pulled on its physical presence." *Id*.

In February 2012, after the Court hearing, Righthaven and Mr. DiBiase entered into a stipulation by which Righthaven agreed to produce records. According to Righthaven, Steven Gibson, the CEO[2] and Manager of Righthaven, approved the stipulation even though he had no intention of producing any documents. *Id*. at 7.

Accordingly, Righthaven has admitted to destroying or making inaccessible evidence it knew Mr. DiBiase was seeking in litigation and entering into a stipulation with no intention of complying. This provides an additional basis for holding Righthaven and Mr. Gibson in contempt of court and ordering sanctions.

**B.    Setting the Record Straight**

In its latest filing, Righthaven suggests that DiBiase agreed that Righthaven did not have to produce any documents, contrary to the stipulation. This is false. Opsahl Decl. ¶¶ 2-4. Indeed, while negotiating the Stipulation, Mr. Mangano and Mr. Opsahl discussed other possible sources of

---

[2] Whether Steven Gibson is currently the CEO has been disputed. The receiver contends she fired Mr. Gibson, while Mr. Gibson maintains that he remains CEO. A hearing was held on October 9, 2012 before Judge Pro to address this issue. Minutes of Proceedings, *Hoehn* Dkt. 109. The issue was continued until October 31, with Mr. Gibson remaining CEO in the interim. *Id*.; *see also* Steve Green, *Fight for control of Righthaven to continue*, Vegas Inc. (Oct. 9, 2012), available at http://www.vegasinc.com/news/2012/oct/09/fight-control-righthaven-continue/.

This Court need not resolve this because Mr. Gibson asserts "A limited liability company is ultimately governed by its members and the members have chosen Net Sortie Systems, LLC ('Net Sortie') as its statutory manager. I am the manager of Net Sortie. While the manager manages the CEO, in the absence of a CEO, the manager would assume management of all affairs of Righthaven." Objection to Report and Recommendation by Interested Party Steven A Gibson, *Hoehn* Dkt. 93. Accordingly, under any interpretation, Mr. Gibson is responsible for compliance with court orders to Righthaven. "'A command to a corporation is in effect a command to those who are officially responsible for the conduct of its affairs.'" *N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO*, 568 F.2d 628, 634 (9th Cir. 1977) (quoting *United States v. Greyhound Corp.*, 363 F.Supp. 525, 571 (N.D.Ill.1973), *aff'd*, 508 F.2d 529 (7th Cir. 1974)).

documents, such as storage facilities to which it confirmed it had continuing access, as well as Righthaven's accountant or other third parties it may have engaged. Opsahl Decl. ¶ 7. Based on this conversation, the stipulation (Dkt. 104), and the February 7 Order (Dkt. 105), included a requirement that Righthaven produce documents that were being held in storage facilities: "Righthaven states that certain potentially responsive information may be stored on its computer server *and in other storage facilities*. Righthaven states that it has access to those storage facilities, but that its computer server is currently inaccessible because it is disconnected from a power source, the Internet and any other associated computer network." (February 7 Order, Dkt. 105)(emphasis added).

Likewise, Mr. DiBiase did not agree that Righthaven could comply with the February 7 Order simply by asking opposing counsel in *Hoehn* for a copy of the judgment debtor's examination transcript. Opsahl Decl., ¶¶ 5-6. It didn't matter where the transcript came from – a copy from *Hoehn* would have been perfectly acceptable – but the essential commitment was that Mr. DiBiase would receive a copy of the transcript in lieu of a debtor's examination. Unless and until Mr. DiBiase gets that copy, Righthaven has not discharged that obligation.

Righthaven's claim that the receiver controls the tangible assets, including the computers and server, is also false. Lara Pearson, appointed last year as the court-ordered receiver, does not have possession, custody or control over any of Righthaven's tangible asserts, Righthaven did not tell her where the assets were located and Righthaven has been completely uncooperative in the receivership. Declaration of Lara Pearson, ¶¶ 2-8.

Finally, at no point did Mr. DiBiase indicate to Righthaven that compliance with the February 7 Order was moot or no longer required. Opsahl Decl. ¶ 12. Indeed, relief from the court order would require a further order of the court.

    **C.**    **Righthaven's Impossibility Defense Fails**

Righthaven asserts that (1) it cannot produce paper records because there are none; (2) it cannot produce electronic records because it made its computers non-operational; and (3) it does not have the funds to resolve these problems. Righthaven has failed to show "categorically and in

detail" why it is unable to comply with the court order, as is required for an impossibility defense to contempt. *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).[3]

For example, Righthaven provides no explanation why there are no records of the means and source of payments to Mr. Mangano, who was paid for months after Righthaven allegedly ran out of money, or to Erik Syverson, its new appellate attorney, hired this spring,[4] long after Righthaven allegedly ceased operating as a business. Righthaven contends its tangible assets are in storage, but offers no explanation why there are no ongoing records, such as a monthly bill, from that storage facility.

Moreover, Righthaven cannot avoid its obligations by, through its own actions – disconnecting the server, ripping out its computers' hard drives and getting rid of all paper documents and making compliance impossible. *See United States v. Asay*, 614 F.2d 655, 660 (9th Cir. 1980) (finding that self-imposed inability to comply is not a defense to contempt, citing *U.S. v. Bryan*, 339 U.S. 323 (1949)).

Righthaven's claim to have had no paper records is simply not credible. Despite many companies' attempts to reduce paper at the workplace, in 2010, "the average office worker generated 2 pounds of paper and paperboard products each day." Wikipedia, *Paperless Office*, available at https://en.wikipedia.org/wiki/Paperless_office (last visited Oct. 11, 2012). Righthaven does not appear to be an exception.

While Righthaven produced very few documents in discovery in this litigation, several bear indicia of paper originals. Opsahl Decl. ¶ 8. Righthaven's Operating Agreement requires it to keep records and accounts of the types ordered produced in the February 7 Order. *Id*. at ¶ 9. A photo of Mr. Gibson in his office published in a *Las Vegas Sun* article about Righthaven shows a desk covered with paper files. *Id*. at ¶ 10. Righthaven's equipment list shows a budget of $1,500 for printers, which would be useless in a paperless office. *See* February 7 Order (Dkt. 105) at 4-5.

---

[3] In addition, Righthaven has waived any defense by failing to raise it in opposition to the motion for a debtor's examination or in response to the first Order to Show Cause Re Contempt.

[4] *See* April 16, 2012 Notice of Appearance of Erik Syverson, *Righthaven v. Hoehn*, 9th Cir. Case No. 11-16751, Dkt. 23.

Righthaven admits it has litigation files (Dkt. 114 at 2), but failed to produce even the settlement agreement referenced in *Righthaven LLC v. Rawlings*, Case No. 2:10-cv-01527-JCM-GWF, Dkt. 25, which was specifically ordered produced in the Stipulation. If Righthaven's statement that "Righthaven did not maintain hard copy documentation for its accounting and operational records, but was instead apparently accessed electronically," Dkt. 114 at 2, is true, then Mr. Gibson gave false testimony during the May 13, 2011 deposition of Righthaven when he testified about Righthaven's document retention policies. *Id*. at ¶ 11. At the very least, Righthaven should explain categorically and in detail what happened to all its paper files.

Righthaven's claim that its computers can only be accessed for a tremendous sum ($2,000 to $2,500) is equally incredible. For the server, it could be as simple as plugging in two cables (power and network) and turning the power on. Even if a bit more complicated, it would generally take a computer technician less than an hour to reconnect a server to a power supply and a network, and maybe up to two hours if the server was in particularly bad shape. Opsahl Decl. ¶ 13. Righthaven has failed to provide sufficient information to assess its removal of hard drives, but—assuming that they were not purposefully damaged—it should not take long to copy the contents. *Id*. at ¶ 14. To facilitate this process, counsel for DiBiase is investigating options for securing pro bono technical assistance, though Righthaven's cooperation would be necessary.[5] *Id*. at ¶ 15.

Righthaven also asserts it cannot afford to order the transcript, Dkt. 114 at 11-12, but does not provide any hard evidence to support that claim – indeed, such evidence would likely be contained in the very documents sought by the underlying February 7 Order.  In any event, the claim is contradicted in the brief filed by Mr. Gibson, stating that there is "no reason to believe that one or more of Righthaven's parents would not continue to make capital contributions…." Response to Proposed Order Submission by Objector Steven A. Gibson (Dkt. 110) at 7.

As noted previously, Righthaven's Bank of Nevada statements show that Mr. Gibson has been personally funding Righthaven to keep its balance just above zero. Opsahl Declaration ISO Motion for Order to Show Cause re: Order on Stipulation (Dkt. 106-1) at ¶ 17.   Moreover, Mr.

---

[5] For example, Righthaven would need to provide not only the hardware, but also the associated usernames and passwords necessary to login.

Gibson has admitted that Righthaven had access to sufficient funds to pay Mr. Mangano for months after its revenue dried up, asserting "[u]p until Mangano became totally *incommunicado* [mid-February 2012], Righthaven fulfilled all payment obligations to Mangano." Response to Proposed Order Submission (Dkt. 110) at 7. Mr. Gibson's deliberate decision not to use funds available to Righthaven does not equate to "impossibility."

### A.  Coercive Sanctions Against Steven Gibson Remain Proper

Righthaven admits that Mr. Gibson was aware of the stipulation. Dkt. 114 at 7 ("Righthaven's counsel entered into the February Stipulation upon receiving Mr. Gibson's express authorization to do so. Mr. Gibson understood its terms and conditions…").[6] As discussed in Mr. DiBiase's prior briefing (Dkt. 112), this is sufficient because "[i]n civil contempt proceedings, formal or personal service is not required. . . . Knowledge of the order suffices." *U.S. v. Baker*, 641 F. 2d 1311, 1316 (9th Cir. 1981) (citations omitted); *see also Shakman v. Democratic Org. of Cook County*, 533 F.2d 344 (7th Cir.), *cert. denied*, 429 U.S. 858 (1976) (city employee could be held in contempt for violation of order against city if he knew of the issuance of the order, although without knowledge of all its terms) (dictum).

Moreover, in a related Righthaven case, Mr. Gibson informed the Court that "there should remain some Righthaven furniture and equipment in storage" as of July 2, 2012 (*Hoehn*, Dkt. 93). Mr. Gibson also wrote that "I remain manager of the manager and thus in a position of controlling authority" to administer the remaining business of Righthaven, and "the disposition of tangible assets … would be some further Righthaven business." *Id*.

Accordingly, Mr. Gibson must be held jointly liable for the coercive sanctions as long as he continues to fail "to take all reasonable steps within [his] power to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993).

---

[6] In addition, Mr. Gibson was served with a copy of the February 7 Order via ECF on March 29, 2012. Dtk. 112, Ex. A. Nevertheless, neither Righthaven nor Mr. Gibson has made any attempt to comply. Opsahl Decl. at ¶ 17.

**III.   Conclusion**

For the reasons stated above, Mr. DiBiase respectfully requests this Court enter the proposed order and hold Mr. Gibson and Righthaven jointly and severally liable for compensatory sanctions in the amount of $3,412.50 and coercive sanctions in the amount of $500 each day from the entry of the contempt order until Righthaven purges itself of contempt by complying fully with the February 7 Order.

DATED:  October 11, 2012                                Respectfully submitted,


                                                 */s/* Kurt Opsahl
KURT OPSAHL
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:  (415) 436-9333 x108
Facsimile:   (415) 436-9993
Attorneys for Judgment Creditor
THOMAS A. DIBIASE

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b) and as provided for under the applicable Local Rules of Civil Practice, I certify that on this 11th day of October, 2012, I caused a true and correct copy of the JUDGMENT CREDITOR THOMAS DIBIASE'S RESPONSE IN SUPPORT OF PROPOSED ORDER FINDING RIGHTHAVEN IN CONTEMPT OF COURT AND IMPOSING SACTIONS to be served on all counsel properly registered and appearing in this action as listed in the Court's ECF system.

Dated: October 11, 2012          */s/* Kurt Opsahl
                                 KURT OPSAHL