COLLEEN BAL (*pro hac vice*)
cbal@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

CHAD BOWERS
bowers@lawyer.com
CHAD A. BOWERS, LTD
Nevada State Bar No. 7283
3202 West Charleston Boulevard
Las Vegas, Nevad a 89102
Telephone: (702) 457-1001

KURT OPSAHL (*pro hac vice*)
kurt@eff.org
CORYNNE MCSHERRY (*pro hac vice*)
corynne@eff.org
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Attorneys for Defendant & Counterclaimant
THOMAS A. DIBIASE

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company, | CASE NO.: 2:10-cv-1343 RLH PAL |
| Plaintiff, | |
| v. | |
| THOMAS A. DIBIASE, an individual, | **DECLARATION OF KURT OPSAHL** |
| Defendant. | |
| THOMAS A. DIBIASE, an individual, | |
| Counterclaimant, | |
| v. | |
| RIGHTHAVEN LLC, a Nevada limited-liability company, | |
| Counter-defendant. | |

**Declaration of Kurt Opsahl**

1.      I am an attorney of record for the Defendant, Counter-claimant and Judgment Creditor, Thomas A. DiBiase, in this matter and a member in good standing of the State Bar of California, and am admitted to practice before this Court *pro hac vice*. I have personal knowledge of the matters stated in this declaration. If called upon to do so, I am competent to testify to all matters set forth herein.

2.      On Tuesday, January 24, 2012, I discussed the details of the proposed stipulation with Righthaven's counsel, Shawn Mangano, agreeing that the debtor's examination transcript and documents previously produced in *Righthaven v. Hoehn,* Case 2:11-cv-00050-PMP–RJJ, would be provided by February 7, 2012 and the remaining documents would be produced by February 14, 2012.

3.      At no point in that conversation did I agree that Righthaven's obligation to provide additional documents by February 14, 2012 would be satisfied by producing only the documents previously produced in *Hoehn*.

4.      When negotiating the stipulation, I did not believe that the list of documents to be produced was pointless or that Righthaven would not be able to comply.  I do not recall Mr. Mangano informing me that Righthaven had no paper documents.

5.      At no point in that conversation did I agree that that Righthaven could comply with the February 7 Order simply by asking opposing counsel in *Hoehn* for a copy of the judgment debtor's examination transcript.

6.      On February 15, 2012, Mr. Mangano sent me an email about the debtor's examination transcript (previously filed in this litigation as Dkt. 106-1, Ex. A), in which he wrote that the transcript "was requested at the examination and the court reporter has my contact information." That was the last I heard from him until he responded to an email in September.

7.      While negotiating the Stipulation, Mr. Mangano and I discussed other possible sources of documents, such as storage facilities, as well as Righthaven's accountant or other third parties it may have engaged.  Based on this conversation, the Stipulation (and the February 7

Order) included a requirement that Righthaven produce documents that were being held in storage facilities: "Righthaven states that certain potentially responsive information may be stored on its computer server and in other storage facilities. Righthaven states that it has access to those storage facilities, but that its computer server is currently inaccessible because it is disconnected from a power source, the Internet and any other associated computer network." (Dkt. 105).

8.      In discovery, Righthaven has produced very few documents.  However, several of them bear the indicia of having paper originals, such as apparently handwritten signatures and stamps that appear to have been physically imprinted on the paper.

9.      Righthaven's Operating Agreement requires it to keep records and accounts of the type ordered produced in the February 7 Order.

10.     Below is a true and correct copy of a photograph featured in a *Las Vegas Sun* article on Righthaven.  Steve Green, *Legal attack dog sicked on websites accused of violating R-J copyrights*, Las Vegas Sun (Aug. 4, 2010), available at http://www.lasvegassun.com/news/2010/aug/04/unlikely-targets-emerging-war-media-content/.  The photo depicts Righthaven's CEO Steven Gibson in his office,[1] which contains numerous paper files.



---

[1] It is possible that this is Mr. Gibson's law office.  Nevertheless, the photo shows that Mr. Gibson does not have a practice of maintaining a paperless office.

11.     If Righthaven's statement that "Righthaven did not maintain hard copy documentation for its accounting and operational records, but was instead apparently accessed electronically" is true, then Steven Gibson gave false testimony during the May 13, 2011 deposition of Righthaven when he testified about Righthaven's document retention policies.

12.     I have never indicated to Righthaven that compliance with the February Stipulation was a moot issue.

13.     I have checked with Peter Eckersley, EFF's Director of Technology Projects, regarding Righthaven's claim that it would cost between $2,000 and $2,500 to reconnect Righthaven's servers.  Mr. Eckersley has a Ph.D. in computer science and law from the University of Melbourne in Australia.  He told me that he disagreed with that estimate, and estimated that it would generally take a computer technician less than an hour to reconnect a server to a power supply and a network, and maybe up to two hours if the server was in particularly bad shape. Based on my own knowledge and experience, this is a reasonable estimate.

14.     I have helped copy data off of previously disconnected computer hard drives, through the simple process of placing the disc drive in an appropriate casing and attaching it to a computer. This process took less than an hour.

15.     Since learning of this estimate earlier this month, I have contacted a highly qualified technology consulting company in San Francisco with experience in digital forensics and computer security, to inquire as to whether they could reconnect the computers and hard drives *pro bono*. They are considering the request.

16.     Righthaven has not yet complied with the February 7 Order. I am not aware of any attempt by Mr. Gibson or Righthaven to comply.

DATED:  October 11, 2012                                    Respectfully submitted,


                                                    _____/s/ Kurt Opsahl_____
                                                    KURT OPSAHL
                                                    ELECTRONIC FRONTIER FOUNDATION
                                                    454 Shotwell Street
                                                    San Francisco, CA 94110

Telephone:  (415) 436-9333 x108
Facsimile:   (415) 436-9993
Attorneys for Plaintiff
THOMAS A. DIBIASE